IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**Alexander R. Baldwin III,**

      Plaintiff,

vs.                                              Case No. CIV-25-01052 KWR/KK

**Kari T. Morrissey, Mary Carmack-Altwies,**
**Andrea Reeb, Jennifer Padgett Macias, The First**
**Judicial District Attorney's Office, Alexandria**
**Hancock, Marissa Poppell, Brian Brandle, and**
**Santa Fe County Board of County**
**Commissioners,**

      Defendants.

**DEFENDANTS MARY CARMACK-ALTWIES AND THE FIRST JUDICIAL DISTRICT**
**ATTORNEY'S OFFICE'S MOTION TO DISMISS NO. IV: PLAINTIFF'S § 1983 AND NEW**
**MEXICO CIVIL RIGHTS ACT CLAIMS ON THE BASIS OF ABSOLUTE**
**PROSECUTORIAL IMMUNITY FOR CARMACK-ALTWIES' ACTIONS WHICH WERE**
**TAKEN IN HER ROLE AS AN ADVOCATE AND RELATED TO THE INITIATION AND**
**PURSUIT OF THE CRIMINAL CHARGES AGAINST PLAINTIFF**

      Defendants, Mary Carmack-Altwies and The First Judicial District Attorney's Office, through

their attorney Robles, Rael & Anaya, P.C. (Luis Robles), state the following for their Motion to Dismiss

No. IV: Plaintiff's § 1983 and New Mexico Civil Rights Act Claims on the Basis of Absolute

Prosecutorial Immunity for Carmack-Altwies' Actions Which Were Taken in Her Role as an Advocate

and Related to the Initiation and Pursuit of the Criminal Charges Against Plaintiff ("Motion to Dismiss

No. IV):[1]

---

[1]      The undersigned counsel did not seek concurrence from Plaintiff's counsel as they are
not required to seek concurrence on this dispositive motion.

## INTRODUCTION

This case arises from the criminal prosecution of Plaintiff Alexander R. Baldwin III ("Baldwin") for the October 2021 shooting death of cinematographer Halyna Hutchins ("Hutchins") during the rehearsal of a shootout scene on a movie set outside Santa Fe, New Mexico. The gun Baldwin was holding for this scene was supposed to be loaded with dummy rounds. However, a live round discharged from Baldwin's gun and struck Hutchins, traveling through her body, exiting, and then striking writer-director Joel Souza ("Souza") in the shoulder. Hutchins died from her injuries.

The Complaint includes a number of factual allegations regarding First Judicial District Attorney Mary Carmack-Altwies ("Carmack-Altwies") with which she disagrees. However, as required by Federal Rule of Civil Procedure 12(b)(6), Carmack-Altwies must accept the Complaint's factual allegations as true for purposes of this motion only. According to the Complaint, Carmack-Altwies decided to charge Baldwin near the beginning of the investigation. Carmack-Altwies subsequently appointed former Ninth Judicial District Attorney Andrea Reeb ("Reeb") to serve as a special prosecutor to assist with the various prosecutions of individuals, including Baldwin, whom the State believed had criminal culpability for the shooting. The Complaint alleges that Carmack-Altwies' and Reeb's actions were "driven by ill motives and to accomplish illegitimate ends, including to harass or 'humble' Baldwin, to promote their political agendas" "or to further their own personal agendas or professional ambitions."

To this end, the Complaint alleges that the State filed a criminal information, charging Baldwin with two alternative counts of involuntary manslaughter. The second alternative count contained a sentencing enhancement for the use of firearm though the firearm enhancement statute was not in effect at the time of the shooting. After Baldwin's counsel moved to dismiss the firearm enhancement, the

State eventually conceded and filed an amended criminal information omitting without the firearm enhancement. Subsequently, both Carmack-Altwies and Reeb withdrew from the cases after Baldwin's counsel filed a motion challenging their respective authority to continue prosecuting the case.

Thereafter, Carmack-Altwies appointed another special prosecutor, Kari T. Morrissey ("Morrissey"), to lead the various prosecutions. Carmack-Altwies allegedly appointed Morrissey "with the understanding that she would advance Baldwin's malicious prosecution and continued to contribute FJDA resources to Baldwin's prosecution[.]" During the trial, the judge dismissed the case with prejudice against Baldwin, in part, because of the State's discovery disclosure violations.

In the instant civil case, Baldwin alleges that Carmack-Altwies violated his rights when, driven by ill motives and to accomplish illegitimate ends, she: (1) made statements to the media; (2) had involvement in law enforcement's investigation of the shooting incident; (3) decided to criminally charge Baldwin close to the beginning of the investigation; (4) appointed Reeb as a special prosecutor; (5) took action related to the initiation and pursuit of the criminal charges against Baldwin; (6) withdrew from Baldwin's case and appointed Morrissey as a special prosecutor; and (7) continued to contribute First Judicial District Attorney's Office ("FJDA") resources to assist Morrisey with the prosecution of Baldwin.

Based on these allegations, Baldwin asserted claims under 42 U.S.C. § 1983 and the New Mexico Civil Rights Act ("NMCRA"), NMSA 1978, § 41-4A-1, *et seq.*, against Carmack-Altwies and the FJDA, respectively, for Carmack-Altwies' actions.[2] See Complaint, ¶¶ 256-269 and 296-310 (First

---

[2]    Specifically, Baldwin asserts the following causes of action that are relevant to this motion: (1) conspiracy to cause malicious prosecution and deprivation of civil rights pursuant to 42 U.S.C. § 1983 against all Defendants, which includes Carmack-Altwies, and (2) violation of N.M. Const. art. II, §§ 4, 18, 19 against the FJDA under the NMCRA, in part, for Carmack-Altwies' conduct. See
(continued...)

and Sixth Claims for Relief) [Doc. No. 1-1] ("Compl."). This motion does *not* seek the dismissal of Baldwin's §1983 and NMCRA claims to the extent they are based on Carmack-Altwies' alleged statements to the media or her alleged involvement with law enforcement's investigation of the shooting. Instead, this motion only seeks the dismissal of Baldwin's §1983 and NMCRA claims that are based on Carmack-Altwies' actions in her role as an advocate related to the initiation and pursuit of the criminal charges against Baldwin, including her decision to criminally charge Baldwin close to the beginning of the investigation, appointment of Reeb as a special prosecutor, role in filing the original criminal information, including the firearm enhancement, and the subsequent amended criminal information, withdrawal from Baldwin's criminal case and appointment of Morrissey as a special prosecutor, and continued contribution of FJDA resources to assist Morrisey with the prosecution of Baldwin. In these instances, Carmack-Altwies was acting as advocate for the State and performing duties intimately associated with the judicial process and is thus entitled to absolute prosecutorial immunity.

## STATEMENT OF FACTS AND STANDARD OF REVIEW

As allowed by D.N.M.LR-Civ. 7.1(a), Carmack-Altwies and the FJDA hereby incorporate by reference the Statement of Facts and Standard of Review set forth in *Defendants Mary Carmack-Altwies and Andrea Reeb's Motion to Dismiss No. I: Plaintiff's Defamation Claim for Failure to State a Claim*, pp. 2-17 (filed October 28, 2025) [Doc. No. 7], as though fully set forth herein.

---

[2](...continued)
Complaint, ¶¶ 256-269 and 296-310 (First and Sixth Claims for Relief) [Doc. No. 1-1].

**LEGAL ARGUMENT**

I.    **ABSOLUTE PROSECUTORIAL IMMUNITY SHIELDS DISTRICT ATTORNEY MARY CARMACK-ALTWIES FROM LIABILITY FOR § 1983 DAMAGES FOR HER ROLE IN INITIATING AND PROSECUTING THE STATE CRIMINAL ACTION AGAINST BALDWIN.**

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." Imbler v. Pachtman, 424 U.S. 409, 420 (1976). "Absolute prosecutorial immunity attaches only to those activities 'intimately associated with the judicial phase of the criminal process.'" England v. Henricks, 880 F.2d 281, 285 (10th Cir. 1989) (quoting Imbler, 424 U.S. at 430). Generally, "absolute immunity may not apply when a prosecutor ... is instead engaged in other tasks ... [like] investigative or administrative tasks." Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009). Nonetheless, "absolute immunity may attach even to ... administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." Mink v. Slithers, 482 F.3d 1244, 1261 (10th Cir. 2007) (internal quotation marks and citation omitted). "To determine whether a prosecutor is entitled to absolute ... immunity, the determinative factor is advocacy because that is the prosecutor's main function." Hinton v. Dennis, 362 F. App'x 904, 907 (10th Cir. 2010) (internal quotation marks and citation omitted).

Determining whether to grant a prosecutor absolute immunity requires courts to take a functional approach, "focus[ing] on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question of whether it was lawful." Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993). These activities generally involve "actions that cast [the prosecutor] in the role of an advocate initiating and presenting the government's case." Mink, 482 F.3d at 1261; see also Buckley, 509 U.S. at 273 ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections

of absolute immunity.").

As the Tenth Circuit has "summarized, 'Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court.'" Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1209 (10th Cir. 2022) (quoting Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1164 (10th Cir. 2009)). Therefore, a prosecutor has absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 273. The scope of prosecutorial immunity is broad. See Hammond v. Bales, 843 F.2d 1320, 1321 (10th Cir. 1988) ("Since Imbler, courts have broadly defined the scope of a prosecutor's absolute immunity.").

It is also significant that prosecutorial immunity does not turn on the impropriety of a prosecutor's acts, but only whether such acts are part of the prosecutor's role as an advocate. See Buckley, 509 U.S. at 271. For example, in Imbler, a prosecutor was accused of conspiracy, knowingly using false testimony, and suppressing material evidence in initiating and pursuing a criminal prosecution against the plaintiff and in presenting the state's case. 424 U.S. at 416.

> The gravamen of [the plaintiff's] complaint against [the prosecutor] was that he had "with intent, and on other occasions with negligence" allowed [a witness] to give false testimony as found by the District Court, and that the fingerprint expert's suppression of evidence was "chargeable under federal law" to [the prosecutor]. In addition [the plaintiff] claimed that [the prosecutor] had prosecuted him with knowledge of a lie detector test that had "cleared" [the plaintiff], and that [the prosecutor] had used at trial a police artist's sketch of [the victim's] killer made shortly after the crime and allegedly altered to resemble [the plaintiff] more closely after the investigation had focused upon him.

Id. Even with these factual allegations that the prosecutor engaged in blatant misconduct, the Court in

Imbler concluded that the plaintiff's claims were barred by absolute immunity because the prosecutor's "activities were intimately associated with the judicial phase of the criminal process." Id. at 430; see also Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) ("Such immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.") (citation omitted); Burns v. Reed, 500 U.S. 478, 485 (1991) (absolute immunity extends to a prosecutor's "knowing use of false testimony before the grand jury and at trial.") (citation omitted); Martinez v. Winner, 771 F.2d 424, 437 (10th Cir. 1985) (holding that prosecutors were immune, despite "grossly improper" conduct, which included a "meeting between the judge and prosecutors to discuss the government's strategy."), modified in part, 778 F.2d 553, cert. granted, 475 U.S. 1138 (1986) (vacating and remanding on other grounds).[3]

Moreover, under a functional approach, a prosecutor's motives for acting are irrelevant to a determination of whether his actions are entitled to prosecutorial immunity. See Lerwill v. Joslin, 712 F.2d 435, 441 (10th Cir. 1983) (holding prosecutor is entitled to absolute immunity even though the court recognized that the prosecutor "rather than mistakenly citing the wrong statute in prosecuting the Lerwills, might have intentionally or even maliciously done so in order to harm them."). "[S]ince absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." Dorman v. Higgins, 821 F.2d 133, 139

---

[3]    See also Burns, 500 U.S. at 489-490 ("prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses.") (citations omitted); Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1279-80 (11th Cir. 2002) ("even if prosecutor knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so.).

(2nd Cir. 1987); see also Miller v. Glanz, 948 F.2d 1562, 1570 (10th Cir. 1991) (a prosecutor's absolute immunity extends to "conspiracies to present false testimony.").

Pursuant to § 1983, the Complaint alleges that "Defendants conspired to procure a groundless indictment against Baldwin and to maliciously bring about or advance Baldwin's trial and conviction[.]" Compl., ¶ 257. Regardless of the impropriety of her conduct or her underlying motivation(s), Carmack-Altwies is entitled to prosecutorial immunity for deciding to criminally charge Baldwin close to the beginning of the investigation, appointing Reeb as a special prosecutor,  taking action related to the initiation and pursuit of the criminal charges against Baldwin,  withdrawing from Baldwin's case and appointing Morrissey as a special prosecutor, and continuing to contribute FJDA resources to assist Morrisey with the prosecution of Baldwin.  Carmack-Altwies' actions within each of these categories is addressed in turn below in the order in which the Complaint alleged they occurred.

### A.    As a Preliminary Matter, Carmack-Altwies' Specific Motive(s) for Prosecuting Baldwin Are Irrelevant to the Absolute Immunity Inquiry.

The Complaint alleges that Carmack-Altwies' actions were "driven by ill motives and to accomplish illegitimate ends, including to harass or 'humble' Baldwin, to promote [her] political agendas" "or to further [her] own personal agendas or professional ambitions." Compl., ¶ 260; see also, e.g., id., ¶ 2 (alleging that Defendants were "blinded by their desire to convict Baldwin for all the wrong reasons[.]"); id., ¶ 4 (alleging "Defendants sought at every turn to scapegoat Baldwin for the  acts and omissions of others, regardless of the evidence or the law."). The Complaint alleges that Carmack-Altwies appointed Morrissey "with the understanding that she would advance Baldwin's malicious prosecution ... ." Id., ¶ 258(e).  However, Carmack-Altwies' motives are irrelevant to this Court's prosecutorial immunity analysis.  Even accepting the Complaint's allegation that Carmack-Altwies maliciously prosecuted Baldwin with the intent to harm him or for her own personal and professional

reasons, this is still irrelevant to the absolute immunity inquiry before the Court. See Lerwill, 712 F.2d at 441 (holding absolute immunity applied even though the prosecutor "intentionally or even maliciously" prosecuted the plaintiffs "in order to harm them."). Therefore, Carmack-Altwies' motivations need not be addressed further.

**B.    Carmack-Altwies Is Entitled to Prosecutorial Immunity for Her Decision to Criminally Charge Baldwin Close to the Beginning of the Investigation Even If Probable Cause Was Lacking Because Such Actions Are Inherently Related to a Prosecutor's Role as an Advocate.**

Baldwin's Complaint alleges that, "[e]ven though Baldwin was not responsible for ensuring the safety of firearms or ammunition and was told by those who *were* responsible that the prop gun was safe, the District Attorney decided to criminally charge Baldwin 'pretty close to the beginning' of the investigation." Compl., ¶ 98 (emphasis in original); see also id., ¶¶ 99-100 (alleging that the evidence in the State's possession did not support an involuntary manslaughter charge.). The Complaint does not specify when Carmack-Altwies made this decision, indicating only that the investigation began on October 21, 2021, the date of the shooting incident. See, e.g., id., ¶¶ 46, 56-58, 63, 67-69, 71. Based on their review of the Complaint, the defense presumes that Carmack-Altwies' initial decision to criminally charge Baldwin is separate from the January 18, 2023 announcement by the FJDA that it would reveal its charging decisions the following day. See id., ¶ 112.

Accepting the Complaint's allegations as true, Carmack-Altwies was clearly acting as an advocate when she made the decision to criminally charge Baldwin, even though it was early on in the investigation and the evidence she had at the time did not, in fact, support a charge of involuntary manslaughter. See Kalina v. Fletcher, 522 U.S. 118, 130 (1997) (allowing absolute prosecutorial immunity for functions such as a prosecutor's "determination that the evidence was sufficiently strong to justify a probable-cause finding[.]"); Chilcoat, 41 F.4th at 1209 (absolute immunity protects a

prosecutor's "determination of whether probable cause exists[.]") (quotations and citation omitted). As to Baldwin's contention that Carmack-Altwies lacked sufficient evidence to support probable cause, the Tenth Circuit's decision in <u>Warnick v. Cooley</u>, 895 F.3d 746 (10th Cir. 2018) is instructive.

In <u>Warnick</u>, the Tenth Circuit considered whether absolute immunity applied "to a prosecutor's decision to file charges if the prosecutor had no probable cause to do so." <u>Id.</u> at 752. In affirming the grant of absolute prosecutorial immunity, the court held that "[s]ome functions – like filing charges – are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists. Hence, the well-settled rule that prosecutors are 'entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause to indict.'" <u>Id.</u> at 752 (internal citation omitted); <u>accord</u> <u>Buckley</u>, 509 U.S. at 271 ("[T]he <u>Imbler</u> approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."); <u>Becker v. Kroll</u>, 494 F.3d 904, 925 (10th Cir. 2007) ("This immunity applies even if the prosecutor files charges knowing he lacks probable cause."). Based on the foregoing, Carmack-Altwies is entitled to prosecutorial immunity for her preliminary decision to criminally charge Baldwin near the beginning of the investigation even if probable cause was lacking because such decision is inherently related to a prosecutor's role as an advocate.

### C. By Appointing Andrea Reeb as a Special Prosecutor, Carmack-Altwies Acted as an Advocate for the State by Determining Who Would Be Invested with the Authority to Pursue the Prosecution Against Baldwin and Is Therefore Entitled to Absolute Immunity for this Act.

The Complaint alleges that, by June 2022, Carmack-Altwies had "privately decided" to appoint Reeb as a special prosecutor to assist with the various prosecutions arising from the shooting incident. Compl., ¶ 101. At the time, Reeb was "campaigning for a seat in the New Mexico House of Representatives." <u>Id.</u> Days after deciding to appoint Reeb, "Carmack-Altwies ... made a contribution

to Reeb's campaign." Id., ¶ 103.  In August 2022, the District Attorney's Office announced Reeb's appointment to the public. Id., ¶ 104.  Carmack-Altwies requested and received some state funding to pay Reeb's salary. Id., ¶ 106.

As a preliminary matter, Carmack-Altwies' act of appointing Reeb as a special prosecutor is authorized by state statute. See NMSA 1978, §36-1-23.2; see also State v. Hollenbeck, 1991-NMCA-060, ¶ 14, 112 N.M. 275 ("The reason that the district attorney 'cannot prosecute' a case need not be a legal or ethical reason; it could be a matter of lack of resources.").  Moreover, this appointment was made to assist the State in initiating the prosecution against Baldwin, thus bringing this action within the ambit of absolute immunity. See Lacey v. Maricopa Cnty., 693 F.3d 896, 928-934 (9th Cir. 2012) (holding that county attorney was entitled to absolute prosecutorial immunity for appointment of special prosecutor because he was acting as an advocate for the state by determining who would be clothed with power to pursue particular prosecution, and stating general rule that "[d]ecisions related to appointments and removals in a particular matter will generally fall within the exercise of the ... prosecutor's ... quasi-judicial roles and are shielded from suit by absolute immunity.").

In Lacey, the Ninth Circuit reasoned that:

> If a district attorney were not entitled to absolute immunity, defendants could bring retaliatory lawsuits against him for appointing their prosecutor or special prosecutor. "Such 'harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties,' and would result in a severe interference with the administration of an important public office." Rehberg[ v. Paulk], [566 U.S. 356, 365 (2012)] (quoting Imbler, 424 U.S. at 423 ...).

Lacey, 693 F.3d at 933.

Here, Carmack-Altwies was the elected District Attorney for the First Judicial District. See NM Const. Art. 6, § 24 ("There shall be a district attorney for each judicial district, who ... shall be elected for a term of four years ...."); see also Compl., ¶15.  Carmack-Altwies was authorized by statute to

appoint Reeb, a former District Attorney, as a special prosecutor for Baldwin's criminal case. See NMSA 1978, § 36-1-23.1 (providing, in part, that "[e]ach district attorney may, when he cannot prosecute a case for ethical reasons or other good cause, appoint a practicing member of the bar of this state to act as special assistant district attorney.");[4] see also Complaint, ¶101. The appointment of Reeb as a special prosecutor is itself a prosecutorial act as it was made in preparation to initiate charges against Baldwin. See Lacey, 693 F.3d at 933. The fact that Reeb was campaigning for political office at the time or that Carmack-Altwies made a contribution to Reeb's campaign near the time of the appointment does not alter this conclusion. See id. at 934 (observing that "Thomas' appointment of a special prosecutor - both his decision to appoint one and his decision to appoint Wilenchick- [are] immune from judicial scrutiny under § 1983" even though "[a]ppointments to office are frequently a political act, and the appointment of a special prosecutor may carry the air of politics (or even the stench of cronyism).").[5]

---

[4]    As the New Mexico Supreme Court has observed:

Strict statutory compliance is required when the intent of the legislature "would be frustrated by anything less than strict compliance." Green Valley Mobile Home Park v. Mulvaney, 121 N.M. 817, 820, 918 P.2d 1317, 1320 (1996). "We must look to the object the legislature sought to accomplish and the wrong it sought to remedy." Id. Section 36–1–23.1 provides for the appointment of qualified prosecutors subject to an oath of office when the district attorney cannot prosecute a specific case for ethical or other reasons. As the Court of Appeals stated in State v. Hollenbeck, 112 N.M. 275, 278, 814 P.2d 143, 146 (Ct.App.1991), "[t]he rationale for requiring authorization for prosecution is to avoid prosecution by persons who are not held accountable or subject to the oath of office." Section 36–1–23.1 requires only that the appointment and oath of a special prosecutor be in "substantially the same form" as the appointment and oath of an assistant district attorney. We do not believe that Section 36–1–23.1 requires strict compliance to further the goal of the legislature.

State v. Cherryhomes, 1996-NMSC-072, ¶ 6, 122 N.M. 687, 689.

[5]    Likewise, even if Carmack-Altwies' request and receipt of State funding to pay Reeb's salary is considered an administrative act, it is still protected by prosecutorial immunity because it was

(continued...)

Nor is Carmack-Altwies deprived of immunity because Baldwin alleges she conspired to appoint Reeb to prosecute Baldwin. See Lacey, 693 F.3d at 937 ("[The county attorney] does not lose his absolute immunity even if he is alleged to have conspired with [the special prosecutor and the sheriff] to appoint Wilenchik as special prosecutor so that Wilenchik could prosecute the New Times."). Based on the foregoing, Carmack-Altwies is entitled to absolute prosecutorial immunity for her appointment of Reeb as a special prosecutor for the various cases, including Baldwin's, arising from the shooting incident.

   **D.    Carmack-Altwies Is Not Deprived of Absolute Immunity for Continuing to Have a Role in Baldwin's Prosecution Even After Appointing Andrea Reeb as a Special Prosecutor Because Carmack-Altwies Had at Least a Semblance of Authority That Did Not Run Far Afield of Her Job Description.**

   Next, the Complaint contends that Carmack-Altwies lacked the statutory ability to prosecute Baldwin alongside a special prosecutor and therefore she "lacked constitutional and statutory authority to charge Baldwin with any offense." Compl., ¶ 258(d).  Although this question has not been directly addressed by New Mexico appellate courts, there is nothing in the law that prevents Carmack-Altwies from co-counseling with a special prosecutor given that she retains "full duty, authority, and discretion to make decisions concerning Defendant's case." State v. Surratt, 2016-NMSC-004, ¶ 29, 363 P.3d 1204; see Hollenbeck, 1991-NMCA-060, ¶ 14, 112 N.M. 275 (stating that special prosecutor's "actions were subject to review and control by the appointing authority, the district attorney.").  Here, the Complaint does not allege that Carmack-Altwies or anyone within the FJDA had a conflict that prevented them from having a role in prosecuting Baldwin. See Compl.        Moreover, applying the

---

   [5](...continued)
necessary so that Reeb could fulfill her prosecutorial functions. See Mink, 482 F.3d at 1261 (acknowledging that absolute immunity "may attach even to ... administrative ... activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.") (citation omitted).

"functional approach," courts look to the "nature of the function performed, not the identity of the actor who performed it," "the harm that the conduct may have caused or the question of whether it was lawful." Buckley, 509 U.S. at 269, 271 (internal quotation marks and citations omitted); see Weinberg v. Vill. of Clayton, N.Y., No. 517CV00021BKSATB, 2018 WL 4214363, at *10 (N.D.N.Y. Mar. 21, 2018) (citations omitted) ("For purposes of prosecutorial immunity under § 1983-a question of federal law-the question is whether the [] Defendants' conduct was functionally prosecutorial, not whether they had a proper delegation of prosecutorial authority under state law.").  Prosecutors, retain absolute immunity even if they act in excess of their authority, as long as they have at least a semblance of jurisdiction that does not run far afield of their job description. See Snell v. Tunnell, 920 F.2d 673, 694 (10th Cir.1990) ("[w]hile a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority"); see also Stump v. Sparkman, 435 U.S. 349, 356-357 (1978) (absolute immunity will not be stripped because of action that "was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction."); Anilao v. Spota, 27 F.4th 855, 865 (2nd Cir. 2022) (So "[e]ven if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority," it is not lost "immediately upon crossing the technical bounds of the power conferred on him by local law," or "simply because he acted in excess of his authority.") (citations omitted); id. at 865 ("Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that "state law did not empower [them] to bring the charges," so long "they have at least a semblance of jurisdiction" that does not run far afield of their job description.") (citing Barr v. Abrams, 810 F.2d 358, 361 (2d Cir. 1987) (declining to adopt "a holding that a prosecutor is without absolute immunity the moment he strays beyond his

14

jurisdictional limits," because doing so would "do violence to [the] spirit" of the doctrine).

In Sligar v. Fries, the Tenth Circuit reviewed previous precedent, stating:

> In Lerwill v. Joslin, 712 F.2d 435 (10th Cir.1983), we held that although a prosecutor may lose absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing technical bounds of power conferred on the prosecutor by local law, and that absolute immunity does not become qualified simply because the prosecutor acted in excess of his authority.

Sligar v. Fries, 993 F.2d 1552, 1552 (10th Cir. 1993) (unpublished).  The Tenth Circuit construes a prosecutor's authority broadly. Id.

Consistent with the functional approach established by the United States Supreme Court and the Tenth Circuit's broad construction of prosecutorial authority, the district court in the factually analogous case of Gonzales v. Schutt concluded that a prosecutor who acted without authority under the state constitution was nonetheless entitled to prosecutorial immunity when performing prosecutorial functions. No. 1:14-CV-01347-CL, 2015 WL 4545741, at *5 (D. Or. July 23, 2015).  In Gonzales,

> [Plaintiffs did not] present any evidence that Defendant was not performing a prosecutorial function. Instead, Plaintiffs allege Defendant did not legitimately hold state office when he transferred Mrs. Gonzales' case [to the special prosecutor]. Thus, they conclude he was not shielded by prosecutorial immunity. Specifically, Plaintiffs assert Defendant violated the process for recall elections set forth in the Oregon Constitution by remaining in office until the end of August. As of August 16th, they argue he was required to either immediately vacate office or participate in a recall election. He could not continue to operate under the terms of his prior resignation and remain in office until his chosen termination date of August 31st.[footnote omitted].

> The issue before the Court is whether Defendant is entitled to absolute prosecutorial immunity for his motion to appoint a special prosecutor in Mrs. Gonzales' case. The validity of Defendant's continued office under the state constitution is not relevant to that inquiry. A prosecutor is not entitled to immunity simply by virtue of his job title. Lacey, 693 F.3d at 912 ("If Wilenchik is entitled to absolute immunity, it is because he was acting in a prosecutorial role, not because he carried the title of Independent Special Deputy Maricopa County Attorney."). It follows that the inverse of that rule is also true. A person with lacking or questionable title is not barred from invoking prosecutorial immunity. Indeed, courts have extended the protection of absolute prosecutorial immunity to non-prosecutors. In Butz v. Economou, the U.S. Supreme Court granted

absolute immunity to federal administrative "agency officials performing certain functions analogous to those of a prosecutor." 438 U.S. 478, 515 [] (1978). In Slater v. Clarke, the Ninth Circuit found a district attorney as well as two executive branch officials were entitled to absolute prosecutorial immunity for their participation in an extradition decision. 700 F.3d 1200, 1203 (9th Cir.2012). The court explained: "Setting aside whether all three defendants actually had the authority to make this decision, the law requires that we look at 'the nature of the function performed, not the identity of the actor who performed it.'" Id. (quoting Kalina v. Fletcher, 522 U.S. 118, 127 [] (1997)).

Gonzales, 2015 WL 4545741, at *5.

Here, at a minimum, there was some semblance of jurisdiction because Carmack-Altwies was not divested of her constitutional office by appointing Reeb as a special prosecutor. In New Mexico, "[t]he office of the district attorney is a constitutional office with duties prescribed and delimited by the Legislature." Surratt, 2016-NMSC-004, ¶ 13, 363 P.3d 1204 (citations omitted); see also N.M. Const. art. VI, § 24 (establishing the office of district attorney and authorizing legislation to prescribe duties and qualifications for the office); NMSA 1978, § 36-1-18 (A)(1) (stating, "Each district attorney shall ... prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested[.]"). The appointment of Reeb as a special prosecutor did not displace Carmack-Altwies from her constitutional office of district attorney. See Surratt, 2016-NMSC-004, ¶ 26, 363 P.3d 1204 (acknowledging that the appointment of a "[a] special prosecutor does not displace the prosecuting attorney from his constitutional office ... .") (internal quotation marks and citation omitted). Therefore, even if it was not lawful under New Mexico law for Carmack-Altwies to continue to have a role in Baldwin's prosecution after she appointed Reeb as a special prosecutor, Carmack-Altwies still had an arguable basis of authority grounded in the New Mexico Constitution. See Snell, 920 F.2d at 694 ("While a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority grounded in a statute."). Consequently,

Carmack-Altwies is not deprived of absolute immunity if it is otherwise applicable based on the nature of the functions she performed.

The next section of this motion addresses the nature of the functions Carmack-Altwies performed in connection with Baldwin's prosecution after she appointed Reeb as a special prosecutor, demonstrating she acted as an advocate for the State in initiating and pursuing the charges against Baldwin.[6]

---

[6]    Additionally or alternatively, Carmack-Altwies retained de facto authority to participate in Baldwin's criminal case after Reeb's appointment and is therefore entitled to prosecutorial immunity if it is otherwise applicable.  As the United States Supreme Court has explained:

> The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient. Norton v. Shelby County, 118 U.S. 425, 440 [] (1886). "The de facto doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." 63A Am.Jur.2d, Public Officers and Employees § 578, pp. 1080–1081 (1984) (footnote omitted).

Ryder v. United States, 515 U.S. 177, 180–81 (1995).  A de facto prosecutor is still entitled to absolute immunity if it is otherwise applicable.  See Horwitz v. State Bd. of Med. Exam'ers of State of Colo., 822 F.2d 1508, 1515 (10th Cir.1987) (concluding that the individual defendants, who acted as prosecutors but had not taken the oath of office as required by law, were at least de facto public officials and their prosecutorial actions were therefore entitled to absolute immunity); Stockton v. N.M. Tax'n & Rev. Dep't, 2007-NMCA-071, ¶ 17, 141 N.M. 860 (acknowledging the general rule that "[o]ne duly appointed ... to an office but who is in law disqualified to act ... is at least a de facto officer in that his or her acts are valid as to the public.") (internal quotation marks and citation omitted); Charleston v. Pate, 194 S.W.3d 89, 91 (Tex. App. 2006) (holding that status as de facto assistant district attorney was sufficient to confer prosecutorial immunity, reasoning that "[i]t is the nature of one's activity, not one's title or qualifications, that gives rise to the prosecutorial immunity.") (citing Buckley, 509 U.S. 259, 269); Relative Value Studies, Inc. v. McGraw-Hill Cos., 981 P.2d 687, 688 (Colo. App. 1999) ("a properly appointed judge, despite even a conceded violation of [a] constitutional ... requirement does not lose his or her authority to act as judge merely because of the violation"); Miller v. Filter, 150 Cal. App. 4th 652, 669, 58 Cal. Rptr. 3d 671, 684 (2007) ("[W]here a person appointed as a deputy district attorney acts under color of authority and is performing the same function as would a de jure deputy district

(continued...)

**E.    Prosecutorial Immunity Attaches to Carmack-Altwies' Role in Filing the Original Criminal Information and Amended Criminal Information Because it Is Well Established That Prosecutors Are Absolutely Immune for Their Charging Decisions.**

The Complaint alleges that, "[o]n January 31, 2023, the State filed an Information charging Baldwin with two alternative felony counts of involuntary manslaughter" with the alternative count stating: "'This offense shall be enhanced pursuant to the firearm enhancement statute. . ..'" Compl., ¶ 124; see also id., ¶ 258(c) (alleging that "Carmack-Altwies and Reeb charged Baldwin with a firearm enhancement[.]").  The Complaint further alleges that the State did not have probable cause to charge Baldwin with involuntary manslaughter and the firearm enhancement violated the U.S. Constitution's *ex post facto* clause. See id., ¶¶ 4, 115, 129, 258(c).  Reeb eventually conceded that the firearm enhancement was inapplicable because the underlying statute was not in effect at the time of the shooting.[7]  See id., ¶ 130.   The State then filed an Amended Information without the firearm enhancement. Id., ¶ 133.  The Complaint does not specify that Carmack-Altwies was personally involved

---

[6](...continued)
attorney, the person is entitled to prosecutorial immunity even if his or her appointment was irregular, thereby making the person a de facto, rather than de jure, deputy district attorney.").

Here, Baldwin alleges that Carmack-Altwies lacked formal statutory authority to participate in Baldwin's prosecution after she appointed Reeb to serve as a special prosecutor. Nonetheless and by virtue of her constitutional position as district attorney, Carmack-Altwies retained de facto authority to take prosecutorial actions. Such de facto authority may not be collaterally attacked in this proceeding. Carmack-Altwies should therefore be entitled to prosecutorial immunity if it is otherwise applicable as demonstrated in the following sections of this motion.

[7]    "On February 16, 2023, Reeb emailed Baldwin's counsel demanding that he withdraw the *ex post facto* motion and threatened sanctions for its filing[,]" then sent another email stating "she hadn't actually evaluated this issue because she was too busy serving in the legislature," and  "three hours after the first email," admitted "she '100 percent agree[d]' that charging the firearm enhancement violated the *ex post facto* clause ...." Id., ¶ 133. The State filed an Amended Information removing the firearm enhancement. Id.

in each of the charging decisions outlined in this paragraph. However, for purposes of this motion, the defense will assume this is the case. Even so, absolute immunity attaches to Carmack-Altwies' role in such charging decisions, even though the firearm enhancement allegedly violated the *ex post facto* clause and the State lacked actual probable cause to support the charges filed against Baldwin.

Carmack-Altwies was clearly acting as an advocate for the State to the extent she had a role in filing the original Information and/or Amended Information against Baldwin. See Imbler, 424 U.S. at 431 (holding that a prosecutor is immune for "initiating a prosecution and in presenting the State's case."); Norton v. Liddel, 620 F.2d 1375, 1379 (10th Cir. 1980) (stating it is clear that plaintiffs "have no right to civil redress" against a prosecutor "in connection with his initiation of criminal charges against plaintiffs" even though the prosecutor's "actions may have been undertaken maliciously, intentionally, and in bad faith [.]").[8] This includes the decision to charge Baldwin with a firearm enhancement, even though the firearm enhancement statute was not in effect at the time of the underlying shooting incident which resulted in a violation of the U.S. Constitution's *ex post facto* clause. See Lerwill, 712 F.2d at 441(holding prosecutor is entitled to absolute immunity even though the prosecutor "rather than mistakenly citing the wrong statute in prosecuting the Lerwills, might have intentionally or even maliciously done so in order to harm them".). Prosecutorial immunity also attaches to Carmack-Altwies' role, if any, in the State's subsequent dismissal of the firearm enhancement against Baldwin because such action is intimately associated with the judicial process. See Joseph v. Yocum, 53 F. App'x

---

[8]     Absolute immunity extends to Carmack-Altwies' role in charging Baldwin with involuntary manslaughter and a firearm enhancement even though the State charged First Assistant Director Halls with only a petty misdemeanor for his role in the underlying incident. See Compl., ¶ 127; see also Celia v. O'Malley, 918 F.2d 1017, 1020 (1st Cir. 1990) (stating "[a]bsolute immunity is afforded to prosecutors ... to ensure the independence and effectiveness of the criminal justice system" and "the decision to try a defendant for a *particular crime* is at the heart of that system.") (emphasis added and citing Imbler, 424 U.S. at 424-29).

1, 3 (10th Cir. 2002) ("[A] prosecutor's decision as to when to dismiss charges is entitled to absolute prosecutorial immunity because it is 'intimately associated with the judicial phase of the criminal process.") (internal quotation marks and citations omitted).  Absolute immunity also applies even if – as the Complaint alleges – the State did not have actual probable cause to support the charges filed against Baldwin in the orignal Informtion and/or Amended Information. See, e.g., Compl., ¶ 99-100; see also Kalina, 522 U.S. at 130 (allowing absolute prosecutorial immunity for functions such as a prosecutor's "determination that the evidence was sufficiently strong to justify a probable-cause finding[.]"); Chilcoat, 41 F.4th at 1209 (absolute immunity protects a prosecutor's "determination of whether probable cause exists[.]") (quotations and citation omitted); Becker, 494 F.3d at 925 ("This immunity applies even if the prosecutor files charges knowing he lacks probable cause.").  Based on the foregoing, Carmack-Altwies is entitled to prosecutorial immunity for her role in filing criminal charges against Baldwin, regardless of her alleged motives or legal errors in doing so.

F.     **Absolute immunity extends to Carmack-Altwies' Appointment of Kari Morrissey as a Special Prosecutor and for the Continued Contribution of FJDA Resources to Baldwin's Prosecution Because She Was Acting as an Advocate for the State by Determining Who Would Be Invested with the Power to Pursue the Prosecution Against Baldwin and the Contribution of Resources Was Made in Furtherance of Baldwin's Prosecution.**

Reeb and Carmack-Altwies withdrew from Baldwin's criminal case on March 15 and 29, 2023, respectively. See Compl., ¶ 135-136.  The same month, Carmack-Altwies appointed Morrissey as a special prosecutor to lead the prosecutions arising from the shooting incident on the movie set and "continued to contribute FJDA resources to Baldwin's prosecution[.]" Id., ¶¶ 137, 258(e).

On the basis explained in Section I(C), supra, Carmack-Altwies is entitled to absolute immunity for appointing Morrissey as a special prosecutor because, by doing so, Carmack-Altwies acted as an advocate for the State by determining who would be invested with the power to pursue a particular

prosecution. Further, on the basis explained in Section I(A), <u>supra</u>, Carmack-Altwies' motivation for appointing Morrissey – the alleged "understanding that [Morrissey] would advance Baldwin's malicious prosecution" – is irrelevant to the determination as to whether her actions are protected by prosecutorial immunity.

Next, the Complaint's allegation that Carmack-Altwies continued to contribute FJDA resources to Baldwin's prosecution is not entirely clear. Baldwin might be referring to Carmack-Altwies compensating Morrissey with state funding. <u>See</u> <u>generally</u> Compl., ¶ 106. The defense's research has not revealed any authority specifically addressing, much less holding, that such action by a district attorney is outside the realm of prosecutorial immunity. State law provides that a special prosecutor appointed to prosecute a particular case on behalf of the State is be paid with public appropriations outside the FJDA's budget. <u>See</u> <u>generally</u> NMSA 1978, § 6-1-2 (providing for the grant of emergency funds by the State Board of Finance to any state agency); State Board of Finance Emergency Funding Policy 11-03 (Oct. 18, 2011), https://www.nmdfa.state.nm.us__/wp-content/uploads/2023/01/10.18.11-Signed-Emergency-Funding-Policy.pdf; <u>Hollenbeck</u>, 1991-NMCA-060, ¶ 14, 112 N.M. 275 (acknowledging that "good cause" for the appointment of a special prosecutor may include budget constraints on the part of the district attorney's office).

To the extent Baldwin is alleging that Carmack-Altwies permitted the use of FJDA resources, including funding and personnel, to assist with the pursuit of the criminal prosecution against Baldwin, such assertions are insufficient to demonstrate that Carmack-Altwies' action(s) fall outside the scope of prosecutorial immunity. For the reasons explained in Section I(D), <u>supra</u>, State law permits Carmack-Altwies to authorize her office to assist Morrissey given there was no conflict of interest. Section I(D), <u>supra</u>, also demonstrates that the functional approach requires courts to focus "on the conduct for which

immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Buckley, 509 U.S. at 271 (citation omitted).  The alleged use of FJDA resources here demonstrates that Carmack-Altwies' actions were taken in relation to the initiation and pursuit of the criminal prosecution against Baldwin and thus intimately associated with the judicial process. See Chilcoat, 41 F.4th at 1209 (summarizing that "[p]rosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court.") (internal quotation marks and citation omitted). Thus, Carmack-Altwies is absolutely immune for appointing Morrissey and continuing to contribute FJDA resources to Baldwin's prosecution.

G.    **Carmack-Altwies Is Entitled to Absolute Immunity under Imbler for Her Alleged Role in Failing to Disclose Exculpatory Evidence to Baldwin.**

The Complaint generally alleges, that upon information and belief, Carmack-Altwies had a role in failing to disclose known exculpatory evidence to Baldwin or to make it available for his inspection. See Compl., ¶ 258(h). As previously stated, absolute prosecutorial immunity extends to claims that a prosecutor willfully suppressed evidence. See Imbler, 424 U.S. at 431 n. 34; see also Robinson v. Volkswagenwerk AG, 940 F.2d 1369, 1373 n. 4 (10th Cir.1991) (it is a "well-settled rule that a prosecutor cannot be held personally liable for the knowing suppression of exculpatory information.") (internal quotation marks omitted); Goings v. Sumner Cnty. Dist. Attorney's Off., No. 13-1107-RDR, 2013 WL 6440267, at *3 (D. Kan. Dec. 9, 2013) (finding that absolute immunity applies to prosecutor's discovery decisions); U.S. ex rel. Price v. McFarland, 2004 WL 3171649 at * 7 (D.Kan.2004) (absolute immunity applies to allegations that prosecutor hindered plaintiffs' access to discovery in state court proceedings).  "The Imbler rule has [even] been applied where prosecutors failed to disclose exculpatory

evidence specifically requested by the defense" "and where prosecutors misled the trial court in order to conceal their failure to disclose exculpatory evidence." Reid v. State of N.H., 56 F.3d 332, 336-337 (1st Cir. 1995) (citations omitted). Absolute immunity is not displaced by a prosecutor's violation of the trial court discovery orders. Id. at 337. Similarly, a prosecutor's false certification to the court that he has complied with the state's disclosure obligations does not negate his entitlement to absolute immunity for discovery disclosure violations. See Robinson, 940 F.2d at 1373 n. 4 ("In this circuit, absolute immunity has been upheld even given allegations that a prosecutor allegedly lied and filed a false affidavit in the course of a criminal proceedings.") (citation omitted); Kamienski v. Ford, 844 F. App'x 520, 525 (3d Cir. 2021) (prosecutor entitled to absolute immunity for filing inaccurate briefs and making misleading statements at oral argument because his conduct was "intimately associated with the judicial phase of the criminal process while presenting the State's case[.]"). Finally, this "immunity is no less available if the prosecutor's discovery decisions are made pursuant to a standing policy, rather than on an individual basis." Goings, 2013 WL 6440267, at *3. Based on the foregoing, it is clear that prosecutorial immunity extends to Carmack-Altwies' alleged discovery disclosure decisions in the underlying criminal proceeding – no matter how improper or maliciously motivated the Complaint alleges them to be – because such decisions were made in her role as a prosecutor in preparation for and during the underlying criminal prosecution.

## II.   ABSOLUTE PROSECUTORIAL IMMUNITY APPLIES TO BALDWIN'S CLAIMS ASSERTED PURSUANT TO THE NEW MEXICO CIVIL RIGHTS ACT.

Baldwin's NMCRA claims are asserted against the FJDA for the alleged misconduct of the individual Defendants, including Carmack-Altwies. See Compl., ¶¶ 296-310 (Sixth Claim for Relief). The NMCRA provides, in relevant part, that a public body shall be held liable for the "deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New

Mexico" caused by "individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." NMSA 1978, § 41-4A-3 (2021). Here, however, absolute prosecutorial immunity relieves the FJDA from liability under the NMCRA for Carmack-Altwies' actions as the elected district attorney that were necessary to initiate or maintain the criminal prosecution against Baldwin.

Absolute prosecutorial immunity is not explicitly addressed in the NMCRA. See NMSA 1978, §41-4A-1, *et seq*. However, the NMCRA does preserve certain immunities. According to §41-4A-10, the prohibition on the use of the defense of qualified immunity and the waiver of sovereign immunity under the NMCRA "shall not abrogate judicial immunity, legislative immunity, or any other constitutional, statutory, or common law immunity." See NMSA 1978, §41-4A-10. Absolute prosecutorial immunity is a common law immunity and also quasi-judicial immunity. The Supreme Court in Imbler recognized absolute immunity for prosecutors based on the common law tradition, which granted prosecutors immunity from common-law tort actions related to their prosecutorial functions. See Van de Kamp, 555 U.S. at 341-42 (citing Imbler, 424 U.S. at 417-426); see also Candelaria v. Robinson, 1980-NMCA-003, ¶ 7, 93 N.M. 786 (in a defamation suit brought against district attorney and assistant district attorney, the court acknowledged that the issue of absolute immunity for the prosecutors involved, in part, the concept of judicial immunity because the office of the district attorney is a quasi-judicial office.). Therefore, §41-4A-10 demonstrates that other forms of immunity, including prosecutorial immunity, are still viable defenses under the NMCRA. See Bolen v. NM Racing Comm'n, 2024-NMCA-056, ¶ 12, 553 P.3d 492 (concluding that, in "[r]eading Sections 41-4A-10, -2, and -3(C) together," "a public body that is sued under the [NM]CRA may raise judicial immunity, as well as quasi-judicial immunity, as a defense."), aff'd in relevant part, No. S-1-SC-40427, WL 1553704, ¶¶ 24,

48 (N.M. June 2, 2025) (affirming that a public body may raise judicial immunity as a defense to NMCRA claims and acknowledging that "the same considerations underlying the immunity of judges–broadly, upholding the 'independence' and 'usefulness' of the office ...–also form the basis for immunity of ... prosecutors.") (citations omitted); see also State ex rel. Ward v. Romero, 1912-NMSC-011, ¶ 22, 17 N.M. 88 (stating that under the New Mexico Constitution, the district attorney is a part of the judicial system of the state and is a quasi judicial officer."); Robertson v. New Mexico, No. 2:25-CV-00077-KRS, 2025 WL 754126, at *3 (D.N.M. Mar. 10, 2025) (concluding that the plaintiff's claims under the NMCRA against state-court judges "are legally frivolous because, among other things, they are against persons (including judges) who enjoy absolute immunity from suits for damages.") (citing Stump, 435 U.S. 349 (1978) (judges) and Buckley, 509 U.S. 259 (prosecutors for acts associated with judicial process)).

Further, prosecutorial immunity was so well established when the NMCRA was enacted that this Court should presume that the State legislature would have specifically so provided had it wished to abolish it, just as it did with qualified immunity. See Pierson v. Ray, 386 U.S. 547, 554–555 (1967) (Certain immunities were so well established in 1871, when § 1983 was enacted, that "we presume that Congress would have specifically so provided had it wished to abolish" them.). Thus, it is evident that prosecutorial immunity is a viable defense against Baldwin's NMCRA claims.

The next question is whether Carmack-Altwies' alleged actions are protected by prosecutorial immunity under New Mexico law. While the defense's research did not reveal a published decision specifically applying the doctrine of prosecutorial immunity to NMCRA claims, New Mexico Courts have indicated that the functional approach applied to § 1983 claims should also be utilized for absolute immunity inquiries arising from State law claims. For example, in determining whether a guardian ad

litem was cloaked with quasi-judicial immunity for alleged malpractice in settling a child and parents'
medical malpractice action, the New Mexico Supreme Court followed the lead of the United States
Supreme Court and agreed that a functional approach "should be employed in answering the question[.]"
Collins on Behalf of Collins v. Tabet, 1991-NMSC-013, ¶ 16, 111 N.M. 391, abrogated on other grounds
by State v. Mares, 2024-NMSC-002, ¶ 16, 543 P.3d 1198.[9]  In Collins, the State Supreme Court also
acknowledged that, "[i]n cases involving whether prosecutors may properly claim immunity for acts
taken in the performance of their duties, courts are faced with issues of characterization not unlike that
to be decided in determining whether [the guardian ad litem] is entitled to claim immunity in this case."
Id., ¶ 41 (relying on Imbler and other federal case law.); see Bolen, 2025 WL 1443704, ¶ 41 (citing
Collins and indicating that the function of the challenged conduct must be examined and immunity
applies when it "is integral to a judicial or quasi-judicial proceeding."); Kimbrell v. Kimbrell,
2014-NMSC-027, ¶¶ 2, 13-14, 17, 331 P.3d 915 (holding that the guardian ad litem was entitled to
immunity to the extent that her actions did not clearly fall outside of "the scope of [the district court's]
appointment.").

    In light of the above, the functional approach used to analyze Carmack-Altwies' assertion of
prosecutorial immunity for Baldwin's § 1983 claims is equally applicable to his NMCRA claims against
the FJDA and  leads to the same conclusions.  Baldwin's NMCRA claims against the FJDA should
therefore be dismissed to the extent they are based on Carmack-Altwies' actions in her role as an
advocate and related to the initiation and pursuit of the criminal charges against Baldwin.

---

[9]    See Trujillo v. State, No. 30,840, 2011 WL 5040834, at *2 (N.M. Ct. App. Aug. 15,
2011) (unpublished opinion stating that "[i]n Collins ex rel. Collins v. Tabet, our Supreme Court
discussed that ... prosecutorial ... functions require absolute immunity.") (citation omitted).

## CONCLUSION

Baldwin's § 1983 and NMCRA claims against Carmack-Altwies and the FJDA, respectively, are subject to dismissal with prejudice because Carmack-Altwies' actions related to the initiation and pursuit of the underlying criminal case are protected by absolute prosecutorial immunity. Therefore, the Court must grant Defendants' Motion to Dismiss No. IV.

**WHEREFORE,** State Defendants respectfully request that this Court:

A.      Grant their Motion to Dismiss No. IV;

B.      Dismiss Plaintiff's §1983 and NMCRA claims with prejudice against Mary Carmack-Altwies and the First Judicial District Attorney's Office, respectively, on the grounds of absolute prosecutorial immunity for Carmack-Altwies' alleged conduct taken in her role as an advocate and related to her early decision to charge Baldwin, appointment of Andrea Reeb as special prosecutor, role in filing the original Information and Amended Information, subsequent appointment of Kari Morrissey as a special prosecutor, continued contribution of FJDA resources to Baldwin's prosecution, and role in failing to disclose exculpatory evidence to Baldwin; and

C.      Grant all other relief this Court deems just and proper.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**


By:      /s/ Luis Robles
        Luis Robles
        *Attorney for State Defendants*
        500 Marquette Ave., NW, Suite 700
        Albuquerque, New Mexico 87102
        (505) 242-2228
        (505) 242-1106 (facsimile)
        luis@roblesrael.com

I hereby certify that the foregoing was
electronically filed through the CM/ECF
on this  29th  day of October 2025, to all
counsel of record.


 /s/ Luis Robles
Luis Robles