**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

Alexander R. Baldwin III,

      Plaintiff,

vs.                                                                  Case No. CIV-25-01052 KWR/KK

Kari T. Morrissey, Mary Carmack-Altwies,
Andrea Reeb, Jennifer Padgett Macias, The First
Judicial District Attorney's Office, Alexandria
Hancock, Marissa Poppell, Brian Brandle, and
Santa Fe County Board of County
Commissioners,

      Defendants.

**DEFENDANTS ANDREA REEB AND THE FIRST JUDICIAL DISTRICT
ATTORNEY'S OFFICE'S MOTION TO DISMISS NO. V: PLAINTIFF'S § 1983 AND
NEW MEXICO CIVIL RIGHTS ACT CLAIMS ON THE BASIS OF ABSOLUTE
PROSECUTORIAL IMMUNITY FOR ANDREA REEB'S ACTIONS WHICH
WERE TAKEN IN HER ROLE AS AN ADVOCATE AND RELATED TO THE
<u>INITIATION AND PURSUIT OF THE CRIMINAL CHARGES AGAINST PLAINTIFF</u>**

Defendants, Andrea Reeb and The First Judicial District Attorney's Office (collectively

"State Defendants"), through their attorney Robles, Rael & Anaya, P.C. (Luis Robles), state the

following for their Motion to Dismiss No. V: Plaintiff's § 1983 and New Mexico Civil Rights Act

Claims on the Basis of Absolute Prosecutorial Immunity For Andrea Reeb's Actions Which Were

Taken in Her Role as an Advocate and Related to the Initiation and Pursuit of the Criminal Charges

Against Plaintiff ("Motion to Dismiss No. V):[1]

---

[1]      The undersigned counsel did not seek concurrence from Plaintiff's counsel as they
are not required to seek concurrence on this dispositive motion.

**INTRODUCTION**

This case arises from the criminal prosecution of Plaintiff Alexander R. Baldwin III ("Baldwin") for the October 2021 shooting death of cinematographer Halyna Hutchins ("Hutchins") during the rehearsal of a shootout scene on a movie set outside Santa Fe, New Mexico. The gun Baldwin was holding for this scene was supposed to be loaded with dummy rounds. However, a live round discharged from Baldwin's gun and struck Hutchins, traveling through her body, exiting, and then striking writer-director Joel Souza ("Souza") in the shoulder. Hutchins died from her injuries.

The Complaint includes several allegations regarding Special Prosecutor Andrea Reeb ("Reeb") with which she disagrees. However, as required by Fed. R. Civ. P. 12(b)(6), Reeb must accept the well-pleaded factual allegations as true for purposes of this motion. First Judicial District Attorney Mary Carmack-Altwies ("DA Carmack-Altwies") allegedly decided to prosecute Baldwin early into the investigation. About ten months later, DA Carmack-Altwies appointed Reeb, a former Ninth Judicial District Attorney, as a special prosecutor to assist with the prosecutions of individuals believed to have criminal culpability for the shooting. DA Carmack-Altwies stayed on as co-counsel. At the time, Reeb was campaigning for elected office. Reeb prosecuted Baldwin allegedly to harass or humble him or to further her own personal or professional ambitions. To this end, Reeb allegedly reviewed the Santa Fe County Sheriff's Office ("SFSO") report, interviewed witnesses, took proffers and hired experts. The State, in part through Reeb, formally filed criminal charges against Baldwin. After Reeb won the election and was sworn in as a State Representative, Baldwin's counsel filed a motion challenging Reeb's authority to continue prosecuting Baldwin while also serving in the State Legislature, claiming it violated the separation of powers doctrine. Before the court ruled, Reeb

withdrew from Baldwin's case.

Baldwin claims his rights were violated when, (1) driven by improper motives and (2) acting pursuant to an invalid appointment, Reeb (3) made statements to the media; (4) may have had involvement in law enforcement's investigation; (5) took action related to the initiation and pursuit of the criminal charges against Baldwin; and (6) continued to serve as a special prosecutor after being sworn in as a State Representative.  On these bases, Baldwin asserts claims under 42 U.S.C. § 1983 and the New Mexico Civil Rights Act ("NMCRA"), NMSA 1978, § 41-4A-1 (2021), *et seq.*, against Reeb and the First Judicial District Attorney's Office ("FJDA"), respectively, for Reeb's actions.  See Complaint, ¶¶ 256-269, 296-310 (First and Sixth Claims for Relief) [Doc. No. 1-1] ("Compl.").[2]

This motion does *not* seek the dismissal of Baldwin's claims to the extent they are based on Reeb's alleged statements to the media or role in SFSO's investigation.  Instead, this motion seeks the dismissal of Baldwin's claims only to the extent they are based on Reeb's actions in her role as an advocate for the State related to the initiation and pursuit of the criminal charges against Baldwin. Regardless of her motivations, Reeb was duly appointed and is protected by prosecutorial immunity for reviewing the SFSO report, interviewing witnesses, taking proffers, retaining experts, and filing the formal criminal charges.  In these instances, Reeb was acting as advocate for the State and performing duties intimately associated with the judicial process. Further, Reeb's entitlement to absolute immunity was not negated after she was elected and sworn in as a State representative

---

[2]    Specifically, the following causes of action are relevant to this motion: (1) conspiracy to cause malicious prosecution and deprivation of civil rights pursuant to 42 U.S.C. § 1983 against all Defendants, which includes Reeb and (2) violation of N.M. Const. art. II, §§ 4, 18, 19 pursuant to the NMCRA against the FJDA, in part, for Reeb's conduct. See Compl., ¶¶ 256-269, 296-310.

because this does not violate the separation of powers doctrine.

## STATEMENT OF FACTS AND STANDARD OF REVIEW

As allowed by D.N.M.LR-Civ. 7.1(a), State Defendants hereby incorporate by reference the Statement of Facts and Standard of Review set forth in *Defendants Mary Carmack-Altwies and Andrea Reeb's Motion to Dismiss No. I: Plaintiff's Defamation Claim for Failure to State a Claim*, pp. 2-17 (filed October 28, 2025) [Doc. No. 7], as though fully set forth herein.

## LEGAL ARGUMENT

**I.     ABSOLUTE PROSECUTORIAL IMMUNITY SHIELDS ANDREA REEB FROM LIABILITY FOR § 1983 DAMAGES FOR HER ACTIONS RELATED TO THE INITIATION AND PURSUIT OF CRIMINAL CHARGES AGAINST BALDWIN.**

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." Imbler v. Pachtman, 424 U.S. 409, 420 (1976); see Burns v. Reed, 500 U.S. 478, 492 (1991) (explaining absolute immunity applies to prosecutors because the "substantial likelihood of vexatious litigation ... might have an untoward effect on the independence of the prosecutor").  "Absolute prosecutorial immunity attaches only to those activities 'intimately associated with the judicial phase of the criminal process.'" England v. Henricks, 880 F.2d 281, 285 (10th Cir. 1989) (quoting Imbler, 424 U.S. at 430).  While this immunity generally does not apply when a prosecutor is engaged in investigative or administrative tasks, see Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009), it may attach to such tasks "when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court," Mink v. Slithers, 482 F.3d 1244, 1261 (10th Cir. 2007) (internal quotation marks and citation omitted).

To determine whether absolute immunity applies, courts use a functional approach,

"focus[ing] on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question of whether it was lawful." Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993). These activities generally involve "actions that cast [the prosecutor] in the role of an advocate initiating and presenting the government's case." Mink, 482 F.3d at 1261. As the Tenth Circuit has "summarized, 'Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court.'" Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1209 (10th Cir. 2022) (quoting Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1164 (10th Cir. 2009)). "Since Imbler, courts have broadly defined the scope of a prosecutor's absolute immunity." Hammond v. Bales, 843 F.2d 1320, 1321 (10th Cir. 1988).

Moreover, under a functional approach, a prosecutor's motives for acting are irrelevant to the prosecutorial immunity inquiry. See Lerwill v. Joslin, 712 F.2d 435, 441 (10th Cir. 1983) (holding that absolute immunity applied even though the prosecutor "rather than mistakenly citing the wrong statute in prosecuting the Lerwills, might have intentionally or even maliciously done so in order to harm them."). "[S]ince absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." Dorman v. Higgins, 821 F.2d 133, 139 (2nd Cir. 1987). Here, regardless of her alleged motivation(s) or the impropriety of her conduct, Reeb, a duly appointed special prosecutor, is entitled to absolute immunity for her actions related to the initiation and pursuit of the charges against Baldwin, even

after being sworn in as an elected official.

### A.    Andrea Reeb's Motives Are Irrelevant to the Absolute Immunity Inquiry.

Reeb's actions were allegedly "driven by ill motives and to accomplish illegitimate ends, including to harass or 'humble' Baldwin" "or to further [her] own personal agendas or professional ambitions." Compl., ¶ 260; see, e.g., id., ¶ 4 ("Defendants sought ... to scapegoat Baldwin for the acts and omissions of others, regardless of the evidence or the law."). Specifically, Reeb allegedly used Baldwin's prosecution "to advance her simultaneous run for the New Mexico Legislature." Id., ¶ 4. Even accepting these allegations, a prosecutor's motivations are irrelevant to the absolute immunity inquiry. Lerwill, 712 F.2d at 441 (holding absolute immunity applied even though the prosecutor "intentionally or even maliciously" prosecuted the plaintiffs "in order to harm them" because, even "if this is true, it is a cost required by Imbler to be paid so that honest prosecutors do not shrink from fearless advocacy."); see Dorman, 821 F.2d at 139 (stating "absolute immunity spares the official any scrutiny of his motives[.]"); Lacey v. Maricopa Cnty., 693 F.3d 896, 934 (9th Cir. 2012) (finding county attorney's appointment of a particular special prosecutor is "immune from judicial scrutiny under § 1983" even though "the appointment ... may carry the air of politics (or even the stench of cronyism)."). Therefore, Reeb's motivations need not be addressed further.

### B.    Reeb's Actions Were Taken Pursuant to Her Valid Appointment.

The Complaint claims absolute immunity does not apply to Reeb's actions because "they were performed ... pursuant to an invalid appointment." Compl., ¶ 262. However, the Complaint does not allege that DA Carmack-Altwies lacked authority to appoint Reeb or that the appointment was procedurally invalid. See id., ¶¶ 16, 101, 104, 136 (addressing Reeb's appointment). Instead,

6

Reeb's appointment was allegedly invalid because DA Carmack-Altwies stayed on as co-counsel. See id., ¶ 136 (alleging that, at a hearing, "the judge challenged Carmack-Altwies's ability to remain alongside *any* special prosecutor[.]") (emphasis in original). This does not preclude the application of prosecutorial immunity to Reeb's actions if it is otherwise applicable.

Prosecutors retain absolute immunity, even if they act in excess of their authority, as long as they have at least a semblance of authority that does not run far afield of their job description. See Snell v. Tunnell, 920 F.2d 673, 694 (10th Cir.1990) ("[w]hile a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority"); Lerwill, 712 F.2d at 439 ("Even if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing the technical bounds of the power conferred on him by local law."). It is important to remember that "[f]or purposes of prosecutorial immunity under § 1983-a question of federal law-the question is whether the [] Defendants' conduct was functionally prosecutorial, not whether they had a proper delegation of prosecutorial authority under state law." Weinberg v. Vill. of Clayton, N.Y., 2018 WL 4214363, at *10 (N.D.N.Y. Mar. 21, 2018) (citations omitted); see Gonzales v. Schutt, 2015 WL 4545741, at *5 (D. Or. July 23, 2015) (concluding that prosecutor who did not validly hold office under the state constitution at the time he acted was nonetheless entitled to prosecutorial immunity when performing prosecutorial functions because the functional approach looks at the nature of the function performed, not the identity of the actor who performed it.).

Here, Reeb had a colorable claim of authority because her appointment, at a minimum, was

arguably valid under State law. <u>See</u> NMSA 1978, §36-1-23.2 (a "district attorney may, when he cannot prosecute a case for ethical reasons or other good cause, appoint a practicing member of the bar of this state to act as special assistant district attorney."); <u>State v. Hollenbeck</u>, 1991-NMCA-060, ¶ 14, 112 N.M. 275 ("The reason that the district attorney 'cannot prosecute' a case need not be a legal or ethical reason; it could be a matter of lack of resources."). The State's appellate courts have not addressed whether a district attorney may continue as co-counsel after appointing special prosecutor to a particular case. However, it is established that a district attorney generally retains "full duty, authority, and discretion to make decisions concerning Defendant's case" even after appointing a special prosecutor. <u>State v. Surratt</u>, 2016-NMSC-004, ¶ 29, 363 P.3d 1204; <u>see</u> <u>Hollenbeck</u>, 1991-NMCA-060, ¶ 14 (stating a special prosecutor's "actions were subject to review and control by the appointing authority, the district attorney."). Here, the Complaint does not allege that DA Carmack-Altwies or anyone within the FJDA had a conflict that prevented them from continuing as co-counsel alongside Reeb. <u>See</u> <u>generally</u> Compl. Even if it was unlawful for Reeb to serve as a special prosecutor alongside DA Carmack-Altwies, Reeb still had an arguable basis of authority grounded in State law. <u>See</u> <u>Snell</u>, 920 F.2d at 694. Thus, Reeb should not be deprived of absolute immunity if it is otherwise applicable based on the functions she performed.[3]

---

[3]     Additionally or alternatively, Reeb retained de facto authority to participate in Baldwin's criminal case and is therefore entitled to prosecutorial immunity if it is otherwise applicable. "The de facto officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." <u>Ryder v. United States</u>, 515 U.S. 177, 180–81 (1995) (citation omitted). This "doctrine springs from the fear of the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question, and seeks to protect the public by insuring the orderly functioning of the government despite technical defects in title to office." <u>Id.</u> (citation and footnote omitted); <u>see</u>
(continued...)

**C.    Andrea Reeb Is Entitled to Absolute Immunity for Reviewing the SFSO Report, Interviewing Witnesses, Taking Proffers and Engaging Experts as Such Actions Are Within the Scope of a Prosecutor's Duties in Determining Whether to File Charges, What Charges to File, and Preparing for Trial.**

The shooting occurred on October 21, 2021. See Compl., ¶¶ 46, 56. SFSO's investigation began that day, within minutes of the 911 call, and SFSO interviewed Baldwin later that day. See id., ¶¶ 63, 68. DA Carmack-Altwies "decided to criminally charge Baldwin 'pretty close to the beginning of the investigation.'" Id., ¶ 98. Then, about ten months after SFSO's investigation commenced, in August 2022, DA Carmack-Altwies appointed Reeb as a special prosecutor to assist with "the *Rust* case." Id., ¶ 16; compare id., ¶¶ 46, 55-56 with id., ¶ 101 (indicating approximately ten months passed from the date of the shooting to the date of Reeb's appointment). Though DA Carmack-Altwies continued on as co-counsel, "Reeb immediately became the point of contact for defense counsel and indicated that she was the primary attorney reviewing the SFSO report and handling the investigation. She interviewed witnesses, took proffers, engaged experts, and handled other important matters." Id., ¶ 105; see, e.g., id., ¶¶ 115, 136 (indicating that DA Carmack-Altwies remained on the case). The Complaint does not specify *when* Reeb performed these tasks, see

_____

[3](...continued)
Horwitz v. State Bd. of Med. Exam'ers of State of Colo., 822 F.2d 1508, 1515 (10th Cir.1987) (concluding that prosecutors who had not taken required oath of office were at least de facto public officials and their prosecutorial actions were still entitled to absolute immunity); Charleston v. Pate, 194 S.W.3d 89, 91 (Tex. App. 2006) (stating that status as de facto assistant district attorney was sufficient to confer prosecutorial immunity, reasoning that "[i]t is the nature of one's activity, not one's title or qualifications, that gives rise to the prosecutorial immunity.") (citation omitted).

Here, it appears the Complaint is alleging that Reeb lacked the authority to participate in Baldwin's prosecution because DA Carmack-Altwies continued to serve as co-counsel. Even if this is accurate, Reeb had de facto authority to take prosecutorial actions. Such de facto authority may not be collaterally attacked in this proceeding. Reeb should thus be entitled to prosecutorial immunity if it is otherwise applicable as demonstrated in the following sections of this motion.

generally id., but it must have been some time between her appointment in August 2022 and withdrawal in March 2023, see id., ¶ 16. Also, the Complaint does not indicate whether Reeb's actions occurred before or after the criminal information was filed on January 31, 2023. See id., ¶124. Still, the Complaint claims that prosecutorial immunity does not protect Reeb's actions because "they were performed in an administrative or investigative capacity beyond the prosecutorial function, [and] before any determination of probable cause was made ...." Id., ¶ 262. This conclusory assertion is unsupported by the law and well-pleaded facts. First, a prosecutor does not have to demonstrate the existence of probable cause for absolute immunity to apply as long as her actions were taken in her role as an advocate in preparation to initiate criminal charges or for trial as is the case here. Alternatively, even if probable cause is required before a prosecutor can be deemed an advocate, the well-pleaded factual allegations demonstrate that probable cause existed before Reeb's appointment.

"[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Imbler, 424 U.S. at 431 n. 33. "[A]bsolute immunity may attach even to ... administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." Mink, 482 F.3d at 1261 (internal quotation marks and citation omitted). In the role of an advocate, prosecutors are regularly required to decide questions such as "whether to file an information, whether and when to prosecute, ... which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." Imbler, 424 U.S. at 431 n. 33. Moreover, the

Tenth Circuit has rejected the argument that, as a rule, prosecutors cannot function as advocates before they have sufficient evidence to support probable cause. See Chilcoat, 41 F.4th at 1211.

> It is true that activities undertaken by a prosecutor before probable cause *exists* often lie outside the purview of a prosecutor's role as an advocate. Buckley, 509 U.S. at 274 []. But while a lack of probable cause is a good clue a prosecutor is engaging in activity beyond the scope of advocacy, *it is not determinative*.

Warnick v. Cooley, 895 F.3d 746, 752 (10th Cir. 2018) (emphasis added); Mink, 482 F.3d at 1261 (acknowledging "there is no bright line between advocacy and investigation.").

In Mink, the Tenth Circuit articulated factors to guide the functional analysis in situations involving "pre-indictment acts," "such as (1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." 482 F.3d at 1261 (citations omitted). However, "Mink does not stand for the proposition that a district court errs by failing to consider every articulated factor" as long as it correctly applies the functional approach. Chilcoat, 41 F.4th at 1210 n. 18.

**1.  Applying the functional approach, Reeb's review of the SFSO report, witnesses interviews, obtaining proffers, and hiring experts are protected by absolute immunity because these actions are within the role of an advocate preparing to initiate and pursue charges.**

Here, seemingly months *after* DA Carmack-Altwies made the decision to charge Baldwin, Reeb was appointed and reviewed the SFSO report, interviewed witnesses, took proffers and hired experts. Based on these circumstances, Reeb's actions cannot reasonably be deemed to be part of SFSO'S preliminary investigation into the shooting incident. Instead, her actions are akin to those of an advocate for the State in preparation to formally initiate and pursue criminal charges against Baldwin. For example, Reeb's actions are tantamount to (1) evaluating the evidence by reviewing

SFSO's report; (2) conducting her own investigatory or evidence-gathering actions by interviewing witnesses and obtaining proffers; (3) determining what witnesses and evidence to include in the charging document(s) and/or to present to the court and jury by reviewing the SFSO report, interviewing witnesses and obtaining proffers; and (3) further evaluating the evidence and determining how to present or explain such evidence in the charging document(s), to the court, and/or the jury by retaining experts who assist with these tasks. These types of prosecutorial actions have been deemed to be intimately related to the judicial process, as they are necessary both to the initiation and pursuit of criminal charges. See Buckley, 509 U.S. at 273, 284 (stating a prosecutor has absolute immunity for "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury *after a decision to seek* an indictment has been made" and may include "preindictment consultation" with witnesses) (emphasis added); Imbler, 424 U.S. at 431 n. 33 (stating "the duties of the prosecutor in his role as advocate for the State" include determining "which witnesses to call and what other evidence to present.").[4] These actions also involve uniquely prosecutorial functions and require the exercise of professional

---

[4]    See also Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1491 (10th Cir. 1991) ("As part of preparing a complaint pursuant to the Board[ of Medical Examiner's] ... referral, [individual state attorneys] necessarily had to investigate the incidents that would form the basis of that complaint."); Scott v. Hern, 216 F.3d 897, 909 (10th Cir. 2000) ("investigation immunized conduct includes [the prosecutor's own] investigation, or lack thereof[.]"); Norales v. Acevedo, 2022 WL 17958450, at *3 (2d Cir. Dec. 27, 2022) (unpublished) ("[I]nterviewing potential witnesses, conducting proffer sessions, and drafting criminal complaints are prosecutorial functions to which absolute immunity applies.") (citation omitted); Van Deelen v. City of Eudora, Kan., 53 F. Supp. 2d 1223, 1229 (D. Kan. 1999) (concluding the prosecutor "is entitled to absolute immunity for his prosecutorial actions in reviewing and evaluating the evidence found in the police offense reports and witness statements ...."); McDonough v. Smith, 2022 WL 3279348, at *18 (N.D.N.Y. Aug. 11, 2022) (unpublished) ("Defendant taking a proffer from a witness ... is clearly conduct 'undertaken by a prosecutor in preparing for the initiation of judicial proceedings' and is protected by absolute prosecutorial immunity.") (quoting Buckley, 509 U.S. at 273).

judgment. See Mink, 482 F.3d at 1261.

Notably, there are no well-pleaded allegations in the Complaint indicating that Reeb took these specific actions in conjunction with the SFSO, under the direction of the SFSO or to assist SFSO with its own law enforcement investigation. In other words, the Complaint does not allege with any specificity that what Reeb did was strictly in an administrative or investigative capacity that cannot be said to be related to her preparation for the initiation of a prosecution or trial, especially given that DA Carmack-Altwies made the decision to prosecute Baldwin *before* Reeb's appointment. See Pfeiffer, 929 F.2d at 1490-91 (concluding that state attorneys were entitled to summary judgment based on absolutely immunity for their investigation of charges against physician, in part, because there was no evidence their "participation in any investigation of these incidents was unnecessary to their preparation of the case against [the physician].") (footnote omitted). "And without any specific factual allegations, [Baldwin's] complaint simply cannot cross the line from a merely possible claim of [investigatory or administrative action unrelated to Baldwin's prosecution] to a plausible one." Warnick, 895 F.3d at 753 (citation omitted). If Baldwin were allowed to proceed with discovery based on the Complaint's conclusory assertion that Reeb's actions were administrative and investigative, he could effectively bypass and undercut the protection granted to prosecutors through the doctrine of absolute immunity. See Ashcroft v. Iqbal, 556 U. S. 662, 679 (2009) (If, in the end, a plaintiff's "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim). For the reasons stated above and applying prosecutorial immunity broadly as required by the Tenth Circuit, Reeb's review of the SFSO report, interviews of witnesses, taking of proffers, and hiring experts – after DA Carmack-Altwies had

already made the decision to criminally charge Baldwin – fall squarely within the ambit of prosecutorial functions protected by absolute immunity.

> **2.** **Even assuming a prosecutor's actions cannot be deemed advocacy before probable cause exists, here probable cause existed when the DA Carmack-Altwies decided to charge Baldwin "pretty close to the beginning" of the investigation.**

Even assuming a prosecutor's actions cannot be deemed advocacy before probable cause exists, here the well-pleaded allegations demonstrate that probable cause existed when DA Carmack-Altwies made the decision to charge Baldwin early on in the investigation. This further supports a finding that Reeb's actions were those of an advocate preparing to initiate formal charges against Baldwin.

"Probable cause exists when facts and circumstances within the officers' knowledge are adequate to warrant a person of reasonable caution to believe that an offense has been or is being committed." State v. Goss, 1991-NMCA-003, ¶ 17, 111 N.M. 530. "[T]he existence of probable cause is reviewed within the realm of probabilities rather than in the realm of certainty." State v. Henz, 2022-NMCA-031, ¶ 8, 514 P.3d 1(internal quotation marks and citation omitted). Here, the Complaint alleges Baldwin was holding the gun in the direction of Hutchins and cocked it when it discharged a live round, fatally injuring Hutchins and striking Souza in the shoulder. See Compl., ¶¶ 53-56, 62, 67. The Complaint also concedes that Baldwin did not check the gun himself before aiming it in the direction of Hutchins and cocking it. See id., ¶¶ 47-51, 69 (indicating that other crew members inspected the gun, but Baldwin did not). Baldwin failed to personally check the gun even though he was familiar with guns, having received gun training throughout his career and again after he arrived on this movie set. See id., ¶¶ 42-43. These facts alone are sufficient to establish probable

cause that Baldwin committed one or more crimes, including involuntary manslaughter or negligent use of a deadly weapon. <u>See</u>, <u>e.g.</u>, NMSA 1978, § 30-2-3(B) (involuntary manslaughter); NMSA 1978, § 30-7-4 (A) (negligent use of a deadly weapon).[5]  Further, probable cause is not negated by Baldwin's assertion that it was not his job to check the gun for live ammunition. <u>See</u> <u>Young</u>, 2021-NMCA-049, ¶ 28 (concluding that a reasonable jury could convict the defendant of negligent use of a firearm even though he was friends with the victim and claimed he did not know the gun was loaded when he pulled the trigger because he had previously observed his roommate eject the bullet from the chamber and remove the magazine).  Because the well-pleaded facts demonstrate that probable cause existed to believe Baldwin had committed a criminal offense by the time of Reeb's appointment, this supports the conclusion that Reeb's review of the SFSO report, interview of witnesses, taking of proffers and retention of experts are prosecutorial actions protected by absolute immunity.

### D.    Reeb Is Absolutely Immune for Her Formal Charging Decisions.

"On January 31, 2023, the State filed an Information charging Baldwin with two alternative felony counts of involuntary manslaughter," with the alternative count including a firearm

---

[5]    <u>See</u>, <u>e.g.</u>, NMSA 1978, § 30-2-3(B) ("Involuntary manslaughter consists of manslaughter committed ... in the commission of a lawful act which might produce death ... without due caution and circumspection."); NMSA 1978, § 30-7-4 (A) ("Negligent use of a deadly weapon consists of: (1) discharging a firearm into any building ... or so as to knowingly endanger a person ...; [or] ... (3) endangering the safety of another by handling or using a firearm or other deadly weapon in a negligent manner[.]"); <u>State v. Young</u>, 2021-NMCA-049, ¶¶ 15 and 20, 495 P.3d 1189 ("Criminal negligence exists where the defendant acts with willful disregard of the rights or safety of others and in a manner which endangers any person or property," and the same *mens rea* is required for involuntary manslaughter and negligent use of a firearm.) (internal quotation marks and citation omitted); UJI 14-231 NMRA (defining "criminal negligence" for purposes of involuntary manslaughter as existing where the defendant (1) was aware of the danger or risk his actions posed to the victim, and (2) acted with willful disregard for the safety of the victim).

enhancement. Compl., ¶ 124. The Complaint alleges the firearm enhancement violated the U.S. Constitution's *ex post facto* clause and the State lacked probable cause to charge Baldwin with involuntary manslaughter. See id., ¶¶ 4, 115, 129, 258(c). During the criminal case, Reeb eventually conceded this argument and filed an Amended Information excluding the firearm enhancement. See id., ¶¶ 130, 133. Absolute immunity attaches to Reeb's role in such charging decisions, despite the alleged *ex post facto* violation and lack of probable cause.

Reeb was clearly acting as the State's advocate for her role in filing the original Information and Amended Information. See Imbler, 424 U.S. at 431 (holding that a prosecutor is immune for "initiating a prosecution[.]"). Absolute immunity protects Reeb's filing of the original charges even though the firearm enhancement statute was not in effect at the time of the underlying shooting incident, resulting in a violation of the U.S. Constitution's *ex post facto* clause. See Lerwill, 712 F.2d at 441(absolute immunity applied even though the prosecutor mistakenly or intentionally used the wrong statute to charge plaintiffs.); see also Norton v. Liddel, 620 F.2d 1375, 1379 (10th Cir. 1980) (stating it is clear that plaintiffs "have no right to civil redress" against a prosecutor "in connection with his initiation of criminal charges against plaintiffs" even though the prosecutor's "actions may have been undertaken maliciously, intentionally, and in bad faith [.]").[6] Further, absolute immunity is not negated even if – as the Complaint alleges – the State did not have actual probable cause to

---

[6]      Further, Reeb is not deprived of absolute immunity for charging Baldwin with a felony while the State charged First Assistant Director Dave Halls with only a petty misdemeanor for his role in the underlying incident. See Compl., ¶ 127; see also Celia v. O'Malley, 918 F.2d 1017, 1020 (1st Cir. 1990) (stating "[a]bsolute immunity is afforded to prosecutors ... to ensure the independence and effectiveness of the criminal justice system" and "the decision to try a defendant for a *particular crime* is at the heart of that system.") (emphasis added and citing Imbler, 424 U.S. at 424-29).

support the charges filed against Baldwin in the original Information or Amended Information. See Kalina v. Fletcher, 522 U.S. 118, 130 (1997) (absolute prosecutorial immunity applies to functions such as a prosecutor's "determination that the evidence was sufficiently strong to justify a probable-cause finding[.]"); Warnick, 895 F.3d at 752 (holding that "[s]ome functions – like filing charges – are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists. Hence, the well-settled rule that prosecutors are 'entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause to indict.'") (quoting Buckley, 509 U.S. at 274 n. 5). This is consistent with the "the Imbler approach [which] focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Buckley, 509 U.S. at 271. Based on the foregoing, Reeb is entitled to absolute immunity for filing the original Information and Amended Information, despite any legal errors.

### E. Andrea Reeb's Dual Service as a Special Prosecutor and State Legislator Does Not Violate the Separation of Powers Clause, and Even If it Did, Such Violation Does Not Deprive Her of Absolute Immunity If it Is Otherwise Applicable.

The Complaint incorrectly asserts that Reeb's "simultaneous role in the state legislature" deprived her of the "constitutional and statutory authority to charge Baldwin with any offense." Compl., ¶ 258(d). Reeb's dual roles as a special prosecutor and State legislator do not violate the separation of powers doctrine. Moreover, even if her dual roles violated the separation of powers doctrine, Reeb still had an arguable basis of authority to charge Baldwin.

#### 1. Reeb's dual role as a special prosecutor and State legislator does not violate the separation of powers doctrine.

Baldwin's allegation that Reeb lost her authority to serve as a special prosecutor once she was

sworn into office as a State legislator is incorrect. "Whether an elected legislator may serve as a special assistant district attorney without violating the separation of powers doctrine of the New Mexico Constitution is a question of first impression that has not been answered by New Mexico's appellate courts." NMAG Op. No. 2024-04, 2024 WL 2288369, at *1 (Feb. 12, 2024). However, Reeb requested and received an answer to this question from the New Mexico Attorney General ("NMAG"). Id.[7] The NMAG issued a well-reasoned opinion that should serve as persuasive authority here. See generally id.; see also In re Dalton, No. BR 7-92-14287-SS, 2002 WL 35650133, at *3, n. 7 (D.N.M. Jan. 23, 2002) (recognizing that attorney general opinions are not binding on the court but may be persuasive authority.); City of Santa Rosa v. Jaramillo, 1973-NMSC-119, ¶ 12, 85 N.M. 747 ("We are not bound by [Attorney General opinions] in any event, giving them such weight only as we deem they merit and no more. If we think them right, we follow and approve, and if convinced they are wrong, *** we reject and decline to feel ourselves bound.") (internal quotation marks and citation omitted).

The NMAG's opinion began by stating that the separation of powers doctrine "prohibits a person charged with the exercise of the powers of one branch of government from exercising the powers of the other branches of government." NMAG Op. No. 2024-04, 2024 WL 2288369, at *3 (citing N.M. Const. Art. III, § 1). The opinion explained that this "doctrine is not absolute and 'permits some overlap of governmental functions'" but "[o]ne branch ... cannot 'unduly encroach[] or interfere[] with the authority of another branch.'" Id. at *1 (quoting State ex rel. Taylor v.

---

[7]    In the underlying criminal case, Baldwin's counsel raised this issue in a motion to disqualify Reeb. See Compl., ¶ 128. After responding to the motion, Reeb announced she was withdrawing from her role as a special prosecutor. Id., ¶ 134-135. The Complaint is silent as to whether the trial court issued a ruling on Baldwin's motion. See generally id.

Johnson, 1998-NMSC-015, ¶ 23, 125 N.M. 343).

> For this provision to apply, the person must be a public officer "invested with sovereign power." State ex rel. Stratton v. Roswell Indep. Schs., 1991-NMCA-013, ¶ 30, 111 N.M. 495. This requirement "exists because the evil to be prevented is that of one branch treading outside its constitutional boundary into the area of another." Id. Public employees, as opposed to public officers, do not "establish policy" for the state or exercise sovereign power. Id. ¶ 31. As a result, Article III, Section 1 "applies to public officers, not employees, in the different branches of government." Id. ¶ 35.

Id. at *3.

The NMAG observed that, in New Mexico, "a public office is defined by the indispensable requirement of a vesting of sovereign power by the Constitution or the Legislature." Id. (citing State ex rel. Gibson v. Fernandez, 1936-NMSC-027, ¶24, 40 N.M. 288).  The  NMAG also examined Roswell Indep. Schs., 1991-NMCA-013, ¶ 30 wherein "the Court of Appeals addressed whether a legislator could serve as a public school teacher." Id. at *4.  In Roswell Indep. Schs., the Court of Appeals "determined that a public school teacher is a public employee, not a public officer," reasoning that "[a] school teacher's relationship to the school board is merely contractual, and a school teacher does not exercise sovereign authority in a way that would prevent the teacher from serving as a legislator." Id. (citing 1991-NMCA-013, ¶¶ 31, 35).

To specifically determine whether the separation of powers doctrine prevents a legislator from serving as a special prosecutor, the NMAG proceeded to carefully examine "the source and nature of authority exercised by a district attorney and the nature of the authority delegated to a special prosecutor under Section 36-1-23.1, as well as the occupation of the special prosecutor as a public prosecutor or private attorney." Id., at *1.  The NMAG's opinion explained that an attorney in private practice who is appointed to serve as a special prosecutor "is not an employee of the

appointing district attorney" and "'does not displace the prosecuting attorney from his [or her] constitutional office.'" Id., at *3 (quoting Weems v. Anderson, 516 S.W.2d 895, 901 (Ark. 1974)); see also Surratt, 2016-NMSC-004, ¶ 26 ("A special prosecutor does not displace the prosecuting attorney from his constitutional office ... ."). The NMAG further stated that, while "[a] special assistant district attorney must take the same oath as an assistant district attorney" and "exercises the power of the district attorney[,]" "the Legislature carefully circumscribed this power to the case or matter for which the special assistant is appointed." Id., at *5 (citing NMSA 1978, § 36-1-23.1 and Surratt, 2016-NMSC-004, ¶ 30.). "In addition, a private attorney appointed as a special assistant is neither a public officer nor a public employee[,] and "instead exercises a power that is 'only temporary or occasional.'" Id. (quoting Fernandez, 1936-NMSC-027, ¶ 10). For these reasons, the NMAG concluded that "a private attorney's isolated exercise of district attorney authority while serving as a special assistant district attorney and a legislator does not violate the separation of powers doctrine[.]" Id.

At the time of her appointment in August 2022, Reeb was campaigning but had not been elected. See Compl., ¶¶ 101, 104. Further, Reeb was not a prosecutor at the time of her appointment. See id., ¶ 16 (stating that at the time Reeb was appointed as a special prosecutor for the *Rust* case, she was "the *former* District Attorney for New Mexico's Ninth Judicial District.") (emphasis added). After her appointment, Reeb "won the election and assumed elected office." Id., ¶ 135. Therefore, for a limited period of time, Reeb served both as a *private* special assistant district attorney on a limited matter - the *Rust* shooting- and a state legislator. Therefore, there was no violation of the separation of power doctrine when Reeb continued to serve as a special prosecutor after she took

office as a State Representative. As a result, Reeb had the authority to charge Baldwin.

> **2. Even if Andrea Reeb's dual service violated the separation of powers clause, such violation does not deprive her of absolute immunity if it is otherwise applicable because she had a colorable claim of authority.**

Even if this Court disagrees with the NMAG opinion and concludes that Reeb violated the separation of powers doctrine by serving in a dual role at the time she filed the criminal charges against Baldwin, this alone does not strip her of absolute immunity. Although "a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing the technical bounds of the power conferred on him by local law." Lerwill, 712 F.2d at 439; see Snell, 920 F.2d at 694 ("While a prosecutor might lose absolute immunity when he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority grounded in a statute.") (citation omitted); Weinberg, 2018 WL 4214363, at *10 ("For purposes of prosecutorial immunity under § 1983 ... the question is whether the [] Defendants' conduct was functionally prosecutorial, not whether they had a proper delegation of prosecutorial authority under state law.") (citations omitted); See Gonzales, 2015 WL 4545741, at *5 (concluding that prosecutor who did not validly hold office under the state constitution at the time he acted was nonetheless entitled to prosecutorial immunity when performing prosecutorial functions.).

Here, after being elected and assuming office as a State Representative, Reeb still had an arguable basis of authority to prosecute Baldwin grounded in New Mexico appellate court precedent and statutes. As fully discussed in Section I(E)(1), supra, of this motion, the New Mexico Court of Appeals interpreted the separation of powers doctrine to preclude a public officer who exercises the

powers of one branch of government from also serving as a public officer who exercises the powers of a different branch of government. See Roswell Indep. Schs., 1991-NMCA-013, ¶¶ 30, 31, 35. Thus, this doctrine does not apply to a public employee of one branch of government who also serves as a public officer of another branch. See id. As specifically explained in the NMAG's opinion, state law supports the conclusion that a private special prosecutor is neither a public employee nor a public officer to which the separation of powers doctrine applies. See NMAG Op. No. 2024-04, 2024 WL 2288369, at *3, 5 (citing NMSA 1978, § 36-1-23.1 and Surratt, 2016-NMSC-004, ¶¶ 26, 30). Even if this Court disagrees with the NMAG's conclusions, the opinion still supports the argument that there is, at least, a colorable argument grounded in State law that a private special prosecutor, such as Reeb, does not violate the separation of powers doctrine by also serving as a State Representative.

Additionally, pursuant to NMSA 1978, § 36-1-23.1, DA Carmack-Altwies appointed Reeb to serve as a private special prosecutor *before* she was elected to a State Representative. Reeb was only campaigning for elected office at the time of her appointment. See Compl., ¶ 101. And, although "[a] special prosecutor does not displace the prosecuting attorney from his [or her] constitutional office[.], ... to be effective in the investigation and prosecution of the matters for which [the special prosecutor] has been appointed, [the special prosecutor] must have the right to proceed in the same manner as the prosecuting attorney." Surratt, 2016-NMSC-004, ¶ 26 (internal quotation marks and citation omitted). Therefore, for the limited purpose of the *Rust* shooting, Reeb's appointment arguably conferred upon her the authority to criminally charge Baldwin on behalf of the State even after she assumed public office. See NMSA 1978, § 36-1-18 (A)(1) (providing that

22

a district attorney shall "prosecute and defend for the state in all courts of record of the counties of his district all cases, criminal and civil, in which the state or any county in his district may be a party or may be interested."); see also Section I(B), supra (addressing Reeb's authority to act as a special prosecutor alongside DA Carmack-Altwies). This authority did not cease immediately upon Reeb's assumption of public office. See Lerwill, 712 F.2d at 439; see Snell, 920 F.2d at 694.[8]

## II.    ABSOLUTE PROSECUTORIAL IMMUNITY APPLIES TO BALDWIN'S CLAIMS ASSERTED PURSUANT TO THE NEW MEXICO CIVIL RIGHTS ACT.

Baldwin's NMCRA claims are asserted against the FJDA for the alleged misconduct of the individual Defendants, including Reeb. See Compl., ¶¶ 296-310 (Sixth Claim for Relief).  The NMCRA provides, in relevant part, that a public body shall be held liable for the "deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico" caused by "individuals acting on behalf of, under color of or within the course and scope of the authority of the public body." NMSA 1978, § 41-4A-3.  Here, however, absolute prosecutorial immunity relieves the FJDA from liability under the NMCRA for Reeb's actions as a special prosecutor that were necessary to initiate or maintain the criminal prosecution against Baldwin.

Absolute prosecutorial immunity is not explicitly addressed in the NMCRA. See NMSA 1978, §41-4A-1 (2021), et seq.  However, the NMCRA does preserve certain immunities.  According to § 41-4A-10, the prohibition on the use of the defense of qualified immunity and the waiver of

---

[8]    Alternatively, and as fully addressed in footnote 3 of this motion, Reeb retained de facto authority to prosecute Baldwin by virtue of her appointment as a special prosecutor even after she was sworn into office as a State Representative. See Ryder, 515 U.S. at 180–81; Horwitz, 822 F.2d at 1515. Such de facto authority may not be collaterally attacked in this proceeding. Reeb is therefore entitled to prosecutorial immunity as fully discussed in the preceding sections of this motion.

sovereign immunity under the NMCRA "shall not abrogate judicial immunity, legislative immunity, or any other constitutional, statutory, or common law immunity." See NMSA 1978, § 41-4A-10.

Absolute prosecutorial immunity is a common law immunity and also quasi-judicial immunity. The Supreme Court in Imbler recognized absolute immunity for prosecutors based on the common law tradition, which granted prosecutors immunity from common-law tort actions related to their prosecutorial functions. See Van de Kamp, 555 U.S. at 341-42 (citing Imbler, 424 U.S. at 417-426); see also Candelaria v. Robinson, 1980-NMCA-003, ¶ 7, 93 N.M. 786 (in a defamation suit brought against district attorney and assistant district attorney, the court acknowledged that the issue of absolute immunity for the prosecutors involved, in part, the concept of judicial immunity because the office of the district attorney is a quasi-judicial office.). Therefore, § 41-4A-10 demonstrates that other forms of immunity, including prosecutorial immunity, are still viable defenses under the NMCRA. See Bolen v. NM Racing Comm'n, 2024-NMCA-056, ¶ 12, 553 P.3d 492 (concluding that, in "[r]eading Sections 41-4A-10, -2, and -3(C) together," "a public body that is sued under the [NM]CRA may raise judicial immunity, as well as quasi-judicial immunity, as a defense."), aff'd in relevant part, No. S-1-SC-40427, WL 1553704, ¶¶ 24, 48 (N.M. June 2, 2025) (affirming that a public body may raise judicial immunity as a defense to NMCRA claims and acknowledging that "the same considerations underlying the immunity of judges–broadly, upholding the 'independence' and 'usefulness' of the office ...–also form the basis for immunity of ... prosecutors.") (citations omitted); see also State ex rel. Ward v. Romero, 1912-NMSC-011, ¶ 22, 17 N.M. 88 (stating that under the New Mexico Constitution, the district attorney "is a part of the judicial system of the state[,]" and "he is a quasi judicial officer."); Robertson v. New Mexico, No.

2:25-CV-00077-KRS, 2025 WL 754126, at *3 (D.N.M. Mar. 10, 2025) (concluding that the plaintiff's claims under the NMCRA against state-court judges "are legally frivolous because, among other things, they are against persons (including judges) who enjoy absolute immunity from suits for damages.") (citing Stump, 435 U.S. 349 (1978) (judges) and Buckley, 509 U.S. 259 (prosecutors for acts associated with judicial process)).

Further, prosecutorial immunity was so well established when the NMCRA was enacted that this Court should presume that the State legislature would have specifically so provided had it wished to abolish it, just as it did with qualified immunity. See Pierson v. Ray, 386 U.S. 547, 554–555 (1967) (Certain immunities were so well established in 1871, when § 1983 was enacted, that "we presume that Congress would have specifically so provided had it wished to abolish" them.). Thus, it is evident that prosecutorial immunity is a viable defense against Baldwin's NMCRA claims.

The next question is whether Reeb's alleged actions are protected by prosecutorial immunity under New Mexico law. While the defense's research did not reveal a published decision specifically applying the doctrine of prosecutorial immunity to NMCRA claims, New Mexico Courts have indicated that the functional approach applied to § 1983 claims should also be utilized for absolute immunity inquiries arising from State law claims. For example, in determining whether a guardian ad litem was cloaked with quasi-judicial immunity for alleged malpractice in settling a child and parents' medical malpractice action, the New Mexico Supreme Court followed the lead of the United States Supreme Court and agreed that a functional approach "should be employed in answering the question[.]" Collins on Behalf of Collins v. Tabet, 1991-NMSC-013, ¶ 16, 111 N.M.

391, <u>abrogated on other grounds by</u> <u>State v. Mares</u>, 2024-NMSC-002, ¶ 16, 543 P.3d 1198.[9]  In

<u>Collins</u>, the State Supreme Court also acknowledged that, "[i]n cases involving whether prosecutors

may properly claim immunity for acts taken in the performance of their duties, courts are faced with

issues of characterization not unlike that to be decided in determining whether [the guardian ad

litem] is entitled to claim immunity in this case." <u>Id.</u>, ¶ 41 (relying on <u>Imbler</u> and other federal case

law.); <u>see</u> <u>Bolen</u>, 2025 WL 1443704, ¶ 41 (citing <u>Collins</u> and indicating that the function of the

challenged conduct must be examined and immunity applies when it "is integral to a judicial or

quasi-judicial proceeding."); <u>Kimbrell v. Kimbrell</u>, 2014-NMSC-027, ¶¶ 2, 13-14, 17, 331 P.3d 915

(holding that the guardian ad litem was entitled to immunity to the extent that her actions did not

clearly fall outside of "the scope of [the district court's] appointment.").

In light of the above, the functional approach used to analyze Reeb's assertion of

prosecutorial immunity for Baldwin's § 1983 claims is equally applicable to his NMCRA claims

against the FJDA and leads to the same conclusions.  Baldwin's NMCRA claims against the FJDA

should thus be dismissed to the extent they are based on Reeb's actions in her role as an advocate

for the State and related to the initiation and pursuit of the criminal charges against Baldwin.

## CONCLUSION

Baldwin's § 1983 and NMCRA claims against Reeb and the FJDA, respectively, are subject

to dismissal with prejudice because Reeb's actions related to the initiation and pursuit of the

underlying criminal case are protected by absolute prosecutorial immunity. Therefore, the Court must

---

[9]    <u>See</u> <u>Trujillo v. State</u>, No. 30,840, 2011 WL 5040834, at *2 (N.M. Ct. App. Aug. 15, 2011) (unpublished opinion stating that "[i]n <u>Collins ex rel. Collins v. Tabet</u>, our Supreme Court discussed that ... prosecutorial ... functions require absolute immunity.") (citation omitted).

grant State Defendants' Motion to Dismiss No. V.

**WHEREFORE,** State Defendants respectfully request that this Court:

A.      Grant their Motion to Dismiss No. V;

B.      Dismiss Plaintiff's §1983 and NMCRA claims with prejudice against Andrea Reeb and the First Judicial District Attorney's Office, respectively, on the grounds of absolute prosecutorial immunity for Andrea Reeb's alleged conduct taken in her role as an advocate and related to her review of the SFSO report, interviews of witnesses, obtaining proffers, hiring experts, and her role in preparing and filing the original Information and the Amended Information against Baldwin; and

C.      Grant all other relief this Court deems just and proper.

Respectfully submitted,

**ROBLES, RAEL & ANAYA, P.C.**

By:      /s/ Luis Robles
         Luis Robles
         *Attorney for State Defendants*
         500 Marquette Ave., NW, Suite 700
         Albuquerque, New Mexico 87102
         (505) 242-2228
         (505) 242-1106 (facsimile)
         luis@roblesrael.com

I hereby certify that the foregoing was electronically filed through the CM/ECF on this  29th  day of October 2025, to all counsel of record.

 /s/ Luis Robles
Luis Robles