UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

Alexander R. Baldwin III,

    Plaintiff,

vs.                                                                          Case No. CIV-25-01052 KWR/KK

Kari T. Morrissey, Mary Carmack-Altwies,
Andrea Reeb, Jennifer Padgett Macias, The First
Judicial District Attorney's Office, Alexandria
Hancock, Marissa Poppell, Brian Brandle, and
Santa Fe County Board of County
Commissioners,

    Defendants.

## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendants Alexandria Hancock, Marissa Poppell, Brian Brandle and the Santa Fe County Board of County Commissioners move the Court for partial judgment on the pleadings on Counts I and II of the Plaintiff's Complaint. Hancock, Poppell and Brandle are entitled to qualified immunity from these claims under both prongs of the applicable analysis. The complaint also lacks allegations to support a Section 1983 claim against the Board of County Commissioners.

## 1.  Introduction

This lawsuit arises from the criminal trial and ensuing dismissal of charges against Plaintiff Alexander Baldwin for involuntary manslaughter for the shooting death of Halyna Hutchins in October 2021. On January 19, 2024, a New Mexico grand jury indicted Baldwin for the crime of involuntary manslaughter during a

proceeding that State Prosecutor, Defendant Kari Morrissey, initiated in late 2023. *See generally* complaint, Doc. 1-1, filed January 9, 2025 at ¶¶ 2, 3; *see also* Grand Jury Indictment attached as Exhibit 1. The case proceeded to a jury trial in July 2024. According to the complaint, Baldwin, through counsel, filed an expedited motion for dismissal and sanctions based on suppression of evidence by the prosecutor concerning ammunition evidence, a supplemental police report and lapel camera footage. The District Court entered an order on July 31, 2024 granting Baldwin's expedited motion for dismissal and sanctions.

Baldwin then instituted the present action in New Mexico State District Court. The State defendants removed the case to this Court on October 21, 2025. The State defendants filed motions to dismiss, asserting absolute prosecutorial immunity. In the meantime, the Santa Fe County defendants filed an answer to the complaint on January 14, 2026. Pursuant to Fed.R.Civ.P. 12 (c), the County Board, as well as Defendants Hancock, Poppell and Brandle, all employees with the Santa Fe County Sheriff's Office, now seek judgment on the pleadings on Plaintiff's claims under 42 U.S. § 1983 in Counts I and II of the complaint.

As a preliminary matter, the title of Count I ("Malicious Prosecution") states that it is pled "Against All Defendants", which presumably includes the Board of County Commissioners for Santa Fe County. However, there are no allegations in the complaint asserting that the County Board was involved in a malicious prosecution of the plaintiff. *See* Doc. 1-1 ¶¶ at 257-269. Nor is the County Board liable under Section 1983 based on a *respondeat superior* theory. *Monell v.*

*Department of Social Services,* 436 U.S. 658, 691-694 (1978). The complaint also alleges no actionable policy, custom, policymaker decision or causal municipal conduct to support a Section 1983 claim against the Board. *Id.*

As set forth below, Defendants Hancock and Poppell are entitled to absolute immunity for any civil claims based on any grand jury and trial testimony, including any allegations that their testimony was part of a conspiracy with the State to conduct a malicious prosecution against Baldwin. *See infra.* at 8-9.

Second, Defendants Hancock, Brandle and Poppell are entitled to qualified immunity on the malicious prosecution claim in Count I. Plaintiff's allegations do not show that these County defendants instigated or "caused" the State of New Mexico to prosecute Mr. Baldwin for involuntary manslaughter, which is the first element of a malicious prosecution claim. Moreover, the grand jury indictment in 2024 established probable cause, negating the third element of a malicious prosecution claim. Plaintiff's remaining allegations against these County defendants, asserting a conspiracy to do damage to the firearm during FBI testing two years earlier in April 2022 and to misfile ammunition that Troy Teske delivered to the Sheriff's Office in March 2024, *see* Complaint, Doc. 1-1 at ¶258 b & h, do not vitiate probable cause based on the State's theories of the crime, nor is there even an allegation in the complaint to that effect. There is also no clearly established law to support a claim for malicious prosecution by the State against the County defendants based on the plaintiff's allegations. *See infra.* at 13-22.

Count II of the complaint asserts a § 1983 claim against Hancock, Poppell, and Brandle based on alleged suppression of evidence, commonly known as a *Brady* violation. However, Mr. Baldwin's complaint does not allege that he was convicted in the trial, which is necessary to establish a *Brady* claim in this Circuit. Thus, these defendants are entitled to qualified immunity for the claim in Count II due to a lack of a Constitutional violation. Nor is there any clearly established law in this Circuit recognizing a civil *Brady* claim against a County law enforcement officer when a criminal defendant obtains a dismissal as a discovery sanction based on the alleged suppression of evidence by a State prosecutor. *See infra.* at 22-23.

## 2. Motions For Judgment on the Pleadings

Under Rules 12(c) and (h)(2)(B), a court may dismiss a complaint or claim for "failure to state a claim upon which relief may be granted," the reason for dismissal under Rule 12(b)(6). The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to deciding a 12(c) motion for judgment on the pleadings for failure to state a claim. *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) "[T]he sufficiency of a complaint is a question of law[.]" *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) govern the analysis regarding the sufficiency of the complaint. To withstand a motion asserting failure to state a claim, a "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir.

2011) (quoting *Twombly*, 550 U.S. at 570). Importantly, the Court only accepts well-pleaded *facts* as true when deciding the Motion—not legal conclusions. *See Kan. Penn Gaming*, 656 F.3d at 1214 ("'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" (quoting *Iqbal*, 556 U.S. at 678)).

The complaint must include sufficient facts regarding each essential element of a claim. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677. "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation." (internal quotation marks and citation omitted)). In evaluating the sufficiency of Plaintiff's Complaint, the Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015); *Kan. Penn Gaming*, 656 F.3d at 1214.

The facts pleaded must show that the claimant is entitled to relief. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—***but it has not shown***—that the pleader is entitled to relief", as required. *Iqbal*, 556 U.S. at 679 (quotations and alterations omitted) (citing Fed.R.Civ.P. Rule 8(a)(2) (requiring the plaintiff to show entitlement to relief)). The degree of specificity of such factual allegations required

to satisfy the plausibility requirement is context-specific (*i.e.*, in relation to the claim). *Kan. Penn Gaming*, 656 F.3d at 1215.

When "matters outside the pleadings are presented to and not excluded by the court [in deciding a motion under Rule 12(b)(6)], the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, there are three limited exceptions to the general principle: (i) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," *Tellabs*, 551 U.S. at 322.

### 3.  Law on Qualified Immunity

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818).

To overcome qualified immunity, "a plaintiff must properly allege a deprivation of a constitutional right and must further show that the constitutional

right was clearly established at the time of the violation." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quoting *Harlow*, 457 U.S. at 818-19).

In responding to a motion asserting qualified immunity, a plaintiff bears a heavy two-part burden. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts alleged: (i) that each defendant's actions violated his or her Constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "In conducting [a] qualified immunity analysis, ... courts must consider ... whether each defendant's alleged conduct violated the plaintiff's clearly established rights." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Before a court may undertake the proper analysis, the complaint must "isolate the allegedly unconstitutional acts of each defendant"; otherwise, the complaint does not "provide adequate notice as to the nature of the claims against each" and fails for this reason. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "In conducting a qualified immunity analysis, ... courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated. Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights." *Dodds*

*v. Richardson*, 614 F. 3d 1185, 1194 (10th Cir. 2010) (citation and quotation omitted).

The clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001).

### 4. The Defendants Have Absolute Immunity for Claims Based on Testimony

In asserting the Malicious Prosecution Claim in Count I, Plaintiff relies heavily on allegations about testimony before the grand jury and at the criminal trial. Yet, those assertions do not acknowledge that absolute immunity attaches to such testimony. For example, Plaintiff alleges that Morrissey presented false or misleading testimony to the grand jury, in part, through Defendant Hancock, supposedly as part of a conspiracy for malicious prosecution. *See* Complaint, Doc. 1-1, at ¶¶ 170-176. But Hancock has absolute immunity from any civil claims arising

from her grand jury testimony as a matter of law. *Rehberg v. Paulk,* 566 U.S. 356 (2012) (the chief investigator for the district attorney's office was entitled to absolute immunity from the plaintiff's claim that investigator conspired to present false testimony in a grand jury proceeding). Further still, to the extent that plaintiff argues the § 1983 claims against Hancock, Brandle or Poppell derive from later testimony at the unsuccessful criminal trial in 2024, all three defendants have absolute immunity from **any** claim based on trial testimony. *Briscoe v. LaHue*, 460 U.S. 325 (1983). Accordingly, the Plaintiff may not use these testimonial allegations for his Section 1983 claims.

### 5. Remaining Factual Allegations Concerning the Malicious Prosecution Claim

Baldwin's complaint alleges that the State originally asserted two theories in support of probable cause for a criminal charge of involuntary manslaughter against him as an "ACTOR AND SHOOTER" and as "PRODUCER". Under the first theory, "[a]s an actor, the Statement of Probable Cause faulted Baldwin for "letting the armorer leave the church against protocol," "not dealing with safety complaints on the set, not making sure the protocol of safety meetings was occurring," and "not using a replica firearm for the unscheduled rehearsal . ." Doc 1-1 at 24-25. Under the second theory, "[a]s a "producer," the Statement of Probable Cause asserted that Baldwin "was in a position to manage, oversee, commence, and require safety training to industry standards" and alleged that Baldwin "allowed, through acts or omissions, the hiring of inexperienced and unqualified [armorer Hannah] Gutierrez-Reed for this production, failed to mitigate or establish more

precautions to protect against Gutierrez-Reed's inexperience, or failed to demand the minimum safety standards, protocols, and requirements on set." *Id.* at 25. Baldwin disputes both contentions, asserting that he did not have the necessary authority and oversight on the film set. *See Id.*

The complaint states that the State prosecutor, Kari Morrissey, initially dismissed charges against Baldwin in April 2023, Doc. 1-1, ¶¶ 137-38, only to then change course and announce in October 2023 that she intended to present the case to a grand jury, which convened in January 2024. The complaint alleges that Morrissey misled the 2024 grand jury by: "by knowingly: (1) eliciting false and contradictory testimony from the State's witnesses, (2) preventing the State's witnesses from saying anything favorable to Baldwin (often by cutting them off mid-sentence or redirecting them to a different topic), (3) preventing the grand jury from seeing or hearing from the exculpatory documents and witnesses that the Court had ordered her to make "readily available" to the grand jury, and (4) concealing-from both Baldwin and the grand jury-exculpatory opinions by the State's own expert." Doc. 1-1, ¶ 167.

The complaint then addresses the grand jury testimony of five witnesses in detail, including County defendant Hancock, claiming she gave false and misleading testimony. *Id.* at ¶¶ 170-176. The alleged false statements mostly involve Hancock's understanding of how the shooting occurred and the roles of the Gutierrez-Reed and Baldwin in relation to safety on the film set. *See id.* Although the complaint identifies County Defendant Poppell as testifying before the grand jury, ¶ 202, there

*Motion for Partial Judgment on the Pleadings*                                      10

are no allegations concerning the substance of her testimony. *See id.* at ¶¶ 167-203. There is no allegation linking County defendant Brandle to the 2024 grand jury. *Id.*

Plaintiff's complaint next alleges that on January 19, 2024, the grand jury returned an indictment indicating that the jurors found probable cause that plaintiff committed the crime of involuntary manslaughter under two alternative counts. Doc. 1-1 at¶ 202. In New Mexico, involuntary manslaughter is defined as a killing "without malice" and "committed in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death in an unlawful manner or without due caution and circumspection. NMSA 1978, §30-2-3. This broad definition includes "ordinary" negligence in the use of a weapon. *State v. Grubbs*, 85 N.M. 365, 512 P.2d 693 (Ct.App.1973); *State v. Yarborough*, 1995-NMCA-116, 120 N.M. 669. The negligence standard comports with the State's two theories about how the crime occurred.

Baldwin's first factual allegation of malicious prosecution against the County Defendants in Count I avers that Hancock and Poppell initiated destructive testing of the revolver by the FBI to prevent Baldwin from examining the weapon in the same condition as the day of the shooting:

> With the explicit motive of "disproving" what Baldwin said during a televised ABC News interview (i.e., that he did not pull the trigger), Defendants Hancock and Poppell requested, ordered, and approved destructive testing on the firearm without documenting the firearm's internal components before its destruction, knowing that it would prevent Baldwin from examining the state of the firearm as it existed on the day of the incident.

Doc. 1-1 at ¶ 258 b.

Baldwin's second allegation of malicious prosecution against the County defendants concerns the alleged misfiling of ammunition that Troy Teske hand-delivered to the County Sherifff's Office on March 6, 2024. *Id.* at ¶ 239. Plaintiff alleges that this ammunition matched the live rounds involved in the shooting and that the State and the County defendants misfiled it with a new case number:

> Defendants, Morrissey, Hancock, Poppell, and Brandle, and, on the basis of information and belief, Defendant Carmack-Altwies, intentionally caused and/or agreed to cause exculpatory evidence not to be inventoried to the Rust case file but, instead, to be inventoried by creating a new case number and inventorying the evidence to that new case number, and failed to disclose that evidence to Baldwin, or to make it available for his inspection, despite knowing that the evidence was related to the Rust case and his defense of the charges against him.

*Id.* at ¶¶ 258 h; *see also* ¶¶ 240-242. Baldwin then alleges that the "State never disclosed this ammunition to the defense, never disclosed the supplemental report recounting the importance and details about this evidence, never provided the ammunition during the evidence viewing and falsely certified that "the State" had disclosed all relevant evidence before trial. *Id.* at ¶ 243. Baldwin further asserts that "the State" provided pretextual justifications for not disclosing the ammunition to the defense. *Id.* at ¶ 244, 250-254. Baldwin concludes by asserting that "the State's" withholding of the evidence led the trial court to dismiss the case: "Given the State's egregious discovery violations constituting misconduct and the false testimony elicited during trial, dismissal with prejudice is the appropriate remedy." *Id.* at 254.

### 6. The Individual County Defendants Are Entitled to Qualified Immunity on the Malicious Prosecution Claim

In the Tenth Circuit, a § 1983 malicious prosecution claim includes five elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the arrest, confinement, or prosecution; (4) the defendant acted maliciously; and (5) the plaintiff sustained damages. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008). As explained below, Plaintiff's complaint fails to allege facts sufficient to satisfy the first and third elements to state a viable malicious prosecution claim against the individual County defendants.

While the federal pleading standard does not vary across subject matters, the degree of specificity required for factual allegations depends on context. In § 1983 cases, defendants typically sue various government entities alongside various individual actors. In those cases, "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). We have repeatedly emphasized the importance of connecting defendants to misconduct in pleadings: "To recover damages from each of [multiple] Defendants under § 1983, [Plaintiff] had to show that such Defendant personally participated in the alleged constitutional violation." *Vasquez v. Davis*, 882 F. 3d 1270, 1275 (10th Cir. 2018).

Specificity is particularly important in a complaint alleging malicious prosecution. *Shrum v. Cooke*, 60 F.4th 1304, 1312 (10th Cir. 2023). A complaint could draw many actors into a malicious prosecution claim, but while "a wrongful arrest

could be the first step towards a malicious prosecution[,]" "the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor." *Id.* (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996); *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996) (adopting the Seventh Circuit's logic)).

### A. The Complaint Fails to State a Constitution Violation to Support the First Prong of the Qualified Immunity Analysis

Plaintiff's allegations fail to satisfy the first element of malicious prosecution: that the three defendants "caused plaintiff's continued confinement or prosecution." Based on the case law cited above, the 2024 grand jury indictment establishes probable cause for the charges and breaks any chain of causation unless plaintiff alleges well-pleaded, non-immunized facts that these officers pressured or misled the prosecutor. *See Taylor v. Meacham*, 82 F.3d at 1564. Plaintiff's complaint does not assert either theory here. To the contrary, plaintiff's theory seems to be that the State prosecutor pressed the case forward with inappropriate motives and knowingly elicited false and misleading testimony from numerous witnesses to do so. *See, e.g.,* Doc. 1-1 at ¶¶ 167-169. There are simply no facts alleging that any of the three individual County defendants pressured or lied to Prosecutor Morrissey to cause or continue the State's prosecution.

Setting aside the futile allegation about Hancock's immunized grand jury testimony, plaintiff's complaint fails to allege any facts that any of these defendants instigated or continued the State's prosecution of the plaintiff by pressuring or

*Motion for Partial Judgment on the Pleadings*                                                    14

misleading the prosecutor. Without specific factual allegations of conduct by each defendant meeting the requisite legal standard, the complaint fails to state a claim for malicious prosecution. *See Shrum,* 60 F.4th at 1312-1313 (10th Cir. 2023) (although plaintiffs complaint alleged various improprieties in the conduct of County law enforcement officers, it failed to tie that conduct to the federal prosecution of plaintiff by showing those officers' role in pressuring federal prosecutors to bring charges). For these reasons, plaintiff's complaint fails to allege viable facts to establish the first element of the malicious prosecution claim that any of County defendants "caused" the State's prosecution of the plaintiff.

*Probable Cause*. Plaintiff's complaint also makes no allegations that Hancock and Poppell's involvement in the FBI's destructive testing of the firearm in 2022 or the misfiling of the Teske ammunition in 2024 vitiated probable cause for the 2024 indictment. So here again, plaintiff's allegations fail to establish the third element of the claim for malicious prosecution as to these defendants.

The substance of probable cause is a "reasonable ground for belief of guilt." *Mink v. Knox*, 613 F.3d 995, 1003 (10th Cir.2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Probable cause exists if the facts and circumstances are sufficient to warrant a person of reasonable caution to believe a crime has been committed. *Id.* As the State asserted in its third motion to dismiss:

> Here, it is undisputed that, at a minimum, Baldwin was holding the gun in the direction of Hutchins and cocked it when it discharged a live round, fatally injuring Hutchins and striking Souza in the shoulder. *See* Compl., ¶¶ 53-56, 62, 67. It is also undisputed that

> Baldwin did not check the gun himself before aiming it in the direction of Hutchins and cocking it. *See id.*, ¶¶ 47-51, 69 (indicating that others inspected the gun, but Baldwin did not). Baldwin did not personally check the gun even though he was familiar with guns, having received gun training throughout his career and again after he arrived on this movie set. *See id.*, ¶¶ 42-43. This alone is sufficient to establish probable cause that Baldwin committed one or more crimes, including involuntary manslaughter or negligent use of a deadly weapon. *See, e.g.,* NMSA 1978, § 30-2-3(B) (involuntary manslaughter);NMSA 1978, § 30-7-4 (A) (negligent use of a deadly weapon).

Doc. 10, filed 10/29/2025 at 10. When other, sufficient evidence exists to support a reasonable inference of a criminal defendant's guilt, then probable cause exists for the prosecution. *See McCarty v. Gilchrist*, 646 F.3d 1281, 1286-1288 (10th Cir. 2011).

Plaintiff has not alleged, nor are there allegations sufficient to conclude, that the firearm testing in 2022 or the misfiling of ammunition from Teske vitiated probable cause based on the State's alternative theories of negligence for the involuntary manslaughter charges. Plaintiff complaint suggests that the firearm, a revolver, somehow had a propensity to fire without pulling the trigger and that the gun just "went off" when the shooting occurred. *See* Doc 1-1 at ¶¶ 88. These allegations support inferences that the firearm was defective, not properly inspected and/or maintained, not checked by Baldwin or others before being deployed during the unscheduled rehearsal and simply had no business being in use on a movie set. Conversely, if the gun had no such predisposition to "go off", this supports an inference of mishandling by plaintiff. The mishandling inference is not negated merely because Baldwin and other witnesses later claimed that the gun just "went

off." It is for the jury during a criminal trial to resolve such factual disputes under the alternative theories of negligence underlying the manslaughter charge. Conflicts in the evidence do not vitiate probable cause so long as there are other sufficient facts standing alone to support the prosecution's theory of a negligent homicide. *McCarty,* 646 F.3d at 1286-1288.

Similarly, as concerns the Teske ammunition, it is undisputed that the firearm, being used during an unscheduled rehearsal, contained a live round. Again, this is obviously an unreasonable condition for a prop on a movie set. The presence of a live round also supports inferences of mishandling the firearm and ammunition and lack of safety precautions before the rehearsal.

According to the complaint, Gutierrez-Reed loaded the revolver with ammunition that she received from Seth Kenney. As Baldwin was not involved with procuring the ammunition or loading it in the firearm, it is difficult to discern how Teske's involvement or the provenance of the live ammunition, before Kenney supplied it to the production and Gutierrez-Reed loaded it into the firearm, negates probable cause for the charge against Baldwin for negligence in handling and not checking the gun based on either the State's Actor/Shooter or Producer theories.

In sum, the allegations of plaintiff's complaint do not specifically allege that any conduct by any of the County defendants vitiates probable cause. Nor do the allegations as a whole support such a conclusion based on the facts of incident alleged in the complaint. Accordingly, plaintiff's complaint fails to establish the third element of malicious prosecution involving these defendants.

*Motion for Partial Judgment on the Pleadings*                                    17

*Conspiracy.* Plaintiff also labels Count I as a claim for "conspiracy" to rope the County defendants into the malicious prosecution claim with the State actors. But this tactic fares no better than the other allegations.

"To state a conspiracy claim under § 1983, a plaintiff must plead that he was deprived of a constitutional right as a result of a conspiracy comprised of or including conspirators acting under color of state law." *Leatherwood v. Rios*, 705 F. App'x. 735, 739 (10th Cir. 2017). To survive a motion to dismiss, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Snell v. Tunnel*, 920 F.2d 673, 701 (10th. Cir. 1990) (quotation and citation omitted). The Supreme Court has repeatedly emphasized that it takes a functional approach to immunity and does not favor the use of conspiracy allegations to circumvent such protections. *See Rehberg,* 566 U.S. at 369 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 283, (1993) (KENNEDY, J., concurring in part and dissenting in part).

To sufficiently state a conspiracy claim, a plaintiff must allege "specific facts showing an agreement and concerted action amongst the defendants." *Leatherwood*, 705 F. App'x. at 739 (emphasis added) (quotation and citation omitted). In pleading the conspiracy element, "conclusory allegations of conspiracy are insufficient to state a valid 1983 claim." *Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir. 2010) (internal brackets and quotation marks omitted); *see also Ashcroft*, 556 U.S. at 678, 129 S.Ct. 1937 (stating that complaint must do more than recite elements of claim). "[C]onclusory allegation of agreement at some unidentified point does not supply

facts adequate to show illegality." *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955. Instead, the plaintiff must allege "specific facts showing an agreement and concerted action amongst the defendants." *Brooks*, 614 F.3d at 1228 (internal quotation marks omitted). "Parallel action — or inaction ... — does not necessarily indicate an agreement to act in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir.2004).

Here, Plaintiff's principal allegation of agreement is entirely conclusory and insufficient as a matter of law:

> Defendants, while acting under the color of law, conspired to procure a groundless indictment against Baldwin and to maliciously bring about or advance Baldwin's trial and conviction, thus violating Baldwin's constitutional rights by their improper use of the criminal process.

Doc. 1-1 at ¶ 257. The complaint then goes on to list 8 acts in furtherance of the conspiracy, *see* ¶ 258 a-h; only two of these, the destructive firearm testing and the Teske ammunition allegations, involve the County Defendants. *See* ¶¶ b & h. Re-examining these two allegations through a conspiratorial lens does not change the qualified immunity calculus.

To recap, plaintiff alleges that in 2022, Hancock and Poppell submitted the revolver for FBI testing after Baldwin's public statements that the gun "went off" spontaneously. Doc. 1-1 at ¶ 258 b. Plaintiff claims that they knew this would involve destructive testing and would impair plaintiff's ability to examine the gun as part of his defense. *Id.*

These allegations fail to provide facts of an "agreement and concerted action" with the State prosecution to do anything, let alone to attempt to procure a

groundless indictment or prosecution years later. *See Brooks*, 614 F.3d at 1228. To the contrary, Plaintiff explicitly alleges that the officers were investigating Baldwin's statement about the gun's propensity to discharge spontaneously, and as set forth above, examination of the firearm directly bears not only on the feasibility of plaintiff's statement but also upon issues about the condition of the firearm, whether it had been maintained, altered, damaged, checked, etc. *See supra.* at 16-17.

The second allegation about the Teske ammunition in March 2024 also does not establish a conspiracy to prosecute the plaintiff maliciously. The grand jury had already issued a facially-valid indictment two months earlier in January. When Teske appeared with ammunition in March, the State's prosecution was underway, the trial imminent. As explained above, although the new facts concerning the provenance of the ammunition may have been pertinent to Baldwin's defense, they do not vitiate probable cause for the prosecution given the other factual inferences that might be drawn under the State's alternative Actor and Producer theories. *See supra.* at 17.

Rather, the gravamen of the plaintiff's allegations is that "the State" continued the prosecution while failing to disclose this evidence to Baldwin before trial, leading to the discovery sanction and dismissal. Plaintiff again alleges that the conduct impeded his defense. These facts might well bear upon a potential *Brady* violation by the prosecution for withholding evidence (*see infra.* at 20-22), but a *Brady* violation is not the same as a malicious prosecution, lacking probable

cause. In sum, these allegations do not establish a conspiracy to maliciously prosecute plaintiff.

Accordingly, plaintiff's complaint fails to state a cognizable Constitutional violation based on malicious prosecution against any of the three County defendants under the first prong of the qualified immunity analysis. The plaintiff's complaint does not allege plausible facts satisfying at least two elements of such a claim against these defendants. The complaint also does not aver sufficient allegations of an agreement and concerted actions for any conspiracy claim, which also fails due to the ongoing presence of probable cause through trial.

## B. Second Prong of the Qualified Immunity Analysis

There is also no clearly established law imposing Constitutional liability based on the facts alleged in the complaint against these three defendants. *See Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (civil-conspiracy claims under 42 U.S.C. § 1985(3) are also subject to a qualified immunity defense).

Plaintiff alleges that Hancock and Poppell subjected the firearm to destructive testing to investigate a statement by plaintiff concerning the gun's propensity to discharge. Although this conduct might bear on a civil spoliation claim, there is no clearly established law suggesting this conduct forms the basis for a County law enforcement officer's liability for a malicious prosecution conducted by a State prosecutor. The same is true for the Teske evidence. There is no authority suggesting that after issuance of indictment, a County officer allegedly filing evidence under a different case number establishes a conspiracy to maliciously

prosecute a defendant when a State Prosecutor later fails to disclose the evidence to a criminal defendant just before or during a criminal trial (subject to the Prosecutor's absolute immunity). Accordingly, Plaintiff's claim also fails the second prong of the qualified immunity analysis.

### 7. The County Defendants Are Entitled to Qualified Immunity on the Suppression of Evidence Claim, *i.e., Brady* Claim

The Plaintiff's next federal claim is for suppression of evidence, commonly referred to as a *Brady* claim. *See Brady v. State of Maryland,* 373 U.S. 83 (1963). It is well-established in the Tenth Circuit that a plaintiff may not prevail on a *Brady* claim "unless the case goes to trial and the suppression of exculpatory evidence affects the outcome." *Becker v. Kroll,* 494 F.3d 904, 924 (10th Cir. 2007). This is because the United States Supreme Court in *Brady* framed the right to exculpatory evidence only in terms of providing a fair trial. *Id.,* (citing *Brady*, 373 U.S. at 86-88):

> A *Brady* violation that results in the overturning of a § 1983 plaintiff's conviction is a necessary, but not sufficient, condition for § 1983 liability on the part of police. It is a necessary condition because the *Brady* violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) without which no § 1983 action can lie.

*Becker,* quoting from *Jean v. Collins,* 221 F.3d 626, 633 (4th Cir. *en banc*). The constitutional error occurs … only if the evidence is material and the result of its suppression undermines confidence in the outcome of the trial. *Becker,* (citing *United States v. Bagley,* 473 U.S. 667, 678 (1985)).

In the present case, Plaintiff cannot establish a *Brady* violation because Plaintiff lacks the necessary condition – a conviction – for § 1983

liability on the part of the law enforcement officers. Without a conviction resulting in loss of liberty after trial, no § 1983 action can lie based on the facts of the present case based on suppression of evidence. For this reason, the Plaintiff's second claim based on suppression of evidence does not allege the necessary elements and conditions for a *Brady* violation. The complaint fails under the first prong of the qualified immunity analysis.

The complaint also fails under the second prong of the analysis. There is no clearly established law within this Circuit to the effect that a civil *Brady* violation is viable in the absence of allegations that the alleged suppression materially affected the trial outcome in the absence of a conviction. In other words, no adverse trial outcome occurred here because the criminal trial judge dismissed the case based on a discovery sanction.

## 8. Conclusion

For all these reasons, County Defendants Hancock, Poppell, Brandle and Board of County Commisioners respectfully request that the Court dismiss the claims in Counts I and II of the plaintiff's complaint and for all other appropriate relief.

LONG, KOMER & ASSOCIATES, P.A.
*Attorneys for County Defendants*


/s/ Mark E. Komer
Mark E. Komer
P.O. Box 5098
Santa Fe, NM  87502-5098
505-982-8405
mark@longkomer.com
email@longkomer.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of June 2026, I filed the foregoing **Motion for Partial Judgment on the Pleadings** electronically through CM/ECF, which caused the following counsel to be served electronically:

Nelson Franse
Linda Vanzi
Charles K. Purcell
Krystle Thomas
Andrew C. Efaw
Kara Murphy
nfranse@rodey.com
lvanzi@rodey.com
kpurcell@rodey.com
kthomas@rodey.com
aefaw@rodey.com
kmurphy@rodey.com

*Attorneys for Plaintiff*

Luis Robles
luis@roblesrael.com

*Attorneys for State Defendants*

/s/ Mark E. Komer
Mark E. Komer