**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**ALEXANDER R. BALDWIN III,**

**Plaintiff,**

**vs.** **Case No. CIV-25-01052 KWR/LF**

**KARI T. MORRISSEY, MARY CARMACK-ALTWIES, ANDREA REEB, JENNIFER PADGETT MACIAS, THE FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE, ALEXANDRIA HANCOCK, MARISSA POPPELL, BRIAN BRANDLE, and SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS,**

**Defendants.**

**SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS' MOTION FOR DISMISSAL OF COUNT VI**

Defendant Santa Fe County Board of County Commissioners ("County") moves pursuant to Federal Rules of Civil Procedure 12(h)(2)(A) and 12(i) for a pretrial determination of the failure-to-state-a-claim defense asserted in its Answer and for dismissal with prejudice of Count VI of Plaintiff's Complaint, Doc. 1-1, filed with the Notice of Removal on October 21, 2025.[1] Count VI seeks damages under the New Mexico Civil Rights Act ("NMCRA") based on alleged violations of Article II, Sections 4, 18, and 19 of the New Mexico Constitution. Accepting the Complaint's well-pleaded allegations as true, Count VI fails as a

[1] The undersigned counsel did not seek concurrence from Plaintiff's counsel as they are not required to seek concurrence on this dispositive motion.

matter of law.

## 1. Introduction

The NMCRA supplies a remedy for deprivation of a right secured by the New Mexico Bill of Rights. It does not create new constitutional rights, convert every alleged wrong by a public employee into a constitutional tort, or erase immunities other than qualified and sovereign immunity. *Bolen v. New Mexico Racing Commission*, 2025-NMSC-034, ¶¶ 13-14, 20, 31. Count VI disregards each limitation.

First, Article II, Section 4 does not create a freestanding damages right to liberty, safety, or happiness. New Mexico appellate courts have consistently treated the Inherent Rights Clause as an interpretive principle that may inform another, independently enforceable constitutional provision. It is not an open-ended source of new causes of action. *See Morris v. Brandenburg*, 2016-NMSC-027, ¶¶ 49-51, 376 P.3d 836. A recent state district court applied that rule to dismiss with prejudice an NMCRA claim pled directly under Article II, Section 4. *See Romero v. New Mexico Children, Youth & Families Department*, No. D-101-CV-2024-01042 (N.M. 1st Jud. Dist. Ct. Mar. 16, 2026) (Exh. A).

Second, Count VI's Article II, Section 18 theory duplicates Plaintiff's federal theories of malicious prosecution, evidence suppression, and denial of a fair trial. New Mexico applies an interstitial method when a state constitutional provision has such federal analogs. *State v. Gomez*, 1997-NMSC-006, ¶¶ 19-20; *Morris*, 2016-NMSC-027, ¶ 19. Under the interstitial method, federal law supplies the baseline

unless the federal analysis is flawed, the state provision is structurally different, or distinctive New Mexico characteristics warrant divergence. Neither the Complaint nor existing New Mexico authority supplies a principled basis for departing from the federal baseline in this setting. Accordingly, the federal baseline forecloses a generic, due-process malicious-prosecution theory where the Fourth Amendment supplies the specific protection, and it forecloses a civil fair-trial or *Brady* theory when the criminal case ended without a conviction or other adverse trial outcome. *Albright v. Oliver*, 510 U.S. 266, 273-75 (1994); *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007).

Third, Article II, Section 19 prohibits the Legislature from enacting an *ex post facto* law. Count VI alleges that State prosecutors Carmack-Altwies and Reeb charged a firearm enhancement that should not have been applied retroactively. It alleges no enactment, charging decision, or other Section 19 conduct by the County or by any person acting on the County's behalf. The NMCRA authorizes vicarious liability only for conduct undertaken on behalf of, under color of, or within the scope of the authority of the particular public body sued. NMSA 1978, Section 41-4A-3(C). Conduct by State prosecutors cannot be imputed to Santa Fe County merely by labeling all defendants a "conspiracy."

Fourth, although Section 41-4A-4 excludes qualified immunity, Section 41-4A-10 preserves judicial, legislative, constitutional, statutory, and common-law immunities. *Bolen* holds that a public body may invoke the judicial and related absolute immunities preserved by Section 41-4A-10, including immunity associated

with advocates and witnesses when the challenged conduct is participation in the adjudicatory process. 2025-NMSC-034, ¶¶ 14, 20, 22-25, 31-35. *Dilley v. New Mexico Corrections Department*, No. A-1-CA-41750, 2026 WL 1182166, ¶¶ 14-21 (N.M. Ct. App. Apr. 30, 2026) (nonprecedential memorandum opinion), applied *Bolen* at the pleading stage to dismiss an NMCRA damages action where the challenged actors were a judge performing a judicial function, prosecutors acting in the judicial phase of an active criminal case, and a probation officer serving as an arm of the court. Here, Count VI expressly relies on Hancock's grand-jury testimony and incorporates allegations about trial testimony. Those theories are barred by absolute witness immunity, and the County may invoke the same functional immunity.

The County agrees that every investigative act is not absolutely immune and that *Bolen* requires a conduct-specific functional analysis. The firearm testing and evidence inventory allegations do not establish a freestanding Section 4 right, a cognizable Section 18 deprivation, or a Section 19 violation. The protected testimony, advocacy, and adjudicatory functions are separately immune. After each category is analyzed under its proper rule, no part of Count VI remains.

**2. Allegations Relevant to Count VI**

Count VI is an NMCRA claim against the First Judicial District Attorney's Office, the County Commissioners, and the County for alleged deprivations of Article II, Sections 4, 18, and 19 based on the preceding factual allegations of the Complaint. ¶ 297 generally alleges that persons acting on behalf of the named

public bodies deprived Plaintiff of rights under Sections 4 and 18. ¶ 301 later adds Section 19.

The County-related factual allegations fall into three groups. First, Plaintiff alleges that County employees Alexandria Hancock and Marissa Poppell requested or approved FBI testing of the revolver without first documenting internal components, allegedly impairing Plaintiff's later ability to examine the firearm in its original condition. Doc. 1-1 ¶ 298(a). Second, Plaintiff alleges that Hancock testified falsely or misleadingly before the grand jury. *Id.* ¶ 298(c). Third, Plaintiff alleges that Hancock, Poppell, and Brian Brandle joined State prosecutors in inventorying ammunition delivered by Troy Teske under a different case number. The evidence was not disclosed to the defense. *Id.* ¶ 298(e). The remaining overt acts in Count VI concern decisions and disclosures attributed to State prosecutors or the First Judicial District Attorney's Office. *Id.* ¶ 298(b), (d).

Count VI then alleges in collective terms that all defendants acted pursuant to an agreement, meeting of the minds, or general conspiratorial objective; acted for improper motives; violated Sections 4, 18, and 19; acted in bad faith; and caused damages. *Id.* ¶¶ 299-303, 307-309. It also seeks punitive damages. *Id.* ¶ 310. As explained below, those legal conclusions do not supply a missing constitutional right, eliminate the NMCRA's public-body-specific causation requirement, or avoid an otherwise applicable absolute immunity.

**3. Standard of Review**

The County asserted failure to state a claim as a defense in its Answer. Doc. 25 at 10. Rule 12(h)(2)(A) preserves that defense when raised in a pleading, and Rule 12(i) authorizes the Court, on motion, to hear and decide the defense before trial. Because the defense challenges the legal sufficiency of Count VI based solely on the Complaint and matters properly subject to judicial notice, the familiar Rule 12(b)(6) standard governs the analysis.[2]

In this context, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiff's favor, but it need not accept legal conclusions, conclusory assertions of agreement, or unwarranted deductions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). A complaint must state a legally cognizable claim and allege facts supporting each required element. *Iqbal*, 556 U.S. at 678.

Federal pleading rules govern this removed lawsuit. The substantive content of the state constitutional rights and available New Mexico immunities are questions of New Mexico law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Pretrial dismissal under Rules 12(h)(2)(A) and 12(i) is appropriate where, as here, the dispositive questions concern the legal scope of the invoked constitutional provisions, the statutory limits of the NMCRA, and immunity apparent from the face of the Complaint. *See Dilley*, 2026 WL 1182166, ¶¶ 19-21.

---

[2] Because other defendants have not answered, the County proceeds under Rules 12(h)(2)(A) and 12(i), rather than Rule 12(c). *See VanHorn v. Salvation Army,* No. 24-3126, 2026 WL 1257804, at *3 (10th Cir. 2026) (unpublished).

**4. The NMCRA Statutory Scheme**

Section 41-4A-3(B) permits a person, who claims a deprivation of a right, privilege, or immunity secured by the New Mexico Bill of Rights, due to acts or omissions of a public body or a person acting on its behalf, to seek actual damages and equitable or injunctive relief. Claims are brought exclusively against a public body, which may be vicariously liable only for individuals acting on behalf of, under color of, or within the course and scope of that public body's authority. NMSA 1978, Section 41-4A-3(B)-(C).

*Bolen* describes the NMCRA as closing a remedial gap that existed because New Mexico lacked a general state analogue to Section 1983. 2025-NMSC-034, ¶¶ 12-13. The Act provides a cause of action for deprivations of state constitutional rights; it does not itself define or enlarge the substantive rights contained in the Bill of Rights. *Id.* ¶ 13. Thus, before questions of motive, damages, or vicarious liability arise, Plaintiff must identify an enforceable state constitutional right and plead facts amounting to a deprivation of that right. The statutory phrase "pursuant to the bill of rights" does not turn every clause in Article II into a self-executing damages provision and does not authorize a court to create a new constitutional right from a generalized aspiration.

That distinction matters. Count VI combines three different constitutional provisions and a long list of alleged wrongs, then assumes that the NMCRA supplies the missing substantive rule. It does not. Article II, Section 4 must independently secure the freestanding liberty-and-happiness right Plaintiff asserts;

Article II, Section 18 must independently treat the alleged prosecution and evidence handling as a due-process or equal-protection deprivation; and Article II, Section 19 must independently reach County conduct. None does.

### 5. Article II, Section 4 Does Not Create a Freestanding NMCRA Damages Claim for Deprivation of Liberty, Safety, or Happiness

Article II, Section 4 provides that all persons are born equally free and possess certain natural, inherent, and inalienable rights, including enjoying and defending life and liberty, acquiring and protecting property, and seeking and obtaining safety and happiness. New Mexico appellate courts have not recognized Article II, Section 4 as securing the freestanding, judicially enforceable damages right asserted here. The clause has instead been employed as an interpretive principle informing the meaning of other constitutional guarantees.

In *Morris*, the New Mexico Supreme Court considered whether Article II, Section 4 created a fundamental right for a terminally ill patient to receive physician assistance in dying. 2016-NMSC-027, ¶¶ 1, 47-51. The Court reviewed prior decisions invoking Section 4 and explained that they had used the clause to inform the understanding of another constitutional guarantee, not as an independent source of an enforceable right. *Id.* ¶ 49. The Court also noted that it had declined to recognize Section 4 as creating an unqualified right to full tort recovery. *Id.* ¶ 50. It concluded that although the Inherent Rights Clause may inform New Mexico's equal-protection guarantee and may help identify greater due-process protections in an appropriate case, it "has never been interpreted to be the

exclusive source for a fundamental or important constitutional right" and, standing alone, has remained subject to reasonable regulation. *Id.* ¶ 51.

The pre-NMCRA cases reached a similar conclusion under the New Mexico Tort Claims Act. In *Caillouette ex rel. Estate of Caillouette v. Hercules, Inc.*, 1992-NMCA-008, the Court of Appeals rejected Article II, Section 4 as an independent constitutional basis for damages under the NMTCA. *Blea v. City of Espanola* held that generalized references to safety or happiness under Section 4 were insufficient to state a constitutional claim and warned that such an expansive theory would effectively eliminate the immunity structure enacted by the Legislature. *Lucero v. Salazar*, 1994-NMCA-066, followed the same approach.

More recently, the Court of Appeals reiterated that Section 4 is not a "fountain for as-yet-undiscovered rights." *Atencio v. State, 2026-NMCA-011, ¶ 55, 584 P.3d 985,* cert. granted, No. S-1-SC-40980 (Nov. 10, 2025). Although review is pending and *Atencio* is not necessary to the County's motion, its reading of *Morris* reinforces the established distinction between an interpretive principle and an independently actionable constitutional command.

**A. The *NMCRA* did not transform Section 4 into a standalone damages provision.**

The Legislature enacted the NMCRA against this settled background. Courts presume the Legislature knows existing law when it legislates. *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 15, 309 P.3d 1047. Nothing in Section 41-4A-3 states that the Legislature intended to alter the content of Article II, Section 4, create a new

substantive right to damages for interference with happiness, or authorize courts to define such a right without constitutional standards. Instead, the Act repeatedly refers to a "deprivation" of rights "pursuant to" the Bill of Rights. That language presupposes a right that already exists and can be judicially identified.

A state district court recently reached the same conclusion in an NMCRA case. In *Romero v. New Mexico Children, Youth & Families Department*, the court granted judgment on the pleadings and dismissed with prejudice a claim asserted directly under Article II, Section 4. Exh. A, ¶¶ 3-6. Relying on *California First Bank v. State*, 1990-NMSC-106, ¶ 45, 111 N.M. 64, 801 P.2d 646, and *Morris*, the district court held that Section 4 had never been recognized as an independent cause of action or source of constitutional rights; it functions as a guiding principle or interpretive lens when evaluating a constitutional provision. *Id.* ¶¶ 4-5. The resulting dismissal was not based on a factual pleading defect but on the absence of supporting law. *Id.* ¶ 6.

Count VI makes the same legal move: it pleads Section 4 itself as a damages right, without identifying another provision whose meaning is being illuminated. To the extent Plaintiff intends Section 4 merely to inform Section 18, the claim must rise or fall under Section 18 and the interstitial analysis discussed below. Section 4 cannot independently sustain Count VI.

### 6. New Mexico's Interstitial Analysis Governs the Article II, Section 18 Theory

Plaintiff also invokes Article II, Section 18, which provides that no person shall be deprived of life, liberty, or property without due process of law and that no person shall be denied equal protection. Section 18 has direct federal analogues in the Fifth and Fourteenth Amendments. New Mexico therefore uses its interstitial method to determine whether Section 18 supplies broader protection in a particular setting.

#### A. *Gomez* and *Morris* require federal law to be considered first

In *Gomez*, the New Mexico Supreme Court adopted the interstitial approach to state constitutional interpretation. 1997-NMSC-006, ¶¶ 19-20. A court first asks whether the asserted right is protected under the federal constitution. If federal law protects the right, the claim ordinarily can be resolved on that ground. If federal law does not protect the right, a court may interpret the state provision more broadly when a party shows a flawed federal analysis, structural differences between the provisions, or distinctive state characteristics. *Id.*; *see also State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶¶ 6-7.

*Morris* applied that methodology to Article II, Section 18 because the state Due Process Clause closely tracks its federal counterparts. 2016-NMSC-027, ¶ 19. The Court did not begin with an abstract policy preference or the broad language of Section 4. It asked whether federal due process recognized the asserted right and then whether a principled New Mexico basis justified a different result. *Id.* ¶¶ 19-46. The same framework controls here.

This case is especially suited to interstitial analysis because Count VI merely repackages the same factual allegations of conduct the Plaintiff pleads for his federal constitutional claims. Counts I and II allege malicious prosecution and suppression of evidence under Section 1983. Count VI incorporates those allegations and labels them deprivations of Section 18. The underlying interests, conduct, and claimed injuries are the same. The federal analysis is therefore not merely analogous; it addresses the very same alleged prosecution, evidence, and asserted fair-trial injury.

**B. No *Gomez* factor supports departure from the federal baseline**

Neither Plaintiff's allegations nor existing New Mexico authority identifies a flawed federal analysis, a relevant structural difference, or a distinctive New Mexico characteristic that supports the broader Section 18 damages rule Plaintiff requires. Count VI identifies no textual or structural difference between Article II, Section 18 and the federal Due Process Clauses that bears on malicious prosecution or evidence disclosure. It identifies no distinctive New Mexico history or characteristic that transforms a prosecution dismissed before verdict into a completed fair-trial deprivation. And it identifies no New Mexico authority recognizing the broader rule it needs.

The NMCRA itself is not a reason to bypass the New Mexico Supreme Court's interstitial analysis. The Act changes who may be sued and what remedies may be obtained for a state constitutional deprivation. It does not prove that the underlying state right is broader than its federal analogue. To reason otherwise would make

the NMCRA redefine the Constitution's substance and would eliminate the threshold requirement that a plaintiff first establish a deprivation of a right under the Bill of Rights.

Nor does Article II, Section 4 supply the missing basis for divergence. *Morris* allows Section 4 to inform the analysis of Section 18 in an appropriate case, but it does not make Section 18 categorically broader or displace the *Gomez* framework. 2016-NMSC-027, ¶ 51. A party still must identify a principled reason why New Mexico due process protects the particular interest that federal due process does not. Count VI offers only collective labels and allegations of bad motive. Motive does not create a constitutional right where none exists.

Applying interstitial analysis here promotes the values underlying the doctrine. It respects New Mexico's ability to provide broader protection when a sound state-law basis exists, while avoiding unnecessary constitutional innovation and inconsistent rules for identical conduct. It also provides ascertainable standards to public bodies and courts. The Court should therefore use the federal law governing malicious prosecution, evidence suppression, and fair-trial injury as the baseline for the Section 18 claim.

**7. Under the Interstitial Framework Count VI Does Not Plead a Deprivation of Article II, Section 18**

The Supreme Court held in *Albright* that substantive due process does not furnish a general constitutional right to be free from prosecution without probable cause. 510 U.S. at 271-75. When a specific constitutional provision addresses the

claimed governmental conduct, that provision supplies the rule rather than the more generalized concept of substantive due process. *Id.; see also County of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998). Later, *Manuel v. City of Joliet*, 580 U.S. 357, 364-66 (2017), confirmed that pretrial detention unsupported by probable cause is analyzed under the Fourth Amendment.

A federal malicious-prosecution claim based on continued pretrial seizure arises under the Fourth Amendment and requires, among other things, that the defendant caused the continued prosecution and that the prosecution lacked probable cause. See *Shrum v. Cooke*, 60 F.4th 1304, 1310-13 (10th Cir. 2023). Plaintiff has already pleaded that theory in Count I. Count VI cannot avoid its elements or create a parallel damages claim by relabeling the same prosecution as generic due process.

Article II, Section 10 is New Mexico's specific search-and-seizure provision. Count VI does not invoke it. Under *Gomez* and *Morris*, federal law rejects the generalized Section 18 theory, and Plaintiff identifies no state-law basis for moving a claim governed by a specific constitutional protection into substantive due process. Section 4's broad language does not supply that basis.

Further, New Mexico's lost-evidence decisions do not establish the broader civil damages right Plaintiff requires. *State v. Chouinard*, 1981-NMSC-096 and its progeny govern remedies within the criminal prosecution for lost, destroyed, or inadequately preserved evidence. They authorize evidentiary sanctions and, in sufficiently culpable and prejudicial circumstances, dismissal. They do not recognize

a freestanding, post-prosecution damages claim under Article II, Section 18 after the criminal court discovered the problem and imposed the ultimate criminal-process remedy of dismissal with prejudice. Thus, even assuming New Mexico imposes preservation duties more protective than the federal constitutional minimum, that difference does not establish the particular NMCRA damages claim asserted here.

The allegations also do not state a distinct deprivation of procedural due process. The Complaint asserts that Plaintiff had counsel, obtained discovery orders, challenged the evidence during trial, and received a process-based remedy: dismissal with prejudice before a verdict. The dismissal does not retroactively establish that every aspect of the investigation and prosecution complied with law. It does establish, however, that the alleged suppression did not culminate in an adverse verdict or unreliable conviction—the constitutional injury addressed by the fair-trial authorities on which this theory depends. And New Mexico's criminal lost-evidence cases provide remedies within the criminal action, not a recognized freestanding NMCRA damages claim after dismissal.

### A. The alleged suppression did not cause the adverse trial outcome required for a fair-trial due-process claim

Count VI's evidence theory likewise fails under the federal baseline. *Brady v. Maryland*, 373 U.S. 83 (1963), protects the fairness of a criminal trial. A civil plaintiff does not establish a constitutional injury merely by alleging that

potentially favorable evidence was disclosed late. The suppression must be material to an adverse criminal adjudication.

In *Becker*, the Tenth Circuit held that a plaintiff cannot prevail on a civil *Brady* theory unless the criminal case proceeds to trial and the suppression affects the outcome. 494 F.3d at 924. A conviction resulting in loss of liberty supplies the necessary constitutional injury; without that injury, no Section 1983 fair-trial action lies. *Id.* The court explained that the constitutional error occurs only when material suppression undermines confidence in the trial's result. *Id.* The same logic applies under Article II, Section 18 absent a demonstrated New Mexico reason to depart from it.

The Complaint establishes the opposite sequence. The Teske ammunition and related circumstances allegedly came to light during the criminal trial. The defense raised the issue immediately. After testimony and argument, the trial court dismissed the charges with prejudice before the jury returned a verdict. *See* Doc. 1-1, ¶¶ 246-254, 307. Whatever discovery violation occurred, it did not produce a conviction, an unreliable verdict, or continued incarceration following an adverse adjudication. The remedy prevented the unfair outcome that *Brady* and due process protect against.

Plaintiff may point to legal expenses, reputational injury, emotional distress, and the burdens of prosecution. Those harms may be relevant to a properly pleaded tort; however, *Becker* does not define constitutional prejudice as all consequences of being prosecuted. It links the due-process injury to the reliability and result of the

trial. 494 F.3d at 924. The Supreme Court's *Brady* materiality cases do the same. See *United States v. Bagley*, 473 U.S. 667, 678, 682 (1985).

Nor does *Coones v. Board of County Commissioners of the Unified Government*, 166 F.4th 1 (10th Cir. 2026), support Count VI. *Coones* involved a conviction later vacated after the plaintiff spent approximately twelve years in prison. *Id.* at 6-8. *Coones'* discussion of fabricated and suppressed evidence rests on an adverse trial result and prolonged loss of liberty, the very circumstances absent here. It does not displace *Becker* or recognize a fair-trial damages claim when the criminal court discovers a problem and dismisses the case before verdict.

The firearm-testing allegation fares no better as a due-process preservation claim. The Complaint alleges that the FBI's testing altered the revolver and made later examination of its earlier condition more difficult. It does not allege that a County employee fabricated a test result, that later examination proved the revolver was defective at the time of the shooting, or that the alleged loss produced a conviction. At most, the allegation concerns the quality and consequences of an investigation. Without resulting in an unfair adjudication, this allegation also does not state a Section 18 fair-trial deprivation.

**B. Count VI does not plead an equal-protection violation**

Article II, Section 18 also protects equal treatment, but Count VI pleads no viable equal-protection theory. It identifies no protected classification, no similarly situated comparator who received different treatment, and no facts showing that County employees selected Plaintiff for unequal treatment because of membership

in a protected class. *See Breen v. Carlsbad Municipal Schools*, 2005-NMSC-028, ¶ 10. General allegations that officials wished to harass, humble, or make an example of a prominent defendant do not state class-based discrimination.

To the extent Plaintiff might rely on a class-of-one theory, he still must allege intentional differential treatment from others similarly situated without a rational basis. See *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Count VI identifies no comparator or differential policy. Its allegations concern the handling of a unique criminal investigation and prosecution.

Because Count VI states neither a substantive due-process claim, a procedural due-process claim, a fair-trial claim, nor an equal-protection claim, Article II, Section 18 cannot sustain the NMCRA count.

**8. Article II, Section 19 Does Not State a Claim Against the County**

Article II, Section 19 states that no *ex post facto* law, bill of attainder, or law impairing contractual obligations shall be enacted by the Legislature. Count VI's only Section 19 allegation concerns the firearm enhancement charged by State prosecutors Carmack-Altwies and Reeb. Complaint ¶ 298(b). It alleges that the enhancement was enacted after the shooting and should not have been applied retroactively.

That allegation does not involve County conduct. The County did not enact the statute, appoint the special prosecutors, sign the charging document, litigate the enhancement, or decide whether to withdraw it. The Complaint identifies Carmack-Altwies, Reeb, and the First Judicial District Attorney's Office as the

actors responsible for the charging decision. Those actors served a different public body. Section 41-4A-3(C) does not impose liability on one public body for the conduct of persons acting on behalf of another. Even assuming that an executive official's attempted retroactive application of a criminal enactment may implicate Article II, Section 19, the Complaint attributes every act concerning the firearm enhancement to State prosecutors. It alleges no facts showing that Hancock, Poppell, Brandle, or another County actor selected, charged, advocated, maintained, or agreed to pursue that enhancement. Section 41-4A-3(C) therefore supplies no basis for imposing liability on the County.

The constitutional text independently defeats the theory. An ex post facto challenge may provide a defense to a criminal charge or relief against the responsible State actor in a proper proceeding, but it does not establish that Santa Fe County enacted an ex post facto law. The Complaint alleges no fact connecting any County employee to the enhancement.

The collective conspiracy allegations do not cure the defect. ¶¶ 299 and 300 assert an agreement and improper motives in generalized terms, but they do not allege when any County employee agreed to pursue the enhancement, what was said, what act the County employee undertook to cause the charge, or how a County official exercised authority belonging to the State prosecutors. Under *Twombly* and *Iqbal*, a label of "conspiracy" does not substitute for facts showing an agreement as to the specific unlawful objective. 550 U.S. at 556-57; 556 U.S. at 678. The Section 19 theory should be dismissed with prejudice as to the County.

### 9. The NMCRA's Rejection of Qualified Immunity Does Not Abrogate Other Recognized Immunities

Plaintiff alleges that defendants acted in violation of clearly established law, apparently anticipating a qualified-immunity dispute. Complaint ¶ 302. But qualified immunity is not the County's defense to Count VI. The defense arises from Section 41-4A-10 and the absolute immunities that the Legislature expressly preserved.

Section 41-4A-4 provides that qualified immunity is not a defense to an NMCRA claim. Section 41-4A-9 waives sovereign immunity for claims under the Act. Section 41-4A-10 then states that those provisions "shall not abrogate judicial immunity, legislative immunity or any other constitutional, statutory or common law immunity." The distinction is deliberate. Eliminating one immunity defense does not eliminate the others.

*Bolen* confirms the point. The Supreme Court rejected the argument that only individuals, and not public bodies, may invoke judicial or related absolute immunity. 2025-NMSC-034, ¶¶ 15-25. Because the NMCRA requires claims to be brought exclusively against public bodies, Section 41-4A-10 would be meaningless if a public body could not assert the immunities it preserves. *Id.* ¶ 20. The Court also explained that absolute immunity protects the proper functioning of an office and the integrity of the adjudicatory process, not merely an individual's finances. *Id.* ¶ 22. Letting a claimant evade immunity by suing the entity instead of the official would defeat the doctrine's purpose. *Id.* ¶ 25.

*Bolen* further held that judicial immunity encompasses participants in the adjudicatory process, including judges, grand jurors, petit jurors, advocates such as prosecutors, and witnesses. *Id.* ¶ 24. The doctrine is functional: it applies to conduct that is judicial in nature or integral to adjudication, and it must be tailored to its justification. *Id.* ¶¶ 32-38. Here, the County invokes absolute immunity only for the testimonial and adjudicatory conduct on which Count VI relies.

**10. Absolute witness immunity bars the grand-jury and trial-testimony theories**

Count VI expressly alleges that Hancock gave false, distorted, misleading, or perjurious testimony to the grand jury to procure an indictment. Doc. 1-1 ¶ 298(c). It also incorporates extensive allegations concerning testimony by Hancock, Poppell, Brandle, and prosecutors at trial. Those allegations cannot support damages liability.

In *Rehberg v. Paulk*, 566 U.S. 356, 367-70 (2012), the Supreme Court held that a grand-jury witness has the same absolute immunity from a civil damages claim as a trial witness. The protection applies even when the witness is a law-enforcement investigator and the plaintiff alleges false testimony. *Id.* It also cannot be circumvented by relabeling the testimony as a conspiracy to present false evidence or by using the testimony to support another claim concerning initiation or maintenance of a prosecution*. Id.* at 369. Trial testimony is likewise absolutely immune. *Briscoe v. LaHue*, 460 U.S. 325, 335-46 (1983).

New Mexico's retained-immunity statute incorporates that functional protection. *Bolen* identifies witnesses as adjudicatory participants protected by

judicial immunity, and it allows the public body to invoke the protection in an NMCRA damages action. 2025-NMSC-034, ¶¶ 20, 24-25, 31-35. Thus, the County cannot be held vicariously liable under the NMCRA for Hancock's grand-jury testimony or for any County employee's trial testimony. The result does not depend on whether Plaintiff characterizes the testimony as malicious, false, or part of a broader agreement; those are the very allegations absolute witness immunity addresses.

The State prosecutors' charging, grand-jury, disclosure, and trial-advocacy decisions were undertaken on behalf of a different public body. Regardless of the immunities available to that body, Section 41-4A-3(C) does not make the County vicariously liable for those acts.

### 11. The Remaining Investigative Allegations Fail on the Merits Even if Absolute Immunity Does Not Attach to Them

The functional approach draws a line between testimony and advocacy, on one hand, and ordinary investigative activity, on the other. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-76 (1993). The County therefore does not ask the Court to declare the FBI testing request or the Teske evidence inventory absolutely immune merely because those acts later became subjects of testimony.

No such expansion is necessary. The firearm testing does not violate a freestanding Section 4 right and did not produce an adverse trial outcome under Section 18. The evidence-inventory allegation likewise resulted in discovery and dismissal before verdict, not an unconstitutional conviction. Neither act concerns

legislative enactment under Section 19. Separating immune from non-immune functions, as *Bolen* requires, therefore leads to a complete judgment: the testimonial and adjudicatory theories are immune, and the investigative theories do not plead a constitutional deprivation.

### 12. Count VI Improperly Imputes State Conduct to the County and Does Not Plausibly Allege a County-Specific Conspiracy

The NMCRA's exclusive-public-body structure requires careful attribution. A public body may be liable for conduct of individuals acting on behalf of, under color of, or within the course and scope of that body's authority. NMSA 1978, Section 41-4A-3(C); *Bolen*, 2025-NMSC-034, ¶ 13. It does not create collective liability among every public entity connected to a series of events.

The Complaint itself identifies the First Judicial District Attorney's Office as a State entity and the County as a separate local public body. The prosecutors' decisions about charges, grand-jury presentation, expert disclosures, and trial advocacy were undertaken under State prosecutorial authority. The County neither employed nor supervised those prosecutors. Count VI cannot impose liability on the County for their conduct through respondeat superior.

As to the County employees, Section 41-4A-3(C) allows vicarious liability only if their own conduct deprived Plaintiff of an actionable state constitutional right. It does not eliminate the underlying-violation requirement. For the reasons above, the protected testimony is immune, and the two non-testimonial evidence allegations do not amount to a deprivation of Sections 4, 18, or 19. Without an underlying

constitutional deprivation by a County actor, there is nothing to impute to the County.

The conspiracy label does not change this conclusion. Count VI alleges a general agreement among numerous State and County actors over several years, but the factual allegations describe ordinary coordination between investigators and prosecutors, and separate decisions by prosecutors. The individualized overt acts expressly attributed to the County employees in Count VI are the firearm testing, Hancock's protected testimony, and the Teske inventory decision. The Complaint does not identify a communication in which a County employee agreed to apply an *ex post facto* enhancement, agreed to deprive Plaintiff of an independent Section 4 right, or agreed to cause an unconstitutional conviction. Nor could the evidence-inventory allegation even have procured the January 2024 indictment, because the complaint alleges that Teske delivered the ammunition in March 2024, after the indictment.

A complaint must plead facts that make an unlawful agreement a reasonable inference, not merely possible. *Twombly*, 550 U.S. at 556-57. Parallel action, cooperation required by official duties, and conclusory recitals of a meeting of the minds do not suffice. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010). Even if Count VI adequately alleged coordination, conspiracy is derivative: it requires an actual deprivation of a constitutional right. *See Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990). Because Count VI pleads no actionable

deprivation under any of the three state provisions invoked, the conspiracy allegation cannot preserve it.

### 13. Punitive Damages Are Not Available Under the NMCRA Against the County

Finally, Count VI seeks punitive damages. Doc. 1-1 ¶ 310. Section 41-4A-3(B) authorizes actual damages and equitable or injunctive relief; it does not authorize exemplary damages. Because punitive damages punish rather than compensate for actual loss, the punitive-damages demand should be dismissed.

### 14. Conclusion

Count VI fails at every necessary step. The NMCRA does not create new substantive rights. Article II, Section 4 is an interpretive principle, not a freestanding damages right to liberty, safety, or happiness. Interstitial analysis applies to Article II, Section 18 and provides no basis to depart from federal rules that assign malicious prosecution to the specific search-and-seizure guarantee and require an adverse criminal adjudication for a fair-trial evidence-suppression claim. Article II, Section 19 concerns legislative enactments and is not implicated by any County act. State prosecutorial conduct cannot be imputed to the County. Absolute witness and adjudicatory immunities remain available under Section 41-4A-10, *Bolen*, and *Dilley*, despite the NMCRA's exclusion of qualified immunity. And punitive damages are outside the statute's remedies.

Accordingly, the County respectfully requests that the Court dismiss Count VI with prejudice as against the Santa Fe County Board of County Commissioners.

Respectfully submitted,

**LONG, KOMER & ASSOCIATES, P.A.**

*Attorneys for County Defendants*

/s/ Mark E. Komer
Mark E. Komer
P.O. Box 5098
Santa Fe, NM 87502-5098
505-982-8405
mark@longkomer.com
email@longkomer.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of July 2026, I filed the foregoing electronically through CM/ECF, which served all counsel of record electronically.

/s/ Mark E. Komer
Mark E. Komer