**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**ALEXANDER R. BALDWIN III,**

**Plaintiff,**

**vs.** **Case No. CIV-25-01052 KWR/LF**

**KARI T. MORRISSEY,**
**MARY CARMACK-ALTWIES,**
**ANDREA REEB, JENNIFER PADGETT MACIAS, THE FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE, ALEXANDRIA HANCOCK, MARISSA POPPELL, BRIAN BRANDLE, and SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS,**

**Defendants.**

## SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS' REPLY IN SUPPORT OF MOTION FOR DISMISSAL OF COUNT VI

Plaintiff's Response, Doc. 52, narrows the dispute substantially. Plaintiff agrees that current New Mexico law does not support a standalone claim under Article II, Section 4; does not oppose dismissal of the Article II, Section 19 theory as to the County; agrees that the New Mexico Civil Rights Act (NMCRA) preserves absolute immunity to the same functional extent as federal law, which disposes of liability based on Hancock's grand-jury testimony and any County employee's trial testimony; and concedes that punitive damages are unavailable. Doc. 52 at 10 n.1, 17 n.3. Accordingly, the Court should grant the Motion in all those respects.

The only remaining issue is whether Count VI plausibly pleads an Article II, Section 18 due-process or equal-protection deprivation caused by a County actor under the NMCRA. It does not.

Plaintiff asks this Court to recognize a new substantive state constitutional right enforceable through the NMCRA based on generalized appeals to fairness, the burdens of prosecution, and policy considerations. But he identifies no New Mexico appellate decision recognizing a Section 18 damages claim for a prosecution dismissed before verdict, for a delayed evidentiary disclosure that produced no adverse adjudication, or for evidence handling that did not cause a conviction. *State v. Morgan* does not supply the missing right. It describes interstitial analysis as an interpretive tool, not substantive law; it does not adopt primacy, overrule *State v. Gomez*, or authorize courts to create constitutional damages rules out of thin air, without support in text, history, structure, or precedent.

**1. *Morgan* Does Not Eliminate the Need for a Principled New Mexico Basis for the Asserted Right**

The Response is rich in constitutional possibility—much of it patched together from footnotes and separate opinions—but short on a holding recognizing the right Count VI requires under the specific facts of this case. *Morgan* describes an interpretive methodology in a footnote; *Van Soelen* invites future argument about methodology in a footnote; and *Thompson* expressly leaves a due-process question for another day in a footnote. Those observations identify questions. They do not answer the question presented here.

*Morgan* noted that the interstitial approach is an interpretive tool. No. S-1-SC-40449, 2026 WL 2106691, at *3 n.2 (N.M. July 13, 2026). In doing so, Morgan cited to another footnote in *Lujan Grisham v. Van Soelen* where the Court encouraged argument about the method's utility. 2023-NMSC-027, ¶¶ 15-16, 19 n.7. But neither decision says the Court has ‘apparent dissatisfaction’ or ‘growing uneasiness’ with the interstitial approach, much less that it is being ‘straitjacketed’ by it, as Plaintiff argues. *See* Doc. 52 at 4.

*Morgan* also does not suggest that a court may simply begin and end with generalized notions of fairness. Nor do the Response's authorities. *State v. Martinez* concerned safeguards for eyewitness-identification evidence in a criminal case based on a well-developed body of “modern scientific knowledge of the mechanics and malleability of human memory” that had led to extensive legal commentary identifying a threat to the very integrity of the criminal justice system from witness misidentifications. *See Martinez,* 2021-NMSC-002, ¶¶ 39-65. Plaintiff next cites *State ex rel. Torrez v. Whitaker* for the proposition that due process is a “malleable standard which must be molded to the situation.” Doc. 52 at 10. But this language actually derives from *Morrissey v. Brewer*, 408 U.S. 471 (1972)[1], which held that parole revocation requires a preliminary probable cause hearing and a final revocation hearing. *Whitaker* begins by noting that Article II, Section 18 is “in language substantively indistinguishable from” the Fourteenth Amendment. 2018-

[1] *State v. Valdez (In re Valdez),* 1975-NMSC-050, ¶ 13, cited *Morrissey* for this proposition; *Whitaker* then cited *Valdez*.

NMSC-005, ¶ 87. *State v. Godinez*, a probation revocation case, also describes due process as flexible but nevertheless focused on five specific factors, relevant to the accused's ability to confront adverse witnesses at his revocation hearing. *See* 2022-NMCA-029, ¶¶ 14-16. The bottom line is that none of these cases recognize an NMCRA damages action for the ordinary burdens of a criminal prosecution that ended before verdict, nor do they support by analogy the specific claim plaintiff seeks to assert here.

Plaintiff's reliance on Article II, Section 4 is similarly unavailing. *Morris v. Brandenburg* permits Section 4 to inform analysis of another constitutional guarantee in an appropriate case, but it does not establish that every interference with liberty, safety, or happiness is a constitutional deprivation. 2016-NMSC-027, ¶¶ 49-51. The pending review in *Atencio v. State* (*see* Doc. 52 at 10 n.1) also does not alter existing law. A grant of certiorari is not a holding, and Plaintiff identifies no New Mexico authority defining the elements, causation standard, or actionable injury for the proposed Section 18 tort.

**2. The Controlling Federal Baseline Is Clear in This Circuit**

Plaintiff next devotes several pages to the separate opinions in *Albright* and to *Thompson's* reservation of a national question. Doc. 52 at 5-9. But the relevant question is not whether the Supreme Court has resolved every possible due-process theory for every circuit. It is what rule binds this Court. *Becker* answered that question. After examining *Albright*, the Tenth Circuit found "unavoidable" the conclusion that no Section 1983 claim arises from filing criminal charges without

probable cause under substantive due process. 494 F.3d at 918. *Becker* also squarely held that suppression does not produce a civil fair-trial injury unless the criminal case reaches an adverse trial outcome. *Id.* at 924.

*Thompson* did not overrule *Becker*. In the margin, the opinion merely acknowledged an argument that due process might be an appropriate analytical home for malicious prosecution and expressly left that issue for another day. 596 U.S. 36, 43 n.2 (2022). A reserved Supreme Court question does not free a district court to disregard controlling circuit precedent. The out-of-circuit and nonprecedential cases cited by Plaintiff likewise do not supersede *Becker*.

*Bledsoe v. Carreno* is materially different and narrower than Plaintiff suggests. Doc. 52 at 8. Bledsoe was convicted on fabricated evidence and spent sixteen years in prison before his convictions were vacated. 53 F.4th at 594-600. The Tenth Circuit panel did not then decide that every malicious prosecution may proceed under substantive due process. Rather, it explained that the district court had treated the relevant claims as substantive, and that on appeal, the appellants had not reasserted the argument they raised below that the claims were strictly procedural; the panel therefore assumed for purposes of the appeal that Bledsoe had properly pled a violation of his substantive due process rights. *Id.* at 612 n.14. The case then addressed fabricated and suppressed evidence that caused a conviction and prolonged incarceration. *Bledsoe* does not recognize the different right claimed here: damages for investigation and delayed disclosure where the trial court discovered the issue and dismissed the prosecution before verdict.

In sum, *Becker* supplies the clear federal baseline for this Court. Even accepting Morgan's methodological caution, Plaintiff identifies no New Mexico basis for the broader rule he proposes. Plaintiff offers policy and possibility, but no New Mexico holding or other viable antecedent.

**3. Count VI Does Not Plead a Section 18 Due-Process Deprivation by the County**

Count I already pleads malicious prosecution under the Fourth Amendment. Count VI incorporates the same prosecution and alleges generic deprivation of liberty under Section 18. But neither the Complaint nor the Response identifies a New Mexico appellate decision recognizing a parallel state substantive-due-process damages claim untethered to Article II, Section 10. The Response's disagreement with *Albright* and *Becker* does not create such a state right. Plaintiff's footnote request (Doc. 52 at 11 n.2) for leave to amend to add an Article II, Section 10 theory is not properly before the Court. D.N.M.LR-Civ. 15.1 requires a proposed amendment to accompany a motion to amend, and Plaintiff has filed neither.

**A. The evidence allegations produced no adverse adjudication and were remedied in the criminal case**

The Response does not answer the Motion's treatment of *State v. Chouinard*. New Mexico's lost-and-destroyed-evidence decisions provide remedies within the criminal prosecution: evidentiary rulings, sanctions, continuances, and, where warranted, dismissal. They do not recognize a post-dismissal civil damages action under Section 18. Plaintiff obtained the most complete criminal-process remedy

available. The trial court heard the issue and dismissed the charges with prejudice before the jury returned a verdict.

That sequence defeats the fair-trial theory under *Becker*. The alleged late disclosure did not produce a conviction, unreliable verdict, or incarceration following an adverse adjudication. Legal fees, reputational harm, emotional distress, and the burdens of defending a prosecution are serious, but they are not the constitutional prejudice that *Brady* and *Becker* identify. Plaintiff's proposal that prolongation itself should be sufficiently adverse is a request for a new rule, not an application of existing New Mexico law.

The firearm-testing allegation is even further removed from a completed due-process injury. The Complaint alleges that FBI testing altered internal components and made reconstruction of the firearm's earlier condition more difficult. It does not allege that a County employee fabricated a test result, that later examination established the firearm was defective on the day of the shooting, or that the testing caused an adverse adjudication. A potentially useful evidentiary opportunity is not, without more, a completed fair-trial deprivation.

**B. The Complaint does not attribute a viable deprivation to a County actor**

The NMCRA imposes liability on the public body for conduct of persons acting on its behalf, under color of, or within the scope of that body's authority. NMSA 1978, § 41-4A-3(C). It does not pool the conduct of separate State and local entities. The charging decisions, target notices, grand-jury presentation, disclosure

certifications, and continuation of the prosecution were exercises of State prosecutorial authority. The County did not employ or supervise the prosecutors.

The County-specific acts remain the FBI testing request, Hancock's protected testimony, and the Teske inventory decision. Liability based on Hancock's testimony is foreclosed by Plaintiff's concession. The testing did not manufacture a fact essential to the prosecution or cause an adverse trial result. Teske delivered the ammunition after indictment; the prosecutor allegedly participated in the discussion about its inventory and therefore knew of it; and the Complaint attributes the later disclosure representations to the State. Those allegations do not plausibly show that a County employee caused the State to initiate or continue a constitutionally defective prosecution. Conclusory allegations of a meeting of the minds cannot substitute for facts identifying what a County employee agreed to do, when the agreement occurred, or how the County act caused the asserted Section 18 injury. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

**4. The Newly Emphasized Equal-Protection Theory Does Not State a Claim Against the County**

The Response's class-of-one argument relies principally on allegations that Prosecutor Morrissey omitted a standard deadline from Baldwin's target notice, gave the armorer Gutierrez-Reed more time, and sought to shorten Baldwin's opportunity to submit exculpatory material. Doc. 52 at 13-14; Doc. 1-1, ¶¶ 146-154.

Those are allegations about a State prosecutor. They identify no unequal decision by Hancock, Poppell, Brandle, or another County employee.

*Gentry v. Shug* requires materially similar treatment by the challenged official and the absence of any conceivable basis other than a wholly illegitimate motive. 2012-NMCA-019, ¶ 9. Count VI identifies no person similarly situated with respect to the County's firearm-testing request or evidence inventory. Its general assertion that Baldwin was treated more harshly than other criminal defendants does not identify a comparator who was alike in material respects, identify the County official who made a different decision, or describe the supposedly different County treatment. The only concrete comparator, armorer Gutierrez-Reed, concerns prosecutorial target-notice procedures, not County conduct.

Again, the conspiracy label does not bridge the attribution gap. The Complaint does not allege a communication when a County employee agreed to give Baldwin less target-notice time, agreed to treat Gutierrez-Reed differently, or exercised authority over the prosecutor's notice. Alleged malice does not itself establish unequal treatment by the County. Because the Response identifies neither a County-specific comparator nor a County decision imposing differential treatment, any equal-protection theory is futile and should be dismissed.

**5. The Motion Is Ripe, and Possible Future Relinquishment of Supplemental Jurisdiction Does Not Require Abeyance**

Section 1367(c)(3) permits relinquishment when the district court has dismissed all claims over which it has original jurisdiction. It does not turn on whether federal claims remain against one particular defendant. Federal claims remain pending in this action, and the Court has not yet dismissed all claims within its original jurisdiction. *Horocofsky v. City of Lawrence* addresses the familiar discretionary decision after the federal claims have dropped out; it does not require a court to postpone a fully briefed state-law defense while federal claims remain.

*Matal v. Tam* likewise does not require delay. Constitutional avoidance counsels against deciding unnecessary constitutional questions; it does not bar adjudication of a constitutional claim that Plaintiff chose to plead and that a defendant has properly challenged. Federal courts also routinely determine state law when exercising supplemental jurisdiction.

**6. Conclusion**

For all these reasons, the County respectfully requests that the Court grant the Motion and dismiss Count VI with prejudice as against the Santa Fe County Board of County Commissioners.

Respectfully submitted,

**LONG, KOMER & ASSOCIATES, P.A.**

*Attorneys for Santa Fe County Board of County Commissioners*

*/s/ Mark E. Komer*
Mark E. Komer
P.O. Box 5098
Santa Fe, NM 87502-5098
505-982-8405
mark@longkomer.com
email@longkomer.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of August 2026, I filed the foregoing electronically through CM/ECF, which served all counsel of record electronically.

*/s/ Mark E. Komer*
Mark E. Komer