**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

ALEXANDER R. BALDWIN III,

Plaintiff,

v. Case No. 1:25-cv-01052-KWR-LF

KARI T. MORRISSEY, MARY CARMACK-ALTWIES,
ANDREA REEB, JENNIFER PADGETT MACIAS,
THE FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE,
ALEXANDRIA HANCOCK, MARISSA POPPELL, BRIAN BRANDLE, and
SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING STATE DEFENDANTS' MOTIONS TO DISMISS**

**THIS MATTER** comes before the Court on State Defendants' Motions to Dismiss I, II, and III **(Docs. 7, 9, 10)**. Having reviewed the parties' pleadings, briefing, and relevant law, the Court finds that Motions II and III are well-taken and, therefore, are **GRANTED**. Motion I is dismissed as **MOOT**.

**INTRODUCTION**

Sometimes, it is better to leave unredressed the wrongs done by an allegedly dishonest prosecutor than to subject those who try to do their duty to the constant dread of retaliation. *Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir. 1949) (Hand, J.). This is one of those times. The doctrine of absolute prosecutorial immunity is worthwhile only if it applies to hard cases, occasionally shielding acts of gross misconduct. If instead the doctrine yielded whenever a court determined that the conduct was sufficiently distasteful, it would be no doctrine at all. Defendant Special Prosecutor Kari Morrissey, like all prosecutors, is entitled to this protection, which she

rightly invokes today. Even though "absolute prosecutorial immunity is intended to protect the judicial process, not the prosecutor," today it protects the prosecutor too. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1208 (10th Cir. 2022) (internal citation omitted).

Plaintiff alleges many acts of misconduct by Defendant Morrissey. If true, these acts taken as a whole paint a very disturbing picture of malicious prosecution by an officer who was entrusted to protect the public—not to mount unjustified prosecutions against a member of the very public she was meant to serve. However, absolute prosecutorial immunity is conferred "not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Malley v. Briggs*, 475 U.S. 335, 342 (1986) (internal citation omitted). To be sure, "[a]bsolute immunity has its costs because those with valid claims against dishonest or malicious government officials are denied relief." *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir. 1990) (internal citation omitted). "Still, the [Supreme] Court has determined that the smooth functioning of the judicial system takes precedence over those meritorious claims which will be foreclosed by granting absolute immunity." *Id.*

And so, this Court finds that under the doctrine of absolute prosecutorial immunity Defendant Morrissey is insulated from liability for much of the misconduct she is alleged to have committed.

## BACKGROUND[1]

As alleged in the Complaint, whose well-pleaded factual allegations the Court must take as true, this case arises from the criminal prosecution of Plaintiff Alexander R. Baldwin III after he accidentally shot and killed cinematographer Halyna Hutchins during the *Rust* film production. **Compl. ¶ 2**. The pistol fired on set was loaded with live rounds instead of "dummy" rounds, inert bullets designed to look like real bullets. ***Id.* ¶¶ 35, 56**.

The shooting occurred on October 21, 2021, while Plaintiff, Hutchins, writer-director Joel Souza, and crew were setting up a close-up camera shot of Plaintiff pointing and cocking the pistol, which required the use of dummy rounds. ***Id.* ¶¶ 24, 46–49**. While preparing for the shot, a crew member handed the prop gun to Plaintiff and "announced" that there was a "cold gun"—an inspected gun incapable of firing—on set. ***Id.* ¶ 51**. Plaintiff never checked the gun himself. ***Id.* ¶¶ 50–52**. As Plaintiff was rehearsing the shot, Hutchins, who was standing near the camera, directed him to point the gun her way and cock the gun. ***Id.* ¶¶ 54–55**. Suddenly, the gun "just went off," and a live round unexpectedly discharged from the gun, striking Hutchins and Souza. ***Id.* ¶¶ 56, 88**. Hutchins died from her injuries. ***Id.* ¶ 62**.

### I. Prosecution by State Defendants Carmack-Altwies and the FJDA

As relevant to these Motions, state prosecutors from the First Judicial District Attorney's Office ("FJDA") were "heavily involved" from the outset of the Santa Fe Sheriff's Office's ("SFSO") investigation, making decisions "collectively" as a "team." ***Id.* ¶ 74**. Plaintiff asserts that once prosecutors, elected officials, and "high-ranking members of law enforcement" became

[1] This background section focuses primarily on alleged conduct related to the claims that Defendant Kari Morrissey seeks to dismiss in Motion to Dismiss III. Thus, the Court does not recite every fact in Plaintiff's Complaint, like the alleged actions taken by Defendants Alexandria Hancock, Marissa Poppell, Brian Brandle, and the Santa Fe County Board of County Commissioners ("County Defendants"). It also does not recite many facts related to Defendants Mary Carmack-Altwies and Andrea Reeb, to whom only Motion to Dismiss II applies.

involved, the focus of the investigation shifted from discovering how live ammunition ended on set to blaming Plaintiff. ***Id.*** **¶¶ 72–77**. As part of the investigation, Plaintiff contends that the State was partially responsible for destroying the prop gun that fired the live round through haphazard testing without first documenting the internal components—even though multiple people, including Plaintiff, told investigators that "the gun just 'went off.'" ***Id.*** **¶¶ 88–93**. Later examination revealed that the prop gun showed signs of modification pre-dating the fatal shooting. ***Id.*** **¶¶ 94–95**.

According to the Complaint, Defendant Mary Carmack-Altwies (District Attorney for the First Judicial District) "decided to criminally charge [Plaintiff] 'pretty close to the beginning' of the investigation," despite the lack of evidence demonstrating that prosecutors could prove the elements of the offense—and the mounting evidence demonstrating that others were responsible for the shooting. ***Id.*** **¶¶ 98, 100**.

In June 2022, Defendant Carmack-Altwies decided to appoint Defendant Andrea Reeb as Special Prosecutor. ***Id.*** **¶ 101**. The appointment was made public in August. ***Id.*** **¶ 104**. With Defendants Carmack-Altwies and Reeb leading the prosecution, the FJDA filed charges on January 31, 2023. ***Id.*** **¶ 124**. It charged Plaintiff with two alternative counts of involuntary manslaughter, in violation of NMSA 1978, § 30-2-3 (1994), for Plaintiff's role as actor and shooter and role as producer. ***Id.*** The second alternative count included a firearm enhancement, pursuant to NMSA 1978, § 31-18-16 (2022). ***Id***. The firearm enhancement was enacted by the state legislature after the date of the shooting. ***Id.*** **¶ 129**.

Eventually, however, both Defendants Carmack-Altwies and Reeb withdrew from the prosecution. On March 15, 2023, Defendant Reeb withdrew as Special Prosecutor. ***Id.*** **¶ 135**. Two weeks later, after a hearing where the judge questioned whether Defendant Carmack-Altwies could

prosecute alongside a special prosecutor under NMSA 1978, Section 36-1-23.1 (1984), she also withdrew from the criminal case. ***Id.*** **¶ 136**.

## II. Prosecution by State Defendants Morrissey and the FJDA

In March 2023, after Defendant Reeb withdrew from the criminal case, Defendant Carmack-Altwies appointed Defendant Kari Morrissey as Special Prosecutor in the case against Plaintiff. ***Id.*** **¶ 137**. The next month, Defendant Morrissey agreed to dismiss the case without prejudice after a meeting with defense counsel. ***Id.*** **¶ 138**. She "acknowledged that the prior prosecution's 'producer theory' lacked merit, given that there is no such thing as vicarious liability in criminal law." ***Id.***

In the months that followed, Defendant Morrissey retained firearm experts Lucien Haag and Michael Haag "to interpret the FBI's findings about the prop gun and conduct further analysis, notwithstanding the FBI's destruction of the gun." ***Id.*** **¶ 139**. The Haags issued three reports in August 2023. ***Id.*** **¶¶ 140–41**. Although Defendant Morrissey disclosed the first report, she did not disclose the second and third reports until much later. ***Id.*** **¶¶ 208, 215.**

In early October 2023, Defendant Morrissey notified Plaintiff that she intended to bring the *Rust* shooting case to a grand jury. ***Id.*** **¶ 144**. Defendant Morrissey then allegedly engaged in misconduct as she prepared for and presented evidence to the grand jury. ***Id.*** **¶ 167**. Specifically, Plaintiff alleges that Defendant Morrissey did not make certain witnesses and documents "readily available" to the grand jury, in violation of a court order. ***Id.*** **¶¶ 157–58, 166–67**. She "withheld over a dozen exculpatory documents," and failed to inform the grand jury that the witnesses and documents were available for testimony and review. ***Id.*** **¶¶ 197, 198, 202**. Defendant Morrissey also misled the grand jury by "eliciting false and contradictory testimony from State's witnesses" and preventing the grand jury from receiving any exculpatory evidence or hearing statements that may be favorable to Plaintiff. ***See id.*** **¶ 167**.

In the leadup to the grand jury proceedings, Defendant Morrissey "continued" the "unethical press campaign, which had begun with [Defendants] Carmack Altwies and Reeb." ***Id.* ¶ 154**. While Defendant Morrissey was in charge, the State publicly disclosed the grand jury date and represented to NBC News that prosecutors hoped the trial would "humble" Defendant, whom they described as "arrogant." ***Id.* ¶¶ 161, 163–64**.

In January 2024, the grand jury returned the indictment against Plaintiff. ***Id.* ¶ 202**. In February 2024, the state court issued a scheduling order setting trial for July 2024 and outlining pre-trial deadlines. ***Id.* ¶ 205**. The scheduling order stated that "[f]ollowing initial discovery disclosures, the parties have a continuing duty to disclose and make available supplemental discovery within seven (7) days of the receipt of such information." ***Id***. Yet, Defendant Morrissey did not comply with the order and did not disclose the second and third Haag reports, as well as other exculpatory documents, communications, recordings, and ammunition in the FJDA's possession, until May to June 2024. ***Id.* ¶¶ 206–24**.

Importantly, Defendant Morrissey, along with law enforcement, withheld ammunition that could have been the source of the live round on set. **Compl. ¶¶ 236–43**. The ammunition matched the live round involved in the shooting. ***Id.* ¶ 247**. But since the ammunition undermined Defendant Morrissey's case against Plaintiff, she and law enforcement jointly decided to inventory the ammunition under a separate case number, rather than with the rest of the *Rust* case evidence, and the ammunition was never disclosed. ***Id.* ¶¶ 241–43**. When the existence of this ammunition came out at trial in July 2024, in the form of false and conflicting testimony, Defendant Morrissey took the stand to justify the State's actions. ***Id.* ¶¶ 250–52**. The trial court noted that Defendant Morrissey's testimony conflicted with County Defendant Hancock's testimony. ***Id.* ¶ 252**. Ultimately, the trial court determined that the "willful withholding of this information was

intentional and deliberate" and indicative of "scorching prejudice." ***Id.*** **¶ 254**. The trial court dismissed the criminal case with prejudice due to the "State's egregious discovery violations constituting misconduct and the false testimony elicited during trial." ***Id***.

## III. Plaintiff's Instant Case Against State Defendants

In January 2025, Plaintiff filed the Complaint in state court. **Not. of Removal, Doc. 1 ¶ 1; Am. Not. of Removal, Doc. 8 ¶ 1**. In his Complaint, Plaintiff alleges six claims against State and County Defendants for their misconduct while investigating and prosecuting his criminal case. **Compl. ¶¶ 256–310**. As relevant here, Plaintiff alleges:

- Count I: Violation Rights Under 42 U.S.C. § 1983 for Conspiracy to Cause Malicious Prosecution and Deprivation of Civil Rights (Against all Defendants),
- Count V: Defamation Per Se (Against Defendants Carmack-Altwies and Reeb), and
- Count VI: Violation of the New Mexico Civil Rights Act ("NMCRA") (Against the FJDA, Commissioners, and the County).

Regarding Counts I and VI, Plaintiff alleges that State Defendants' conspiratorial actions were "driven by ill motives and to accomplish illegitimate ends, including to harass or 'humble' [Plaintiff], to promote their political agendas . . . , or to further their own personal agendas or professional ambitions." ***Id.*** **¶¶ 260, 300**. Plaintiff alleges further that these actions violated Defendant's rights under the United States and New Mexico constitutions. ***Id.*** **¶¶ 261, 301**. Due to Defendants' "unreasonable and unlawful conduct," Plaintiff alleges that "he has suffered and continues to suffer substantial past and future damages, . . . including, but not limited to, legal expenses, loss of income, severe emotional distress, mental anguish, and embarrassment." ***Id.*** **¶ 268**.

About one week after Defendants accepted service of the Complaint, Defendants removed Plaintiff's case to this Court. ***See* Doc. 1 ¶ 2**. Shortly thereafter, State Defendants sought to dismiss certain allegations in the Complaint. To that end, they have filed, in relevant part:

- Motion I: Defendants Carmack-Altwies and Reeb's Motion to Dismiss Plaintiff's Defamation Claim for Failure to State a Claim **(Doc. 7)**,
- Motion II: State Defendants' Motion to Dismiss Plaintiff's § 1983 Claim Against the FJDA and Individuals in Official Capacities for Failure to State a Claim **(Doc. 9)**,
- Motion III: Defendants Morrissey and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 10)**.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint must have sufficient factual allegations that, if true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if a plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* A court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

In ruling on a motion to dismiss, a court should disregard conclusory statements of law and consider whether the factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In addition to the complaint, a court may consider attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). While a court must draw

all reasonable inferences in favor of the plaintiff, *Kay*, 500 F.3d at 1217, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

The Court considers three motions, only two of which are outstanding. Motion to Dismiss I is dismissed as moot; Plaintiff filed a stipulated dismissal of Count V (defamation per se) with prejudice, pursuant to Rule 41(a)(1)(A)(ii). **Stip. Dismissal, Doc. 37**.

Motion to Dismiss II seeks to dismiss Plaintiff's § 1983 claims against individual State Defendants acting in their official capacities and Defendant FJDA on the basis that they are not "persons" under § 1983 and the NMCRA.

Motion to Dismiss III seeks to dismiss many of Plaintiff's allegations within his § 1983 and NMCRA claims on the basis that Defendant Kari Morrissey is entitled to absolute prosecutorial immunity for certain alleged conduct. The Court will address Motions to Dismiss II and III in turn.

### I. Motion to Dismiss II is Granted Because Individual State Defendants and Defendant FJDA are not "Persons" Under § 1983

State Defendants request dismissal of Plaintiff's § 1983 claims to the extent that the claims are alleged against individual State Defendants acting in their official capacities and against Defendant FJDA. **Def's Mot. Dism. II, Doc. 9 at 2**. According to State Defendants, these parties are not "persons" under § 1983. ***Id***. The Court agrees.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, a plaintiff must assert a § 1983 claim against a "person." *See Will v. Michigan Dep't of State*

*Police*, 491 U.S. 58, 71 (1989). A state and individuals acting in their official state capacities are not "persons" under § 1983. ***Id.*** Nor is a state agency that is an arm of the state. *Harris v. Champion*, 51 F.3d 901, 905–06 (10th Cir. 1995).

Count One of Plaintiff's Complaint asserts § 1983 claims "against all defendants." ***See* Compl. ¶¶ 256–69**. This means not only that Plaintiff asserts § 1983 claims against individual State Defendants Mary Carmack-Altwies (District Attorney for the First Judicial District), Jennifer Padgett Macias (Assistant District Attorney for the First Judicial District), Andrea Reeb (first Special Prosecutor appointed by Defendant Carmack-Altwies), Kari Morrissey (second Special Prosecutor appointed by Defendant Carmack-Altwies), but also that Plaintiff intends to sue them in both their individual and official capacities. **Compl. ¶¶ 14–17**. But since a suit against a person in their official state capacity is "no different from a suit against the State itself," *Will*, 491 U.S. at 71, the Court dismisses Plaintiff's § 1983 claim to the extent that he sues Defendants Carmack-Altwies, Padgett Macias, Reeb, and Morrissey in their official capacities.

As for Defendant FJDA, it too is not a "person" under § 1983, a conclusion with which Plaintiff himself agrees. ***See* Pl.'s Resp. Mot. Dism. II, Doc. 36 at 2**. Although the Tenth Circuit has not issued a published decision determining that a district attorney's office in New Mexico is an arm of the state, the weight of persuasive authority demonstrates that the FJDA may not be sued under § 1983. "Generally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010); *see also, e.g.*, *Zapata v. Public Def.'s Office*, 252 F. App'x 237, 240 (10th Cir. 2007) (upholding dismissal with prejudice of plaintiff's claim against New Mexico Public Defender's Office on grounds that it was not a "person" amenable to suit under § 1983). For this reason, in *Jackson v. New Mexico Pub. Def.'s Off.*, the Tenth Circuit agreed with a district court's determination that a district attorney's office

is protected from suit by the Eleventh Amendment. 361 F. App'x 958, 962 (10th Cir. 2010); *see also Phillips v. Rose*, No. 2:24-cv-00287-KWR-GBW, 2024 WL 3342531, at *3 (D.N.M. July 9, 2024) (determining that the Tenth Judicial District Attorney's Office could not be sued under § 1983), *aff'd*, No. 24-2101, 2025 WL 1135660 (10th Cir. Apr. 17, 2025).

Accordingly, the Court grants State Defendants' Motion to Dismiss II as to both individual State Defendants acting in their official capacities and as to Defendant FJDA.

## II. Motion to Dismiss III is Granted Because Defendants Morrissey and the FJDA are Entitled to Absolute Prosecutorial Immunity Under § 1983 and the NMCRA

Defendant Morrissey's Motion turns on whether absolute prosecutorial immunity shields individual state prosecutors and the FJDA from suit for certain alleged conduct. Plaintiff has sued Defendant Morrissey under § 1983 and the FJDA under the NMCRA in Counts One and Six, respectively. The Court first discusses the scope of prosecutorial immunity under these Acts before directly addressing Defendant Morrissey's Motion.

### A. The Scope of Absolute Prosecutorial Immunity Under § 1983 and the NMCRA

Fifty years ago in *Imbler v. Pachtman*, the Supreme Court had its "first opportunity to address the § 1983 liability of a state prosecuting officer." 424 U.S. 409, 420 (1976). Since then, courts assessing prosecutorial immunity claims under § 1983 employ a "functional approach," *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (quoting *Burns v. Reed*, 500 U.S. 478 (1991)), which assesses whether an activity is "intimately associated with the judicial phase of the criminal process." *England v. Hendricks*, 880 F.2d 281, 285 (10th Cir. 1989) (quoting *Imbler,* 424 U.S. at 430). In making this assessment, the Tenth Circuit applies a "'continuum based approach,' and the 'more distant a function is from the judicial process, the less likely absolute immunity will attach.'" *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (quoting *Roberts v. Kling*, 104 F.3d 316, 318–19 (10th Cir. 1997), *rev'd on other grounds*, 522 U.S. 1025 (1997)). Advocacy and

investigation mark the bounds of this continuum. *Chilcoat*, 41 F.4th at 1209. Thus, courts "look to which role the prosecutor is performing—advocate or investigator." *Mink*, 482 F.3d at 1262.[2]

Accordingly, in defending claims brought under § 1983 "a prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case." *Mink*, 482 F.3d at 1261; *Benavidez v. Howard*, 931 F.3d 1225, 1231 (10th Cir. 2019) (internal citations omitted) ("[A]bsolute immunity shields those acts undertaken by a [prosecutor] in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government"). "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citing *Imbler*, 424 U.S. at 425–28). Such decisions include "whether and when to prosecute" and "whether to dismiss" a case. *Imbler*, 424 U.S. at 431 n.33. Prosecutorial immunity even extends to "the deliberate withholding of exculpatory information." *Id.* at 431 n.34; *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (internal citation omitted) ("Whether the claim involves withholding evidence … or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors."). "Absolute immunity, however, does not extend to those actions that are investigative or administrative in

---

[2] Under the functional approach, a prosecutor's motives for her conduct are irrelevant to whether she is entitled to immunity. *See Lerwill v. Joslin*, 712 F.2d 435, 440, 441 (10th Cir. 1983). So too, is the ultimate harm or injury. *Bledsoe*, 934 F.3d at 1117 (quoting *Buckley v. Fitzimmons*, 509 U.S. 259, 271 (1993)). Defendant Morrissey's Motion to Dismiss III correctly points out that the Complaint's many allegations regarding her motives for prosecuting Plaintiff have no bearing on the immunity analysis, a point Plaintiff does not contest in his Response. ***See generally*** **Doc. 35**. The Court finds that Defendants Morrissey's motivations are irrelevant at this stage and will not address her Motion's arguments about motive any further.

nature, . . ." *Mink*, 482 F.3d at 1261–62. "For example, when a prosecutor conducts investigative work normally performed by the police, they are not performing a prosecutorial function." *Chilcoat*, 41 F.4th at 1209 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993)). Finally, the official seeking absolute prosecutorial immunity bears the burden of demonstrating that immunity is justified for the function at issue. *Buckley*, 509 U.S. at 269.

The NMCRA is the state analogue to § 1983. *Bolen v. N.M. Racing Comm'n*, 2025-NMSC-034, ¶ 11, 578 P.3d 1121. It authorizes a person to sue a public body for a deprivation of the rights, privileges, and immunities guaranteed by the New Mexico constitution's bill of rights. NMSA 1978, §§ 41-4A-1 to -13 (2021). Thus, unlike § 1983 claims, NMCRA claims are brought "exclusively" against public bodies, which are liable for the conduct of the individual persons "acting on behalf of, under color of or within the course and scope of the authority of the public body." Section 41-4A-3(C). Accordingly, the NMCRA waives the State's sovereign immunity. Section 41-4A-9. The NMCRA also prohibits the use of qualified immunity, an available defense against § 1983 claims. *See* Section 41-4A-4.

Despite this waiver and prohibition, the NMCRA preserves "judicial immunity, legislative immunity or any other constitutional, statutory or common law immunity." Section 41-4A-10. The immunities preserved by the NMCRA are available to public bodies, even if they would attach to a personal capacity § 1983 claim, provided that the immunity is applied consistently with its "underlying rationale." *Bolen*, 2025-NMSC-034, ¶¶ 31–32.

A prosecutor acting under the FJDA is a quasi-judicial officer. *See State ex rel. Ward v. Romero*, 1912-NMSC-011, ¶ 22, 17 N.M. 88, 125 P. 617 ("Under [New Mexico's] Constitution, the district attorney is a part of the judicial system of the state . . . [and] is a quasi judicial officer."). And, as both parties agree, the scope of absolute prosecutorial immunity under the NMCRA

mirrors the scope of immunity under § 1983. *See Bolen*, 2025-NMSC-034, ¶¶ 24, 27 ("[W]e agree with the district court that § 1983 is in pari materia with the [NM]CRA, . . ."); ***see also*** **Defs.' Mot. Dism. III, Doc. 10 at 23–26; Pl.'s Resp. Mot. Dism. III, Doc. 35 at 18–19**. Therefore, when determining whether Defendants are entitled to absolute prosecutorial immunity, the Court applies the functional approach to both Plaintiff's § 1983 and NMCRA claims against Defendant Morrissey and Defendant FJDA, respectively.

### B. Defendants Morrissey and FJDA are Entitled to Absolute Prosecutorial Immunity Under § 1983 and the NMCRA.

In State Defendants' third Motion, Defendants Morrissey and FJDA argue that Plaintiff's § 1983 and NMCRA claims should be dismissed in part because the alleged conduct falls within their absolute prosecutorial immunity.

This Motion seeks to dismiss Plaintiff's claims "based on [Defendant Special Prosecutor] Morrissey's actions related to the initiation and pursuit of the criminal charges against [Plaintiff]." **Doc. 10 at 3**. Specifically, Defendant Morrissey contends, and Plaintiff disagrees, that she is entitled to absolute immunity for (1) her initial withholding of the second and third Haag reports from Plaintiff, as well as her continued withholding of this evidence in violation of the trial court's February 26, 2024 scheduling order, (2) her failure to disclose additional evidence in violation of that scheduling order, (3) her failure to disclose key witnesses and documents to the grand jury in violation of a court order, and (4) her perjured testimony at trial. ***Id.*** **at 9–22**. Defendant Morrissey also argues, and Plaintiff fails to contest, that much of her other conduct is immunized.[3] ***See*** **Doc.**

[3] The parties do not contest that Defendant Morrissey is entitled to immunity for (1) her initial decisions to dismiss the case and retain the Haags as experts; (2) her violations of the State's discovery disclosure obligations; (3) all her actions in connection with the grand jury proceeding except for her failure to disclose witnesses and documents as mandated by court order; and (4) all her decisions relating to trial preparation and her conduct at trial except for withholding evidence in violation of the trial court's order and giving perjured testimony. **Doc. 10 at 8, 9–11; Doc. 35 at 6, 12, 13, 16; Defs.' Reply Mot. Dism. III, Doc. 41 at 9**.

**10 at 8, 9–11;** ***see generally*** **Doc. 35**. Nevertheless, Defendant bears the ultimate burden of demonstrating that she is entitled to absolute prosecutorial immunity. *Buckley*, 509 U.S. at 269. Therefore, the Court will also address each of these arguments. Finally, the Motion does not seek to dismiss Plaintiff's claims based on Defendant Morrissey's "statements to the media or her involvement with law enforcement's investigation of the shooting." **Doc. 10 at 3**. Nor does it seek to dismiss claims based on the allegation that "Morrissey[] agree[d] with the SFSO that Teske's ammunition should be logged under separate case number." ***Id.*** **at 21**. Accordingly, any claims based on these allegations survive this stage of litigation.

Turning first to the disputed issues, for the reasons below, the Court finds that Defendant Morrissey is entitled to absolute prosecutorial immunity for the conduct she seeks to dismiss.

1. <u>Defendant Morrissey is Entitled to Absolute Prosecutorial Immunity for Her Decision to Withhold the Haag Reports</u>

The first issue is whether Defendant Morrissey is entitled to absolute immunity for her nondisclosure of the second and third Haag reports during two distinct time periods. After dropping charges against Plaintiff in April 2023, Defendant Morrissey retained the Haags, who issued their second and third reports on August 24 and 31, respectively. **Compl. ¶¶ 138–42**. She withheld the reports through her initiation of grand jury proceedings on October 5, 2023. **Compl. ¶¶ 143–44**. Then, on February 26, 2024, after Defendant Morrissey had secured a new indictment and had not yet disclosed the reports, the trial court issued a scheduling order that stated "[f]ollowing initial discovery disclosures, the parties have a continuing duty to disclose and make available supplemental discovery within seven (7) days of receipt." **Compl. ¶ 205**. Yet, Defendant Morrissey did not disclose the second and third reports until April 30 and May 23, respectively. **Compl. ¶¶ 208, 215**. Because Defendant Morrissey was acting as an advocate rather than an

investigator during both time periods when she chose not to disclose the reports, the Court finds that both her decisions are shielded by absolute prosecutorial immunity. *Mink*, 482 F.3d at 1262.

a. *Defendant Morrissey Enjoys Absolute Prosecutorial Immunity for Initially Withholding the Haag Reports After Voluntarily Dismissing Criminal Charges Against Plaintiff*

Defendant Morrissey argues that absolute immunity shields her from liability because this decision falls "within the exercise of prosecutorial discretion that is intimately associated with the judicial process." **Doc. 10 at 12** (citing *Imbler*, 424 U.S. at 431 n.34). According to Defendant Morrissey, evaluating reports that analyze evidence already collected by law enforcement while there is probable cause to believe the suspect committed a crime is part of "the role of the prosecutor in evaluating evidence and preparing to initiate a judicial proceeding," **Defs.' Reply Mot. Dism. III**, **Doc. 41 at 4** (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009)), not part of a preliminary investigation, ***id.* at 5**. She supports her contention that she had probable cause by noting that the Complaint alleges (1) Plaintiff did not check the gun, (2) held it in Hutchins' direction, and (3) cocked it before it discharged. **Compl. ¶¶ 50–55; *see* Doc. 10 at 10** ("This alone is sufficient to establish probable cause . . . ."). Plaintiff disagrees, arguing that Defendant Morrissey's alleged misconduct is not shielded by prosecutorial immunity for it occurred while she lacked probable cause and was merely investigating whether to re-file charges and initiate grand jury proceedings against Plaintiff. **Doc. 35 at 7, 9**.

Whether Defendant Morrissey is protected for her initial withholding from August to October depends on whether she functioned more as an advocate or an investigator when she retained the Haags and evaluated their reports after dropping charges against Plaintiff. *See supra* Section II.A; *Mink*, 482 F.3d at 1261. Because the Court finds that she functioned more as an advocate, the Court finds that she is entitled to absolute immunity.

The Tenth Circuit has never had the occasion to assess whether a prosecutor who drops charges and subsequently retains experts to evaluate evidence already collected by other law enforcement personnel is engaging in advocacy or investigation. But it has applied the continuum based approach to a prosecutor's pre-indictment conduct, a close analog. In pre-indictment cases, the Court determines the function played by the prosecutor by considering such factors as (1) "whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." *Mink*, 482 F.3d at 1261 (citation modified). This list is not exhaustive, however, and the Court may consider other relevant factors. *Id*. Relevant here is (4) whether Defendant Morrissey had probable cause to believe Plaintiff had committed a crime after she dropped charges. Although important, "[a] determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards." *Buckley*, 509 U.S. at 274 n.5. Similarly, a lack of probable cause is not determinative, but merely "a good clue a prosecutor is engaging in activity beyond the scope of advocacy, . . . ." *Warnick v. Cooley*, 895 F.3d 746, 752 (10th Cir. 2018). Taken together, these factors weigh in Defendant Morrissey's favor.

First, the conduct is closely associated with the judicial process. The initiation of the criminal process and trial are core aspects of the judicial process. *See Imbler*, 424 U.S. at 431. Neither of these core activities, however, can be undertaken without preparation, which requires such things as engaging experts, reviewing their reports, and determining their utility for an upcoming indictment. *Imbler*, 424 U.S. at 431 n.33 ("Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence."). Defendant Morrissey's decision to withhold the reports was an antecedent to the filing of criminal charges and her advocacy before the grand jury, core steps in the judicial process. Like

the ultimate activities her decision to withhold the reports supported, the decision itself is closely associated with the judicial process.

Second, the disclosure of evidence to a defendant is a uniquely prosecutorial function. It is a "well-settled" rule that prosecutors have absolute immunity for knowingly suppressing exculpatory evidence. *Robinson*, 940 F.2d at 1372 n.4; *Imbler*, 424 U.S. at 428–29. Here, Plaintiff unequivocally alleges that Defendant Morrissey "failed to disclose" evidence to him. **Compl. ¶ 143** ("[T]he State failed to disclose to [Plaintiff] both the Second Haag Report and, of particular concern, the Third Haag Report until months later, . . . ."); ***id.*** **¶ 258(g)** ("Defendant Morrissey knowingly failed to disclose exculpatory information . . . including but not limited to the Third Haag Report . . . ."). He does not allege that she fabricated or created evidence to secure a conviction. *See Bledsoe*, 934 F.3d at 1116–18 (denying absolute immunity for fabricating testimony that inculpated defendant during the initial investigation, resulting in a conviction).[4]

Third and relatedly, deciding whether to disclose evidence to opposing counsel requires the exercise of an advocate's professional judgment. To be sure, a prosecutor exercises some professional judgment anytime she reviews evidence and determines its value to a case. *Mink*, 482 F.3d at 1262. But under the Supreme Court's functional approach, the question is whether a

---

[4] This is the relevant distinction between this case and others that initially appear factually similar. Defendant Morrissey's alleged conduct involves withholding evidence as part of initiating charges, not fabricating evidence during an initial investigation. The former is advocacy done by a prosecutor, while the latter is investigatory because it is conduct that we expect of detectives and police. *See Bledsoe*, 934 F.3d 1112 (characterizing a scheme to frame plaintiff for a crime as fabricating evidence during a preliminary investigation); *see also Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014) (denying absolute immunity for fabricated testimony that led to an indictment a month before arrest and a year before trial, where prosecutor did not challenge that he was performing investigative work); *Wearry v. Foster*, 33 F.4th 260, 267–68 (5th Cir. 2022) (characterizing prosecutor's decision to "invent[] a false narrative and then coerce[] a vulnerable juvenile to adopt and testify to it in court," as fabricating false evidence during an investigation, for which the court denied immunity).

particular evaluation and decision about what to do with evidence is the kind performed by an advocate or an investigator. *Id*. If, as in *Mink*, a prosecutor merely exercises professional judgment in her review of an affidavit in support of a search warrant, then she is playing the role of an investigator. *Id*. But here, Defendant Morrisey determined that evidence should not be shared with an opposing party—a decision with which an investigator would never be tasked. *See Walker v. City of New York*, 974 F.2d 293, 299 (2nd Cir. 1992) (explaining that it is the role of prosecutors, not the police, to determine "which evidence constitutes *Brady* material that must be disclosed to the defense"). Indeed, communicating with opposing counsel is a quintessential aspect of the advocate's role.

Fourth, a fair inference of the Complaint is that Defendant Morrissey had probable cause to believe Plaintiff had committed a crime, even after she dropped the charges against him. Although the Complaint alleges that Defendant Morrissey lacked probable cause in August 2023, ***see* Doc. 35 at 9**, it also alleges that Plaintiff (1) did not check the gun, (2) held it in Hutchins' direction, and (3) cocked it before it discharged, **Compl. ¶¶ 50–55**. The Court need not take as true Plaintiff's legal conclusion that Defendant Morrissey lacked probable cause and may instead determine whether the alleged facts support the inference that probable cause existed. *Kay*, 500 F.3d at 1217; *Twombly*, 550 U.S. at 555. With that in mind, these facts support the inference that prosecutors had probable cause to believe that a crime had been committed, even if not for the crimes they eventually charged. Moreover, the fact Defendant Morrissey dropped the charges does not, by itself, indicate she did not believe that probable cause existed. The Complaint only alleges that she dropped the charges once she acknowledged that the State's producer theory lacked merit. **Compl. ¶ 138**. This is not the same thing as acknowledging that no probable cause existed.

Plaintiff appeals to two additional factors to undermine the finding of immunity. The first is "timing," for which he cites the proposition that "absolute immunity does not apply to actions taken in investigatory capacity 'well before' a grand jury was empaneled." **Doc. 35 at 7–8** (citing *Buckley*, 509 U.S. at 274). The second is that the alleged activity occurred "outside of court." **Doc. 35 at 9** (citing *Bledsoe*, 934 F.3d at 1118 ("[I]n-court activities are generally protected while out-of-court activities . . . are not."). Neither of these affect the Court's conclusion. The delay in *Buckley*, from which Plaintiff lifts the timing factor, is twice as long as it is here. In *Buckley*, prosecutors filed charges ten months after the alleged misconduct. 509 U.S. at 264. Meanwhile, Defendant Morrissey told Plaintiff that she intended to indict him less than two months after reviewing the reports, and she empaneled a grand jury within five. **Compl. ¶¶ 141–42, 144, 202**. Furthermore, Plaintiff's assertion that out-of-court activities are less likely to be advocacy proves very little, if anything at all. *Mink*'s factors were developed for pre-indictment conduct specifically because it can be difficult to determine whether such conduct is more like advocacy or investigation. The Court has considered these factors and determined that Defendant Morrissey's failure to disclose the reports is closer to advocacy. Plaintiff's "out-of-court" retort is essentially that because this conduct is not as far along the advocacy continuum as introducing evidence at trial, it should be considered investigation. ***See*** **Doc. 35 at 9**. But the purpose of the inquiry is simply to determine on which side of the advocacy-investigation line this conduct falls. On the balance of factors, it falls on the advocacy side of that line.

Finally, Plaintiff's reliance on *Buckley* does not rescue his case either. In *Buckley*, the Supreme Court held that prosecutors were not shielded by prosecutorial immunity for "their fabrication of false evidence during the preliminary investigation of an unsolved crime." 509 U.S. at 275. The Court said that since prosecutors did not have probable cause to initiate judicial

proceedings during the period of alleged misconduct, "[t]heir mission at that time was entirely investigative . . . ." *Id.* at 274. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, [absolute] immunity should protect the one and not the other.'" *Id.* at 273 (quoting *Hampton v. Chicago*, 484 F.2d 602, 608 (7th Cir. 1973)).

*Buckley* is distinguishable from the case at hand in several ways. As already mentioned, a fair inference of Plaintiff's Complaint is that Defendant Morrissey had probable cause to believe that Plaintiff had committed a crime. But even if she lacked probable cause, there are at least two additional differences. First, the prosecutors in *Buckley* had just initiated an investigation to determine whether evidence at the scene could be linked to the defendant. *Buckley*, 509 U.S. at 274. Here, Defendant Morrissey took over as Special Prosecutor on the back of a nearly eighteen-month-long investigation. ***See*** **Compl. ¶¶ 63, 137**. It is indisputable that she was an advocate when she took over in March 2023, and that she was advocating on behalf of the state when she decided to drop the charges against Plaintiff in April. *See Imbler*, 424 U.S. at 431 n.33. It would be bizarre, then, to say that this act of advocacy thrust her back into the role of investigator. Second, the conduct performed by Defendant Morrissey—retaining experts for the purposes of analyzing evidence already obtained by law enforcement and then determining what to do with that analysis—is not the type of investigative function typically performed by a detective. It is the detective's role to search for clues and corroboration, *Buckley*, 509 U.S. at 273, but it is the prosecutor's role to evaluate how useful experts' analyses will be to the case as she prepares and initiates charges, *Mink*, 482 F.3d at 1261 (citing *Pfieffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991)).

Thus, on the continuum between advocacy and investigation Defendant Morrissey's withholding of the Haag reports was not so far removed from the judicial process that her conduct falls outside the scope of absolute prosecutorial immunity.

b. *Defendant Morrissey Enjoys Absolute Prosecutorial Immunity for Continuing to Withhold the Haag reports in Violation of the Trial Court's Scheduling Order*

Defendant Morrissey also argues that she is entitled to absolute immunity for her continued withholding of the second and third Haag reports until April and May 2024 in violation of a court order. ***See*** **Doc. 10 at 12**. Plaintiff contends that prosecutors are not entitled to immunity for withholding exculpatory evidence if doing so violates a court order. **Doc. 35 at 9**. In reply, Defendant states that the Tenth Circuit has already indicated that her actions would fall within absolute immunity, following the Eighth and Sixth Circuits on this issue. **Doc. 41 at 6–7** (citing *Gagan v. Norton*, 35 F.3d 1473, 1476 (10th Cir. 1994), *Webster v. Gibson*, 913 f.2d 510, 513–14 (8th Cir. 1990), *and Price v. Montgomery Cnty.*, 72 F.4th 711, 721 (6th Cir. 2023)). And even if the Tenth Circuit was to follow the Third Circuit, Defendant Morrissey argues that she would have immunity under the specific order issued by the state court. ***Id.*** **at 5–8**.

Accordingly, the issue is whether Defendant Morrissey's violation of a regular scheduling order for failing to disclose potentially exculpatory evidence subjects her to civil damages liability under § 1983. *Imbler* and its progeny are clear: she is shielded by absolute prosecutorial immunity. Under *Imbler*, the law has long recognized absolute prosecutorial immunity for the withholding of exculpatory evidence. *See supra* Section II.A; Section II.B.1.a. Indeed, it is a "well-settled" rule that prosecutors have absolute immunity for knowingly suppressing exculpatory evidence. *Robinson*, 940 F.2d at 1372 n.4; *Imbler*, 424 U.S. at 428–29.

Here, the scheduling order stated that "[f]ollowing initial discovery disclosures, the parties have a continuing duty to disclose and make available supplemental discovery within seven (7)

days of the receipt of such information." **Compl. ¶ 205**. This order left Defendant Morrissey "with something more than a ministerial function to perform," since she had to determine which evidence was relevant, exculpatory, or privileged. *Reid v. State of N.H.*, 56 F.3d 332, 337 (1st Cir. 1995) (determining that absolute immunity was not displaced by trial discovery orders). If the act of violating a regularly issued scheduling order removed absolute immunity, a prosecutorial function long protected by absolute immunity would effectively be eliminated. Removing prosecutorial immunity for violating regular scheduling orders would expose prosecutors to § 1983 suits for the violation of any court order, even inadvertent violations, potentially hindering the function of the judicial system. *See Imbler*, 424 U.S. at 423–24; *Snell*, 920 F.2d at 686–87. Additionally, there are other remedies available to litigants for the violation of a scheduling order. *See Snell*, 920 F.2d at 687.

The Court's decision does not run afoul of the Tenth Circuit's decision in *Gagan*, 35 F.3d 1473. There, the Tenth Circuit held that an Assistant Attorney General of Colorado did not have absolute immunity for directing a court reporter not to prepare transcripts for a *pro se* civil litigant to use in preparing a petition for writ of habeas corpus. *Id.* at 1474–76. The prosecutor's conduct violated a court order requiring that transcripts be prepared at the government's expense. *Id.* The Tenth Circuit reasoned that it was "difficult to see how a prosecutor's actions in contravening the authority of the judicial branch of state government in *regard to the defense of a civil action* constitute the kind of advocacy related to the initiation and prosecution of *criminal proceedings*, . . . ." *Id.* at 1476 (emphasis added). That is not the issue here. Defendant Morrissey did not fail to disclose reports for Plaintiff's use in another proceeding—her failure is confined to the criminal proceeding in which she served as advocate for the state. And thus, it is much closer to advocacy

on the continuum than the *Gagan* prosecutor's order not to release transcripts to assist a civil litigant with filing a petition in a different proceeding.

Plaintiff's reliance on Third Circuit decisions refusing to grant absolute immunity to prosecutors who violated court orders fares no better. Not only are these cases merely persuasive authority, but they are also easily distinguishable. In *Odd v. Malone*, a state judge issued a bench warrant for the arrest of an essential, but evasive, witness in the state's murder case against Michael Overby. 538 F.3d 202, 205 (3d Cir. 2008). Wanting to prevent a protracted detention, the judge orally ordered the prosecutor to notify the court whether Overby's prosecution had been continued. *Id*. 205–06. The Third Circuit held that the prosecutor's failure to notify the court was not immunized—determining "whom to incarcerate and for what length of time" is "a judicial function," not a "prosecutorial function." *Id.* at 214. And in *Munchinski v. Solomon*, an unpublished decision, the prosecutor violated an explicit order to give the district court specific evidence, which the Third Circuit described as a ministerial or administrative task that was intended to remove the prosecutor's discretion. 747 F. App'x 52, 60 (3d Cir. 2018). In both cases, prosecutors violated orders to give information to the court, the intent of which was to aid the court in carrying out judicial functions. But here, Defendant Morrissey failed to disclose evidence to opposing counsel, a quintessential prosecutorial function for which prosecutors have long been immunized. *See Imbler*, at 431 n.34; *Robinson*, 940 F.2d at 1372 n.4 (10th Cir. 1991); *Walker*, 974 F.2d at 299 (2nd Cir. 1992).

Therefore, the Court finds that Defendant Morrissey is entitled to prosecutorial immunity for her failure to disclose the Haag reports in violation of a court scheduling order.

2. Defendant Morrissey's Failure to Disclose Additional Evidence in Violation of the Trial Court's Scheduling Order is also Protected by Absolute Prosecutorial Immunity

Taking the factual allegations in the Complaint as true, not only did Defendant Morrissey violate the court's February 2024 scheduling order by failing to disclose the second and third Haag reports, but she also violated it when she failed to timely disclose at least six other batches of evidence.[5] However, just like her failure to disclose the Haag reports is immunized by *Imbler* and its progeny, so too is her failure to disclose all other evidence subject to the order. *See supra* Section II.B.1.b.

3. Defendant Morrissey is Entitled to Absolute Prosecutorial Immunity for Withholding Evidence and Testimony from the Grand Jury in Violation of a Court Order

Third, Defendant Morrissey contends that she is entitled to absolute prosecutorial immunity for her conduct at and surrounding the January 2024 grand jury proceedings. **Doc. 10 at 13–18**. Plaintiff alleges that Defendant Morrissey violated an express order to make certain witnesses and documents "readily available" by "preventing the grand jury from seeing or hearing from the exculpatory documents and witnesses."[6] **Doc. 35 at 12; *see* Compl. ¶ 167**. Specifically, the Complaint alleges that Defendant Morrissey did not present Plaintiff's witnesses to the grand

[5] (1) "Roughly 200 files" of "additional communications with the Haags . . . dating back to 2023,"; (2) "several email communications with [Defendant] FJDA's expert witness, Carpenter,"; (3) "dozens of audio recordings of interviews that the State's investigator, Connor Rice, had conducted over the prior year,"; (4) "dozens of previously undisclosed lapel videos from SFSO that depict, among other things, SFSO's search of PDQ," (5) "over 1,100 pages of documents" that consisted of "previously undisclosed communications involving several members of the current or former prosecution team,"; and (6) the ammunitions provided to the State by Troy Teske and a supplemental report "recounting the importance and details about this evidence." ***See* Compl. ¶¶ 207, 208, 209, 211, 213, 215, 224, 239–49; Doc. 35 at 14–15**

[6] As for Defendant Morrissey's other conduct related to the grand jury proceedings, Plaintiff concedes that Defendant Morrissey has immunity for "her decision to present the case to the grand jury, the deficiencies associated with her target letter to [Plaintiff], and her misrepresentations to the court and grand jury." **Doc. 35 at 12**.

jury, "withheld over a dozen exculpatory documents," and failed to inform the grand jury that the witnesses and documents were available for testimony and review. **Compl. ¶¶ 197, 198, 202**. According to Plaintiff, Defendant Morrissey does not have absolute immunity for withholding witnesses and documents because the court's express order removed her discretion. **Doc. 35 at 12**.

Accordingly, the issue is whether Defendant Morrissey enjoys absolute prosecutorial immunity for failing to make certain witnesses and exhibits available to the grand jury in violation of a court order. Whether at a trial or in front of a grand jury, "[p]rosecutors are entitled to absolute immunity for their … determination of what evidence to show the court." *Nielander*, 582 F.3d at 1164. Therefore, the Court finds that Defendant Morrissey is entitled to absolute prosecutorial immunity for her conduct.

Absolute immunity attaches to all aspects of the prosecutor's advocacy before a grand jury. *Burns,* 500 U.S. at 478; *Imbler*, 424 U.S. at 422–25. Ordinarily, prosecutorial immunity encompasses a prosecutor's discretionary selection of witnesses and documents as evidence in preparation for a grand jury proceeding. *See Buckley*, 509 U.S. at 277 ("[A]cts [entitled to immunity] must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made."). This immunity also embraces a prosecutor's alleged misconduct during preparation for grand jury proceedings since "immunity attaches to the function the prosecutor is performing, but not the way in which it is performed." *Hill v. City of New York*, 45 F.3d 653, 662 (2d Cir. 1995) (granting absolute prosecutorial immunity for alleged conspiracy to withhold exculpatory evidence from a grand jury). Plaintiff's own Response appears to concede as much, focusing narrowly on Defendant Morrissey's violation of a court order rather than

attacking the broader principle that prosecutors enjoy absolute immunity for their decisions about which evidence to present to a grand jury. ***See* Doc. 35 at 11–13**.

Just as Defendant Morrissey's violation of a scheduling order did not foreclose absolute prosecutorial immunity for her failure to disclose exculpatory evidence to Plaintiff, *see supra* Section III.B.2, so too here, the Court finds that her violation of this court order does not disturb the longstanding principle that a prosecutor is immune for preparing and presenting a case to a grand jury. Defendant Morrissey's alleged misconduct in the selection and presentation of witnesses and exhibits is part and parcel of her function as an advocate for the state, court order notwithstanding. *See Imbler*, 424 U.S. at 431 n. 33 (recognizing absolute immunity for a prosecutor's determination about which witnesses to call and what evidence to present); *see also Price*, 72 F.4th at 718, 721 (granting absolute immunity when prosecutor told witness to destroy evidence despite court order granting access); *Webster*, 913 F.2d at 513–14 (granting absolute immunity when prosecutor disregarded court order to file information or release detainee).

Applying the Tenth Circuit's "continuum based" approach, Defendant Morrissey was an advocate when she allegedly engaged in misconduct by violating a court order to disclose witnesses and exhibits for the grand jury proceeding. Accordingly, the Court finds that Defendant Morrissey is entitled to absolute prosecutorial immunity for exercising this decision.

4. <u>Defendant Morrissey is Entitled to Absolute Prosecutorial Immunity for Giving Perjured Testimony at Trial</u>

Finally, the parties dispute whether Defendant Morrissey is entitled to absolute immunity for her testimony at trial.[7] **Doc. 10 at 22; Doc. 35 at 16**. Defendant Morrissey took the stand to explain the State's failure to disclose arguably exculpatory evidence—ammunition that could have

[7] Plaintiff concedes that Defendant Morrissey has absolute immunity for "her decision to pursue theories at trial that she knew were false and the fact that she elicited false testimony from witnesses." **Doc. 35 at 16**.

been the source of the live ammunition on set—to Plaintiff. ***See* Compl. ¶¶ 236, 250–252**. In the process, she allegedly perjured herself. ***Id.* at ¶¶ 251–54**. Plaintiff contends that when Defendant Morrissey took the stand, she assumed the role of "complaining witness," such that her statements were not immunized as part of her usual, prosecutorial role to present the state's case. **Doc. 35 at 16**. Plaintiff points to Tenth Circuit and Supreme Court cases explaining that a "public prosecutor assumes the role of a complaining witness, and is not entitled to absolute immunity, when personally vouching for the truth of the facts that provide for the evidentiary basis for a finding of probable cause." *Chilcoat*, 41 F.4th at 1212 (citing *Kalina*, 522 U.S. at 129–31). He asks the Court to extend the complaining witness doctrine to embrace the present situation. Defendant Morrissey disagrees, offering two alternative arguments for why she is immune for her conduct. First, that she was not a complaining witness. **Doc. 41 at 9–11**. But even if she was, she would be protected by the absolute witness immunity doctrine. **Doc. 35 at 16**.

A prosecutor is entitled to absolute immunity for making false statements in her role as advocate at trial, but not when she acts as a complaining witness. *Chilcoat*, 41 F.4th at 1209–10, 1212. Therefore, the issue is whether Defendant Morrissey was a complaining witness when she took the stand at Plaintiff's criminal trial. Since the Court finds no basis in the case law to extend the complaining witness doctrine to the present case, the Court declines to agree with Plaintiff.

A complaining witness is "a party who procure[s] an arrest and initiate[s] a criminal prosecution." *Rehberg v. Paulk*, 566 U.S. 356, 370 (2012) (citing *Kalina*, 522 U.S. at 135) (Scalia, J., concurring). The complaining witness "sets the wheels of government in motion by instigating a legal action." Wyatt v. Cole, 504 U.S. 158, 164–65 (1992). Indeed, a complaining witness "might not actually ever testify, and thus the term 'witness' in 'complaining witness' is misleading." *Id.* That's why, in the Tenth Circuit, it is understood that a core function of a complaining witness is

to "personally vouch[] for the truth of facts that provide the evidentiary basis for a finding of probable cause." *Chilcoat*, 41 F.4th at 1212. Here, Defendant Morrissey was not attesting to the truth of facts in order to secure Plaintiff's arrest or initiate his prosecution. She was retroactively justifying state actions to allegedly "minimize and sanitize" the State's failure to provide Plaintiff with exculpatory evidence. **Compl. ¶ 250**.

Finally, the cases upon which Plaintiff relies do not support extending the definition of a complaining witness to a prosecutor testifying at trial about the state's failure to disclose certain evidence. The facts of each of these cases are distinguishable. *See Nielander*, 582 F.3d at 1164 (explaining that a prosecutor was not a complaining witness when plaintiff did not allege that the prosecutor personally vouched for the truth of specific facts in a signed and verified information); *Martinez v. Winner*, 771 F.2d 424,437–38 (10th Cir. 1985) (holding that a federal prosecutor did not have immunity for lying and submitting a false affidavit after the conclusion of trial in order to defeat the plaintiff's efforts to declare a mistrial); *Carbajal v. McCann*, 808 F. App'x 620, 631–32 (10th Cir. 2010) (holding that a prosecutor was not entitled to prosecutorial immunity for making false statements in an affidavit in order to bring contempt of court charges against the defendant). Accordingly, Defendant Morrissey was not a complaining witness during her trial testimony,[8] and she is entitled to absolute immunity for her statements.[9]

---

[8] Even if Defendant Morrissey was a complaining witness, Supreme Court precedent suggests she would not be liable under § 1983 for her trial testimony. *See Rehberg*, 566 U.S. at 370 (citing *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983)) ("[A] complaining witness cannot be held liable for perjurious *trial* testimony.").

[9] Having found for Defendant Morrissey on her first, independent ground, the Court need not reach the question whether Defendant Morrissey is immune under the absolute witness immunity doctrine.

5. Defendant Morrissey is Entitled to Absolute Prosecutorial Immunity for Each of the Undisputed Claims

Turning to the arguments that Defendant Morrissey made in her Motion that Plaintiff did not dispute, the Court will briefly address each in turn. For the reasons below, the Court dismisses claims based on the following allegations.

a. *Defendant Morrissey is Immune for Deciding to Retain the Haags as Experts*

To the extent it applies to Defendant Morrissey's decision to retain the Haags as experts, the Court incorporates its opinion in Section III.C.1.a and finds that Defendant Morrissey is entitled to absolute prosecutorial immunity. Just as *Imbler* requires that a prosecutor's decision to use a witness is insulated from liability, it requires as well that steps leading to that decision, such as engaging potential witnesses in the first place, must be free of the distortive effects of potential liability. *Id.* at 426, 431 n.33.

b. *Defendant Morrissey is Immune for Her Violations of the State's Discovery Disclosure Obligations*

A prosecutor is immune for "the deliberate withholding of exculpatory information." *Imbler* at 431 n.34; *see also Robinson*, 940 F.2d at 1373 n.4 ("Whether the claim involves withholding evidence … or instructing a witness to testify evasively, absolute immunity from civil damages is the rule for prosecutors."). Therefore, Defendant Morrissey is entitled to absolute prosecutorial immunity for every one of her alleged violations of the State's discovery disclosure obligations.

c. *Defendant Morrissey is Immune for all Her Actions in Connection with the Grand Jury Proceedings*

Plaintiff conceded that all of Defendant Morrissey's conduct before the grand jury is immunized except for her decision to withhold evidence and testimony at the proceedings in violation of the court's order. The Court incorporates its opinion regarding the violation of her

court order, *see supra* Section II.B.3, and finds that, just like the violation is immunized because absolute immunity attaches to all aspects of the prosecutor's advocacy before a grand jury, *Burns,* 500 U.S. at 478; *Imbler*, 424 U.S. at 422–25, so too is all of Defendant Morrissey's conduct related to the grand jury proceedings.

d. *Defendant Morrissey is Immune for all Her Conduct at and in Preparation for Trial*

Trial preparation and arguing in the courtroom are quintessential aspects of advocacy. *See Mink*, 482 F.3d at 1259–61. Accordingly, Defendant Morrissey is entitled to absolute prosecutorial immunity for her role as advocate in preparing and presenting the State's case at trial, including her decisions to pursue false theories and elicit false testimony. *Imbler*, 424 U.S. at 430–31.

In sum, Defendant Morrissey is entitled to absolute prosecutorial immunity under § 1983 for the conduct described in State Defendants' Motion. Since the scope of absolute prosecutorial immunity under the NMCRA is identical to the scope of immunity under § 1983, *see supra* Section II.A, the Court finds that the FJDA is also entitled to absolute immunity for this conduct under the NMCRA. State Defendants' Motion to Dismiss III is granted.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Motion to Dismiss I is **DISMISSED AS MOOT** and Motions to Dismiss II and III are hereby **GRANTED** for the reasons described in this Memorandum Opinion and Order.

- Motion to Dismiss I: Defendants Carmack-Altwies and Reeb's Motion to Dismiss Plaintiff's Defamation Claim for Failure to State a Claim **(Doc. 7)** is **DISMISSED AS MOOT**.

- Motion to Dismiss II: State Defendants' Motion to Dismiss Plaintiff's § 1983 Claim Against the FJDA and Individuals in Official Capacities for Failure to State a Claim **(Doc. 9)** is **GRANTED**.
- Motion to Dismiss III: Defendants Morrissey and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 10)** is **GRANTED**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE