**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

ALEXANDER R. BALDWIN III,

Plaintiff,

v. Case No. 1:25-cv-01052-KWR-LF

KARI T. MORRISSEY, MARY CARMACK-ALTWIES,
ANDREA REEB, JENNIFER PADGETT MACIAS,
THE FIRST JUDICIAL DISTRICT ATTORNEY'S OFFICE,
ALEXANDRIA HANCOCK, MARISSA POPPELL, BRIAN BRANDLE, and
SANTA FE COUNTY BOARD OF COUNTY COMMISSIONERS,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTIONS TO DISMISS**

**THIS MATTER** comes before the Court on State Defendants' Motions to Dismiss IV and V **(Docs**. **11** and **12)**. These Motions turn on whether the State Defendants had absolute prosecutorial immunity for their alleged conduct.

Having reviewed the parties' pleadings, briefing, and relevant law, the Court finds that Motion IV is well-taken and, therefore, is **GRANTED in part** and **DENIED in part**. Motion V is also well-taken and, therefore, is **GRANTED in part** and **DENIED in part**.

**INTRODUCTION**

The Court previously issued an order granting Defendant Kari Morrissey's Motion to Dismiss, shielding many of her alleged acts of misconduct behind absolute prosecutorial immunity. **Mem. Op. Ord. Granting State Def.'s Mot. Dismiss II, III, Doc. 56**. When it did so, the Court acknowledged that there are times when it is better to leave unredressed the wrongs done by allegedly dishonest prosecutors than to subject dutiful prosecutors to the constant threat of

litigation. ***Id.*** This principle also applies to the alleged misconduct of Defendants Mary Carmack-Altwies and Andrea Reeb. And so, even though the Court is concerned by the allegations of misconduct by Defendants Carmack-Altwies and Reeb, it recognizes that, as prosecutors, they are entitled to invoke the protection of absolute prosecutorial immunity.

It bears repeating that absolute immunity is conferred "not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Malley v. Briggs*, 475 U.S. 335, 342 (1986) (internal citation omitted). And that "the [Supreme] Court has determined that the smooth functioning of the judicial system takes precedence over those meritorious claims which will be foreclosed by granting absolute immunity." *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir. 1990).

Accordingly, this Court finds that under the doctrine of absolute prosecutorial immunity defendants are insulated from liability for much of the misconduct they are alleged to have committed.

## BACKGROUND[1]

As alleged in the Complaint, whose well-pleaded factual allegations the Court must take as true, this case arises from the criminal prosecution of Plaintiff Alexander R. Baldwin III after he "accidental[ly]" shot and killed cinematographer Halyna Hutchins during the *Rust* film production. **Compl. ¶ 2**. The pistol fired on set was loaded with live rounds instead of "dummy" rounds, inert bullets designed to look like real bullets. ***Id.*** **¶¶ 35, 56**.

[1] This background section focuses on alleged conduct related to the claims that State Defendants seek to dismiss in Motions IV and V. Thus, the Court does not recite every fact in Plaintiff's Complaint, like the alleged actions taken by Defendants Kari Morrissey, Alexandria Hancock, Marissa Poppell, Brian Brandle, and the Santa Fe County Board of County Commissioners ("County Defendants").

The shooting occurred on October 21, 2021, while Plaintiff, Hutchins, writer-director Joel Souza, and crew were setting up a close-up camera shot of Plaintiff pointing and cocking the pistol, which required the use of dummy rounds. ***Id.*** **¶¶ 24, 46–49**. While preparing for the shot, a crew member handed the prop gun to Plaintiff and "announced" that there was a "cold gun"—an inspected gun incapable of firing—on set. ***Id.*** **¶ 51**. Plaintiff never checked the gun himself. ***Id.*** **¶¶ 50–52**. As Plaintiff was rehearsing the shot, Hutchins, who was standing near the camera, directed him to point the gun her way and cock the gun. ***Id.*** **¶¶ 54–55**. Suddenly, the gun "just went off," and a live round unexpectedly discharged from the gun, striking Hutchins and Souza. ***Id.*** **¶¶ 56, 88**. Hutchins died from her injuries. ***Id.*** **¶ 62**.

## I. <u>Prosecution by State Defendants Carmack-Altwies, Reeb, and the FJDA</u>

As relevant to this Motion, state prosecutors from the First Judicial District Attorney's Office ("FJDA") were "heavily involved" from the outset of the Santa Fe Sheriff's Office's ("SFSO") investigation, making decisions "collectively" as a "team." ***Id.*** **¶ 74**. Plaintiff asserts that once prosecutors, elected officials, and "high-ranking members of law enforcement" became involved, the focus of the investigation shifted from discovering how live ammunition ended on set to blaming Plaintiff. ***Id.*** **¶¶ 72–77**. As part of the investigation, Plaintiff contends that the State was partially responsible for destroying the prop gun that fired the live round through haphazard testing without first documenting the internal components—even though multiple people, including Plaintiff, told investigators that "the gun just 'went off.'" ***Id.*** **¶¶ 88–93**. Later examination revealed that the prop gun showed signs of modification pre-dating the fatal shooting. ***Id.*** **¶¶ 94–95**.

According to the Complaint, Defendant Mary Carmack-Altwies (District Attorney for the First Judicial District) "decided to criminally charge [Plaintiff] 'pretty close to the beginning' of

the investigation," despite the lack of evidence demonstrating that prosecutors could prove the elements of the offense—and the mounting evidence demonstrating that others were responsible for the shooting. ***Id.*** **¶¶ 98, 100**.

In June 2022, Defendant Carmack-Altwies decided to appoint Defendant Andrea Reeb as Special Prosecutor "to assist with prosecutions." ***Id.*** **¶ 101**. The Complaint alleges that Defendants Carmack-Altwies and Reeb were motivated by the opportunity to use the prosecution to further their political and personal agendas and professional ambitions. **Compl. ¶¶ 259–60**. Before a public announcement was made, Defendant Reeb emailed Defendant Carmack-Altwies confirming that she "would not disclose to the media that she had been chosen as Special Prosecutor" and expressing that she would like to make her appointment public as it "might help" her campaign to be elected state representative. ***Id.*** **¶ 102**. Several days after Defendant Reeb's email, Defendant Carmack-Altwies contributed to Defendant Reeb's campaign. ***Id.*** **¶ 103**. In August 2022, the FJDA announced that Defendant Reeb would join as Special Prosecutor. ***Id.*** **¶ 104**. After her appointment, Defendant Reeb "immediately became the point of contact for defense counsel and indicated that she was the primary attorney reviewing the SFSO report and handling the investigation. She interviewed witnesses, took proffers, engaged experts, and handled other important matters." ***Id.*** **¶ 105**.

On January 19, 2023, the FJDA announced that it was going to charge Plaintiff with two counts of involuntary manslaughter, along with a firearm sentencing enhancement. ***Id.*** **¶ 116**. The Complaint alleges that by that point Defendants Carmack-Altwies and Reeb had been trying the case in the media. ***See id.*** **¶ 114**. Following the announcement of the charges, Defendants Carmack-Altwies and Reeb appeared in the media "to comment on the evidence, their legal

theories of [Plaintiff's] culpability, the impending charges, and [Plaintiff's] possible sentence." ***Id.* ¶¶ 117–23**.

The FJDA filed charges against Plaintiff on January 31, 2023. ***Id.* ¶ 124**. Plaintiff was charged with two alternative counts of involuntary manslaughter, in violation of NMSA 1978, § 30-2-3 (1994). The first alternative count charged Plaintiff for his role as actor and shooter; the second alternative count charged him for his role as producer. ***Id.*** The second alternative count also included a firearm enhancement, pursuant to NMSA 1978, § 31-18-16 (2022). ***Id***. The firearm enhancement was enacted by the state legislature after the date of the shooting. ***Id.* ¶ 129**.

On February 7, 2023, Plaintiff sought to disqualify Defendant Reeb as Special Prosecutor. ***Id.* ¶ 128**, arguing that her dual role as State Legislator and Special Prosecutor violated the state constitution's separation of powers provision. ***Id.*** A few days later, Plaintiff moved to dismiss the firearm sentencing enhancement, arguing that it violated the Constitution's *Ex Post Facto* Clause. ***Id.* ¶ 129**. Defendants Carmack-Altwies and Reeb disparaged both motions in the media, coloring them as Plaintiff's effort to distract from his "gross negligence." ***Id.* ¶¶ 131–32**. Defendant Reeb also emailed Plaintiff "demanding that he withdraw the [motion] and threaten[ing] sanctions for its filing." ***Id.* ¶ 133**. But sometime soon after, the state withdrew the firearm enhancement. ***Id***. And although Defendant Reeb privately agreed that the enhancement violated the *Ex Post Facto* Clause, the State did not acknowledge the violation in its motion. ***Id.*** (internal citations omitted) (alleging Defendant Reeb emailed Plaintiff's counsel "admitting that she 100 percent agreed" the charge was unconstitutional). On March 15, 2023, Defendant Reeb withdrew as Special Prosecutor. ***Id.* ¶ 135**. Two weeks later, after a hearing where the judge questioned whether Defendant Carmack-Altwies could prosecute alongside a special prosecutor under NMSA 1978, Section 36-1-23.1 (1984), Defendant Carmack-Altwies also withdrew from the criminal case. ***Id.***

**¶ 136**. After Defendant Reeb withdrew from the criminal case, Defendant Carmack-Altwies appointed Defendant Kari Morrissey as Special Prosecutor in the case against Plaintiff. ***Id.*** **¶ 137**. It is a fair inference of the Complaint that, throughout the time Defendant Morrissey prosecuted the case against Plaintiff, Defendant Carmack-Altwies continued to contribute FJDA resources to aid the prosecution, even after she withdrew. ***See generally Id.*** **¶¶ 137–255**.

Due to Defendant Carmack-Altwies' decision to co-prosecute the case with Defendant Reeb and Defendant Reeb's dual service as State Legislator and Special Prosecutor, the Complaint alleges that each Defendant respectively lacked constitutional and statutory authority to charge Baldwin with any offense." ***Id.*** **¶ 258(d)**.

## II. <u>Plaintiff's Instant Case Against State Defendants</u>.

In January 2025, Plaintiff filed the Complaint in state court. **Not. of Removal, Doc. 1 ¶ 1**; **Am. Not. of Removal, Doc. 8 ¶ 1**. In his Complaint, Plaintiff alleges six claims against State and County Defendants for their misconduct while investigating and prosecuting his criminal case. **Compl. ¶¶ 256–310**. As relevant here, Plaintiff alleges:

- Count I: Violation of Rights Under 42 U.S.C. § 1983 for Conspiracy to Cause Malicious Prosecution and Deprivation of Civil Rights (Against all Defendants), and
- Count VI: Violation of the New Mexico Civil Rights Act ("NMCRA") (Against the FJDA, Commissioners, and the County).

Regarding Counts I and VI, Plaintiff alleges that State Defendants' conspiratorial actions were "driven by ill motives and to accomplish illegitimate ends, including to harass or 'humble' [Plaintiff], to promote their political agendas . . . , or to further their own personal agendas or professional ambitions." ***Id.*** **¶¶ 260, 300**. Plaintiff alleges further that these actions violated Defendant's rights under the United States and New Mexico constitutions. ***Id.*** **¶¶ 261, 301**. Due

to Defendants' "unreasonable and unlawful conduct," Plaintiff alleges that "he has suffered and continues to suffer substantial past and future damages, . . . including, but not limited to, legal expenses, loss of income, severe emotional distress, mental anguish, and embarrassment." ***Id.* ¶ 268**.

About one week after Defendants accepted service of the Complaint, Defendants removed Plaintiff's case to this Court. ***See* Doc. 1 ¶ 2**. Shortly thereafter, State Defendants sought to dismiss certain allegations in the Complaint. To that end, they have filed, as relevant here:

- Motion IV: Defendants Carmack-Altwies and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 11)**, and
- Motion V: Defendants Reeb and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 12)**.

Around the same time, State Defendants also filed three other related Motions to Dismiss **(Docs. 7, 9, and 10)**. The Court issued a Memorandum Opinion and Order on these Motions last week. ***See* Doc. 56**.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits a court to dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint must have sufficient factual allegations that, if true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if a plaintiff pleads factual content that allows a court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* A court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

In ruling on a motion to dismiss, a court should disregard conclusory statements of law and consider whether the factual allegations plausibly suggest the defendant is liable. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In addition to the complaint, a court may consider attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). While a court must draw all reasonable inferences in favor of the plaintiff, *Kay*, 500 F.3d at 1217, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**DISCUSSION**

The Court considers Motions to Dismiss IV and V, each of which turns on whether absolute prosecutorial immunity shields individual state prosecutors and the FJDA from suit for certain alleged conduct. Plaintiff has sued the prosecutors under § 1983 and the FJDA under the NMCRA in Counts One and Six, respectively. After discussing the scope of prosecutorial immunity under these Acts, the Court will address each Motion in turn

**I. <u>The Scope of Absolute Prosecutorial Immunity Under § 1983 and the NMCRA</u>**

Fifty years ago in *Imbler v. Pachtman*, the Supreme Court had its "first opportunity to address the § 1983 liability of a state prosecuting officer." 424 U.S. 409, 420 (1976). Since then, courts assessing prosecutorial immunity claims under § 1983 employ a "functional approach," *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (quoting *Burns v. Reed*, 500 U.S. 478 (1991)), which assesses whether an activity is "intimately associated with the judicial phase of the criminal process." *England v. Hendricks*, 880 F.2d 281, 285 (10th Cir. 1989) (quoting *Imbler,* 424 U.S. at 430). In making this assessment, the Tenth Circuit applies a "'continuum based approach,' and the 'more distant a function is from the judicial process, the less likely absolute immunity will attach.'" *Mink v. Suthers*, 482 F.3d 1244, 1261 (10th Cir. 2007) (quoting *Roberts v. Kling*, 104

F.3d 316, 318–19 (10th Cir. 1997), *rev'd on other grounds*, 522 U.S. 1025 (1997)). Advocacy and investigation mark the bounds of this continuum. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 120 (10th Cir. 2022). Thus, courts "look to which role the prosecutor is performing—advocate or investigator." *Mink*, 482 F.3d at 1262.[2]

Accordingly, in defending claims brought under § 1983 "a prosecutor is entitled to absolute immunity for those actions that cast him in the role of an advocate initiating and presenting the government's case." *Mink*, 482 F.3d at 1261; *Benavidez v. Howard*, 931 F.3d 1225, 1231 (10th Cir. 2019) (internal citations omitted) ("[A]bsolute immunity shields those acts undertaken by a [prosecutor] in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government"). "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009) (citing *Imbler*, 424 U.S. at 425–28). Such decisions include "whether and when to prosecute" and "whether to dismiss" a case. *Imbler*, 424 U.S. at 431 n.33. Prosecutorial immunity even extends to "the deliberate withholding of exculpatory information." *Id.* at 431 n.34; *see also Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1372 n.4 (10th Cir. 1991) (internal citation omitted) ("Whether the claim involves withholding evidence … or instructing a witness to testify

[2] Under the functional approach, a prosecutor's motives for her conduct are irrelevant to whether she is entitled to immunity. *See Lerwill v. Joslin*, 712 F.2d 435, 440, 441 (10th Cir. 1983). So too, is the ultimate harm or injury. *Bledsoe*, 934 F.3d at 1117 (quoting *Buckley v. Fitzimmons*, 509 U.S. 259, 271 (1993)). Motions III, IV, and V correctly point out that the Complaint's many allegations regarding the individual State Defendants' motives for prosecuting Plaintiff have no bearing on the immunity analysis, a point Plaintiff does not contest in his Responses. ***See generally* Doc. 38; Doc. 39**. The Court finds that Defendants' motivations are irrelevant at this stage and will not address the Motions' arguments about motive any further.

evasively, absolute immunity from civil damages is the rule for prosecutors.”). “Absolute immunity, however, does not extend to those actions that are investigative or administrative in nature, . . .” *Mink*, 482 F.3d at 1261–62. “For example, when a prosecutor conducts investigative work normally performed by the police, they are not performing a prosecutorial function.” *Chilcoat*, 41 F.4th at 1209 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74 (1993)). Finally, the official seeking absolute prosecutorial immunity bears the burden of demonstrating that immunity is justified for the function at issue. *Buckley*, 509 U.S. at 269.

The NMCRA is the state analogue to § 1983. *Bolen v. N.M. Racing Comm’n*, 2025-NMSC-034, ¶ 11, 578 P.3d 1121. It authorizes a person to sue a public body for a deprivation of the rights, privileges, and immunities guaranteed by the New Mexico constitution’s bill of rights. NMSA 1978, §§ 41-4A-1 to -13 (2021). Thus, unlike § 1983 claims, NMCRA claims are brought “exclusively” against public bodies, which are liable for the conduct of the individual persons “acting on behalf of, under color of or within the course and scope of the authority of the public body.” Section 41-4A-3(C). Accordingly, the NMCRA waives the State’s sovereign immunity. Section 41-4A-9. The NMCRA also prohibits the use of qualified immunity, an available defense against § 1983 claims. *See* Section 41-4A-4.

Despite this waiver and prohibition, the NMCRA preserves “judicial immunity, legislative immunity or any other constitutional, statutory or common law immunity.” Section 41-4A-10. The immunities preserved by the NMCRA are available to public bodies, even if they would attach to a personal capacity § 1983 claim, provided that the immunity is applied consistently with its “underlying rationale.” *Bolen*, 2025-NMSC-034, ¶¶ 31–32.

Here, the parties do not dispute that a prosecutor acting under the FJDA is a quasi-judicial officer. ***See* Defs.’ Mot. Dism. IV, Doc. 11 at 25**; **Pl.’s Resp. Mot. Dism. IV, Doc. 38 at 15 n.3**;

*see also State ex rel. Ward v. Romero*, 1912-NMSC-011, ¶ 22, 17 N.M. 88, 125 P. 617 ("Under [New Mexico's] Constitution, the district attorney is a part of the judicial system of the state . . . [and] is a quasi judicial officer."). Nor do the parties dispute that the state legislature intended for the scope of absolute prosecutorial immunity under the NMCRA to mirror the scope of immunity under § 1983. ***See*** **Doc. 11 at 25**; **Doc. 38 at 15 n.3**; *see also Bolen*, 2025-NMSC-034, ¶¶ 24, 27 ("[W]e agree with the district court that § 1983 is in pari materia with the [NM]CRA, . . ."). Therefore, when determining whether Defendants are entitled to absolute prosecutorial immunity, the Court applies the functional approach to both Plaintiff's § 1983 and NMCRA claims against individual State Defendants and Defendant FJDA, respectively.

## II. Motion to Dismiss IV is Granted in Part and Denied in Part Because Defendants Carmack-Altwies and FJDA are Entitled to Absolute Prosecutorial Immunity Under § 1983 and the NMCRA Only for Their Prosecutorial Acts

In State Defendants' fourth Motion, Defendants Carmack-Altwies and FJDA argue that Plaintiff's § 1983 and NMCRA claims should be dismissed in part because the alleged conduct falls within the scope of their absolute prosecutorial immunity.

This Motion seeks to dismiss Defendant Carmack-Altwies' conduct related to her role in initiating and prosecuting the state criminal action against [Plaintiff]." **Defs.' Mot. Dism. IV, Doc. 11 at 5**. Specifically, Defendant Carmack-Altwies contends against Plaintiff's disagreement that she is entitled to absolute prosecutorial immunity for (1) appointing Defendant Reeb as Special Prosecutor, (2) the prosecutorial acts she took as Defendant Reeb's co-prosecutor after appointing Defendant Reeb as Special Prosecutor, (3) knowingly violating the *Ex Post Facto* Clause by including a firearm enhancement in the original criminal information, and (4) playing a role in the testing and destruction of the gun that killed Ms. Hutchins. ***Id.*** **at 4**; **Pl.'s Resp. Mot. Dism. IV, Doc. 38 at 5–14**; **Defs.' Reply Mot. Dism. IV, Doc. 42 at 2–12**. Defendant Carmack-Altwies also contends, and Plaintiff fails to contest, that she is immunized for several other

decisions.[3] Even absent a Response from Plaintiff, Defendant bears the burden of demonstrating that she is entitled to immunity. *Buckley*, 509 U.S. at 269. Therefore, the Court will also address each of these arguments. But because Defendant Carmack-Altwies' Motion does not seek to dismiss Plaintiff's allegations based on her "alleged statements to the media or her alleged involvement with law enforcement's investigation of the shooting," **Doc. 11 at 4**, any such allegations advance to the next stage of litigation.

For the reasons below, the Court finds that Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for all the conduct she seeks to dismiss except for her role in the alleged investigation and destruction of the gun that killed Ms. Hutchins.

### A. Defendant Carmack-Altwies is Entitled to Absolute Prosecutorial Immunity for Appointing Defendant Reeb as Special Prosecutor

First, Defendant Carmack-Altwies contends that she is entitled to absolute immunity for her decision to appoint Defendant Reeb as Special Prosecutor. ***Id.* at 11**. According to Defendant Carmack-Altwies, as district attorney of the FJDA, she properly exercised her statutory authority to appoint Defendant Reeb. ***Id***. Under NMSA 1978, Section 36-1-23.1 (1984) (emphasis added):

> Each district attorney may, *when he cannot prosecute a case for ethical reasons or other good cause*, appoint a practicing member of the bar of this state to act as special assistant district attorney. Any person so appointed shall have authority to act only in the specific case or matter for which the appointment was made. An appointment and oath shall be required of special assistant district attorneys in substantially the same form as that required for assistant district attorneys in Section 36-1-2 NMSA 1978.

---

[3] The parties do not contest that Defendant Carmack Altwies is entitled to absolute immunity for (1) her decision to criminally prosecute Plaintiff, (2) all her conduct related to filing the original and amended criminal informations except for the inclusion of the firearm enhancement charge, (3) her withdrawal from Plaintiff's criminal case and decision to appoint Defendant Morrissey as Special Prosecutor, (4) and her continued contribution of FJDA resources to assist Defendant Morrissey with Plaintiff's prosecution. ***See* Doc. 38 at 5–14** (agreeing with or failing to contest these arguments); **Doc. 42 at 2, 6, 8**.

She argues that because she exercised her authority "to assist [the State] with prosecutions," **Compl. ¶ 101**, it falls "within the ambit of absolute immunity," **Doc. 11 at 12** (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928–34 (9th Cir. 2012)).

Plaintiff disagrees, arguing that the phrase "cannot prosecute a case for ethical reasons or other good cause" does not authorize a district attorney to appoint a special prosecutor when she "merely fears that she cannot prosecute a case by herself." **Doc. 38 at 6**. Plaintiff argues that since Defendant Carmack-Altwies lacked authority under Section 36-1-23.1 to make the appointment, she is not entitled to absolute prosecutorial immunity for her decision. ***Id.***

Accordingly, the issues are (1) whether Defendant Carmack-Altwies acted beyond her authority under Section 36-1-23.1 by appointing Defendant Reeb as Special Prosecutor, and (2) whether a prosecutorial act exceeding the scope of state statutory authority falls outside the ambit of prosecutorial immunity. Defendant Carmack-Altwies had at least a "semblance of authority" to appoint Defendant Reeb under Section 36-1-23.1,[4] and the Court finds that she is entitled to absolute prosecutorial immunity for doing so. *Lerwill v. Joslin*, 712 F.2d 435, 439 (10th Cir. 1983).

The Tenth Circuit has never had the occasion to determine whether a prosecutor is entitled to absolute immunity for allegedly appointing a special prosecutor without authority to do so. However, in *Lerwill*, the Tenth Circuit determined that, like a judge engaging in a judicial act, a prosecutor carrying out a prosecutorial function is "deprived of immunity" when she "has acted in

[4] The Court need not determine whether NMSA 1978, Section 36-1-19(A) (1985) would have authorized Defendant Reeb's appointment. ***See* Doc. 38 at 8**. Moreover, NMSA 1978, Section 36-1-2 (1984) and NMSA 1978 Section 36-1-5 (1988), which Defendant raises only in her Reply, ***see* Doc. 42 at 5**, are inapposite here. They concern the appointment of regular assistant district attorneys, not special prosecutors. *See State v. Hollenbeck*, 1991-NMCA-060, ¶ 7, 814 p.2D 143 (distinguishing between special prosecutors who are appointed under Section 36-1-23.1 to prosecute a specific case and assistant DAs who prosecute multiple cases under Sections 36-1-2 and 35-1-5). The Complaint alleges she was appointed as "special prosecutor" under Section 36-1-23.1. **Compl. ¶¶ 101, 258(d)**.

the 'clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). Conversely, if a prosecutor has even a "semblance of authority" for her prosecutorial act, then she is entitled to absolute prosecutorial immunity. *Lerwill*, 712 F.3d at 439. In other words, a prosecutor is immune for prosecutorial acts "that were merely in 'excess of [her] jurisdiction.'" *Id.* (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351–52 (1871)) (applying this longstanding judicial immunity rule to a case involving a prosecutor). This rule comports with the policy undergirding prosecutorial immunity, allowing prosecutors to exercise their professional judgment in carrying out their public duties. *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987) ("[A] holding that a prosecutor is without absolute immunity the moment he strays beyond his jurisdictional limits, would do violence to its spirit."). And it is the test most applicable to the matter at hand.

First, appointing a special prosecutor is a prosecutorial act. *See Lacey*, 693 F.3d at 931 ("Decisions related to appointments and removals in a particular matter will generally fall within the exercise of the judge's or prosecutor's judicial and quasi-judicial roles and are shielded from suit by absolute immunity."). Since *Imbler*, the Supreme Court has recognized that initiating a prosecution is a core prosecutorial function. 424 U.S. at 431. And what else, if not a part of initiating a prosecution, is appointing a special prosecutor? This is especially clear here, where Defendant Carmack-Altwies appointed Defendant Reeb "to help assist with prosecutions," more than five months before the State announced its charging decision. **Compl. ¶¶ 101–04**; **114–16**. Indeed, it is so obvious that appointing a special prosecutor is a prosecutorial act that even Plaintiff does not appear to dispute it. ***See* Doc. 38 at 5–9**.

Next, Defendant Carmack-Altwies was acting with at least some semblance of authority when she hired Defendant Reeb pursuant to Section 36-1-23.1. The statute permits a district attorney to appoint a special prosecutor for "other good cause," Section 36-1-23.1 (1984), which

New Mexico courts have interpreted capaciously. *See e.g.*, *State v. Hollenbeck*, 1991-NMCA-060, ¶ 14, 814 P.2d 143 (explaining that good cause "need not be a legal or ethical reason," but instead could include such things as a "lack of resources" and "budgetary constraints").[5] The Complaint alleges that Defendant Carmack-Altwies appointed Defendant Reeb "to assist with prosecutions." **Compl. ¶ 101**. It is fair to infer that she earnestly believed she needed this assistance. ***See*** **Doc. 38 at 6** (suggesting Defendant Carmack-Altwies "fear[ed] she c[ould] not prosecute [the] case by herself"). To be sure, the Complaint also alleges that Defendant Carmack-Altwies conspired to appoint Defendant Reeb in order to further her political and personal agendas and professional ambitions. **Compl. ¶¶ 259–60**. But this does not foreclose the inference that Defendant Carmack-Altwies needed assistance and therefore had "other good cause" under the phrase's expansive definition. Moreover, even if Defendant Carmack-Altwies lacked good cause to appoint Defendant Reeb, she merely exceeded her authority rather than acting in the "clear absence of all jurisdiction." *See Lerwill*, 712 F.2d at 439 (quoting *Stump*, 435 U.S. at 357). No allegation in the Complaint supports the contention that Section 36-1-23.1 unequivocally prohibited her from appointing Defendant Reeb. And the Tenth Circuit requires the Court to construe prosecutorial authority broadly. *Lerwill*, 712 F.2d at 439. Therefore, the Court finds that the "other good cause" language in Section 36-1-23.1 provided Defendant Carmack-Altwies with at least a colorable statutory basis for appointing Defendant Reeb. *See Lerwill*, 712 F.2d at 439 ("Even if a prosecutor may lose his absolute immunity for prosecutorial acts for which he has no colorable claim of authority, it does not follow that he does so immediately upon crossing the technical bounds of the power conferred on him by local law.").

---

[5] Moreover, the New Mexico Attorney General has previously rejected strictly interpreting Section 36-1-23.1 to only cases where there is a conflict of interest or good cause. *See* N.M. Att'y Gen., No. 08-06 (Nov. 11, 2008).

Even if the *Lerwill* test were not appropriate for this issue, the weight of persuasive authority leads the Court to the same conclusion. The Ninth Circuit is apparently the only circuit court to have considered whether a prosecutor is entitled to absolute immunity for allegedly appointing a special prosecutor without authority to do so. In *Lacey*, a county attorney was sued for damages under § 1983 for appointing a special prosecutor to prosecute a case against a local newspaper. 693 F.3d at 928. The Ninth Circuit held that the county attorney was entitled to absolute prosecutorial immunity, reasoning that appointing a special prosecutor was a "prosecutorial function," which "'necessarily required legal knowledge and the exercise of related discretion.'" *Id.* at 931–32 (quoting *Van de Kamp*, 555 U.S. at 344). The court emphasized that the county attorney "acted as an advocate for the state by determining who would be its advocate in court," *id.* at 932, distinguishing the appointment from conduct that is not immunized; namely, "hiring and promoting deputy prosecutors," *id.* at 928. The Ninth Circuit established a "broad principle:"

> Decisions related to general conditions of employment—including decisions to hire, promote, transfer, and terminate—and which do not affect the prosecutor's role in any particular matter are generally not sufficiently related to the initiation and conduct of a prosecution in a court of law or their role as an advocate of the state to qualify for absolute immunity. Decisions related to appointments and removals in a particular matter will generally fall within the exercise of the judge's and prosecutor's judicial and quasi-judicial roles and are shielded from suit by absolute immunity.

*Id.* at 931–32. Pursuant to this broad principle, Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for her decision to appoint Defendant Reeb as Special Prosecutor.

Accordingly, whether it relies on *Lerwill* or *Lacey*, the Court finds that Defendant Carmack-Altwies is immune for this prosecutorial act.

### B. Defendant Carmack-Altwies is Entitled to Absolute Prosecutorial Immunity for Co-Prosecuting Plaintiff's Case with Defendant Reeb After Appointing Her as Special Prosecutor

Relatedly, the parties dispute whether Defendant Carmack-Altwies retained authority to prosecute Plaintiff's criminal case once Defendant Reeb was appointed Special Prosecutor. This inquiry serves as a gatekeeping function. If Defendant Carmack-Altwies clearly lacked authority to stay on as a co-prosecutor, then none of her conduct—whether prosecutorial or investigative—following Reeb's appointment is immunized. If instead she had authority, then she must still show that a post-appointment act was prosecutorial in order to be entitled to immunity for it. *See supra* Section II.A; *see generally Lerwill*, 712 F.2d 435.[6]

Defendant Carmack-Altwies avers that she had an arguable basis of authority since the appointment of Defendant Reeb "did not displace [her] from her constitutional office of district attorney." **Doc. 11 at 16**. According to Plaintiff, Defendant Carmack-Altwies "lacked constitutional and statutory authority to charge [Plaintiff] with any offense," yet she continued to prosecute Plaintiff in clear absence of jurisdiction, **Compl. ¶ 258(d)**; **Doc. 38 at 7–8**. He argues that Section 36-1-23.1, as interpreted by the New Mexico Supreme Court, requires the appointing district attorney to step aside and transfer "full power and authority" to the Special Prosecutor. ***Id.* at 6–7** (citing *State v. Surratt*, 2016-NMSC-004, ¶¶ 29–32, 363 P.3d 1204). Defendant "Carmack-Altwies lost jurisdiction to prosecute [Plaintiff] the moment she appointed [Defendant] Reeb under Section 36-1-23.1." **Doc. 38 at 7**. Yet she continued to prosecute the case for eight months until a judge challenged her ability to remain on the case alongside any prosecutor. **Compl. ¶ 136**; **Doc.**

[6] Although the Tenth Circuit in *Lerwill* does not explicitly call its test a threshold inquiry, it logically functions as one. Under *Imbler*, a prosecutor is immune for her prosecutorial acts. However, under *Lerwill*, even acts that are prosecutorial, like filing charges, are not immunized if the prosecutor engaged in them without any semblance of authority. Therefore, here, the *Lerwill* inquiry with respect to Defendant Carmack-Altwies' post-appointment conduct simply determines whether any of her conduct, even prosecutorial acts, is entitled to immunity.

**38 at 5–6**. Plaintiff argues further that even though a different statute, NMSA 1978, Section 36-1-19(A) (1985), would have permitted Defendant Carmack-Altwies to prosecute the case alongside Defendant Reeb, it required her to obtain a court order. **Doc. 38 at 7**. Yet, she failed to do that too. **Compl. ¶ 104**. Her failure to either step aside after appointing Defendant Reeb pursuant to Section 36-1-23.1 or obtain a court order pursuant to Section 36-1-19(A) resulted in a clear lack of jurisdiction. **Doc. 38 at 9** ("[H]aving bypassed the exclusively judicial means of validly appointing co-counsel from outside her own office, [Defendant] Carmack-Altwies has lost whatever claim she may have had to absolute prosecutorial immunity.").

Accordingly, the issue is whether Defendant Carmack-Altwies acted in clear absence of jurisdiction by continuing to prosecute Plaintiff alongside Defendant Reeb after appointing her Special Prosecutor. Because Defendant Carmack-Altwies had a semblance of authority throughout the eight months that she prosecuted Plaintiff alongside Defendant Reeb, she is entitled to absolute immunity for the prosecutorial acts she took as her co-prosecutor.

Under *Lerwill*, a prosecutor carrying out a prosecutorial function is "deprived of immunity" when she "has acted in the 'clear absence of all jurisdiction.'" 712 F.3d at 439 (quoting *Stump*, 435 at 357). But if she has even a "semblance of authority" for her prosecutorial act, then she is entitled to absolute prosecutorial immunity. *Lerwill*, 712 F.3d at 439. To start, unlike in the previous section, where a specific act (the appointment of Defendant Reeb) was at issue, here, no specific act is in question. Thus, the only issue is whether Section 36-1-23.1 provides Defendant Carmack-Altwies with a "colorable basis of authority." *See Lerwill*, 712 F.2d at 439. Since it does, she is entitled to prosecutorial immunity for her post-appointment prosecutorial acts.

The plain language of Section 36-1-23.1 only implies—but does not make explicit—that the appointing district attorney must step down upon appointing a special prosecutor. *See* Section

36-1-23.1. Therefore, the Court does not find that Defendant Carmack-Altwies acted in "clear absence of jurisdiction" by prosecuting Plaintiff alongside Defendant Reeb. The operative phrase in Section 36-1-23.1 is "when he cannot prosecute the case." At most, this phrase only suggests that a district attorney is prohibited from co-prosecuting a case with a special prosecutor. Absent an explicit prohibition, the Court will not find that Defendant Carmack-Altwies acted in clear absence of jurisdiction. Indeed, subjecting prosecutors to liability for *arguably* exceeding their power would frustrate *Lerwill*'s purpose to protect prosecutors for their technical faults. *See* 712 F.2d at 439.

This conclusion is supported by state statutes and case law delimiting and interpreting the scope of the district attorney's power. In New Mexico, "[t]he office of the district attorney is a constitutional office with duties prescribed and delimited by the Legislature." *Surratt*, 2016-NMSC-004, ¶ 13 (internal citations omitted). The Legislature has determined that each district attorney is bestowed with the broad power to prosecute "*all cases*, criminal and civil, in which the state or any county in his district may be a party or may be interested." NMSA 1978 Section 36-1-18(A)(1) (2001) (emphasis added). To be sure, the Legislature has placed several limits on this otherwise broad power. *See e.g.*, NMSA 1978 Section 36-1-9 (1955) (enumerating grounds for removal); NMSA 1978 Section 36-1-4 (1975) (prohibiting private practice); NMSA 1978 Section 36-1-2 (1984) (requiring certain procedures to appoint assistant district attorneys). But district attorneys are elected representatives with discretion to prosecute in the best interest of the people, so "courts must be wary not to infringe unnecessarily on the broad charging authority of district attorneys, and we will require clear evidence of an intent by the Legislature to limit prosecutorial discretion." *State v. Santillanes*, 2001-NMSC-018, ¶ 21, 27 P.3d 456. This Court heeds the advice

of New Mexico's Highest Court. It refuses to read a clear limitation of prosecutorial power into Section 36-1-23.1 where the Legislature has not written it.

This is why Plaintiff's argument that Defendant Carmack-Altwies "bypassed the exclusively judicial means of validly appointing co-counsel from outside her own office" fails. ***See* Doc. 38 at 9**. Although Plaintiff correctly points out that Section 36-1-19(A) requires a district attorney to obtain leave of court to appoint "associate counsel," this requirement does not change the fact that Section 36-1-23.1 does not clearly prohibit a District Attorney from co-prosecuting a case with her Special Prosecutor. Plaintiff's argument assumes that the Legislature meant to distinguish between "associate counsel" in Section 36-1-19(A) and "special prosecutor" in Section 36-1-23.1. Plaintiff is correct that there is a difference between these roles. *See United States v. Martinez*, 518 F.3d 763, 766–67 (10th Cir. 2008) (internal citation omitted) ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."). However, it does not necessarily follow that one such difference is that the district attorney may only co-prosecute a case with associate counsel, but not with a special prosecutor. And it is certainly not the case that this difference is so obvious that Defendant Carmack-Altwies' acted in clear absence of her jurisdiction when she co-prosecuted the case.

Finally, the Court does not take lightly the reasoning in *Suratt*, where the New Mexico Supreme Court held that a Special Prosecutor, herself appointed by the District Attorney, had the "sole discretion and authority" to appoint a replacement special prosecutor. 2016-NMSC-004, ¶ 30. In *Surratt*, the court said that once the District Attorney had disqualified herself, the Special Prosecutor had "the full duty, authority, and discretion to make decisions concerning [the case]," and quoted another state court to say that "[t]he appointment of a Special Prosecutor to replace a

District Attorney in a particular matter *terminates the latter's authority* with respect to any further proceedings in the case . . . ." *Id.* at ¶ 29 (emphasis added). However, this language arose from a very different context, where a district attorney recused herself for conflict reasons, abandoning any claim to jurisdiction for fear that continuing to co-prosecute the case would result in severe ethical violations. *Id.* at ¶ 2. By contrast, here, it is a fair inference that Defendant Carmack-Altwies appointed Defendant Reeb for other good cause. ***See*** **Compl. ¶¶ 101–04**; **Doc. 38 at 6** (suggesting Defendant "merely fear[ed] that she c[ould not] prosecute [the] case by herself." A few lines from a very different case do not support a finding that Defendant Carmack-Altwies acted in clear absence of jurisdiction by co-prosecuting the case with Defendant Reeb.

Accordingly, Defendant Carmack-Altwies is entitled to absolute immunity for her prosecutorial acts following the appointment of Defendant Reeb.

### C. Defendant Carmack Altwies is Entitled to Absolute Prosecutorial Immunity for Violating the *Ex Post Facto* Clause by Including a Firearm Enhancement Charge in the Original Criminal Information

With the threshold inquiry resolved, the Court turns to the parties' next dispute, whether Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for her role in the State's inclusion of a firearm enhancement in the original criminal information in violation of the U.S. Constitution's *Ex Post Facto* Clause. **Compl. ¶¶ 124, 129–33, 258(c)**; **Doc. 11 at 18–20**; **Doc. 38 at 9–11**. The Defendant correctly points out that the Complaint "does not specify that [Defendant] Carmack-Altwies was personally involved in [this] charging decision[]." **Doc. 11 at 18–19**. Nevertheless, making all reasonable inferences in favor of the Plaintiff, the Court assumes that she was responsible for this decision while co-prosecuting the case with Defendant Reeb and imputes Defendant Reeb's conduct onto her. ***See*** **Compl. ¶ 132–33** (alleging that both Defendants Carmack-Altwies and Reeb publicly derided Plaintiff's *Ex Post Facto* motion before Defendant

Reeb emailed Plaintiff "demanding that he withdraw the [motion] and threatened sanctions for its filing").

Defendant argues that she is entitled to immunity under *Imbler*'s broad protection for a prosecutor's charging decision—even if she knows her decision is unconstitutional. ***See* Doc. 42 at 7** (quoting *Lerwill*, 712 F.3d at 438) ("*Imbler* immunizes a prosecutor for filing charges that are beyond his authority in that they are unconstitutional. Moreover, since a prosecutor's immunity is absolute, it applies no matter how obvious it is to the prosecutor that he is acting unconstitutionally and thus beyond his authority."). Meanwhile, Plaintiff argues that Defendant fails the second part of the Tenth Circuit's test for whether a prosecutor is entitled to immunity for initiating a prosecution under the wrong statute:

> [A] prosecutor who initiates a prosecution under statutes that he is not authorized to invoke is immune from a section 1983 suit for damages when two conditions are satisfied: (1) the prosecutor is arguably empowered to prosecute the alleged conduct under some statute, and (2) the statute he incorrectly invokes also arguably applies to the criminal defendant's alleged conduct.

*Lerwill*, 712 F.3d at 440.

In other words, the issue raised by briefing is whether the firearm enhancement arguably applies to Plaintiff's conduct, even though it violated the *Ex Post Facto* Clause. The Court is not convinced that Plaintiff has identified the correct issue. For one, the Tenth Circuit in *Lerwill* "d[id] not mean to imply that a prosecutor who files charges under a statute beyond his jurisdiction is not immune when these conditions are not satisfied." 712 F.3d at 440 n.6. It "simply h[eld] that he is immune when they are satisfied." *Id.* More importantly, the *Lerwill* test is not applicable to the question whether a prosecutor is immune for an unconstitutional charging decision. *Lerwill* considered whether a city attorney was immune for initiating a prosecution under state statutes he was never authorized to invoke; that is, whether he was immune for prosecuting a case without

jurisdiction. 712 F.3d at 436. Here, there is no question that Defendant Carmack-Altwies had authority to charge the firearm enhancement. NMSA Section 31-18-16. As a state district attorney, it was plainly within her jurisdiction to invoke it. *Id*. Rather, the question is whether Defendant Carmack-Altwies is entitled to immunity for charging Plaintiff under a statute she had the general authority to invoke when it was plainly unconstitutional to apply it to Plaintiff's case. This is not a question the *Lerwill* test can answer.

Instead, whether Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for her unconstitutional charging decision is answered with a straightforward application of *Imbler* and its progeny. Because "prosecutors enjoy absolute civil immunity from damages for the unconstitutional actions taken in their prosecutorial role," Defendant Carmack-Altwies is immune for violating the *Ex Post Facto* Clause by including the firearm enhancement. *Conley v. United States*, 5 F.4th 781, 793 (7th Cir. 2021) (citing Imbler, 424 U.S. at 427).

The Tenth Circuit has repeatedly underscored that prosecutors are entitled to absolute prosecutorial immunity for the "preparation and initiation of charges." *Mink*, 482 F.3d at 1261 (citing *Pfieffer*, 929 F.2d at 1489–90); *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007) ("A prosecutor's charging decisions are absolutely immune from civil suit for monetary damages."). This immunity applies even when the charging decision is unconstitutional. *See Warnick*, 895 F.3d at 752 (granting absolute immunity to a prosecutor who indicted the plaintiff without probable cause). Here, Defendant Carmack-Altwies prepared and initiated an unconstitutional firearm enhancement charge. Just like the prosecutors in *Warnick* were protected for their unconstitutional indictment, she is protected for her unconstitutional charging decision. *See id.*

Accordingly, Defendant Carmack-Altwies is entitled to prosecutorial immunity for violating the *Ex Post Facto* Clause by charging the firearm enhancement.

### D. Defendant Carmack Altwies is Not Liable for Other Prosecutors' Failure to Disclose Exculpatory Evidence; However, She is Not Entitled to Absolute Prosecutorial Immunity for Her Role in the Investigation and Destruction of the Gun

Finally, Defendant Carmack-Altwies argues that she is entitled to absolute prosecutorial immunity for allegedly failing to disclose and make available for Plaintiff's inspection known exculpatory evidence. **Doc. 11 at 22**; ***see*** **Compl. ¶ 258(h)**. She argues this conduct is entitled to immunity under *Imbler*, which "extends absolute immunity to claims that a prosecutor willfully suppressed evidence." **Doc. 11 at 22** (citing *Imbler*, 424 U.S. at 431 n.34). Plaintiff responds by arguing that this "bland" framing obscures three specific transgressions that are not immunized absolutely. **Doc. 38 at 11**. (1) Violating explicit court orders to produce exculpatory evidence; (2) causing grand jury witnesses to give false and misleading testimony; and (3) failing to stop the FBI from destroying the gun during its investigation into how it was discharged. **Doc. 38 at 12–14**; **Compl. ¶¶ 87–91, 166–67, 170, 197–98, 202, 205, 258**. With respect to the last issue specifically, Plaintiff alleges that despite knowing that the "required testing w[ould] alter the firearm and it w[ould] no longer be in the same physical condition that it was seized in," Defendant Carmack-Altwies failed to ask the FBI lab to "document the internal components of the firearm before performing the destructive testing." **Compl. ¶¶ 90–91**.

Accordingly, the issue is whether Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for each of these three instances of conduct. The Court finds that she was not involved in the first two instances of conduct and therefore does not even need to rely on the protection of prosecutorial immunity. However, to the extent that she played a role in investigating why the gun discharged and in destroying the gun, the Court finds that she is not entitled to absolute prosecutorial immunity.

1. The Complaint Fails to Allege that Defendant Carmack-Altwies Violated the Court Orders and Elicited False Testimony from Grand Jury Witnesses

The Court can dispatch the first two instances of conduct, for the Complaint does not sufficiently allege that Defendant Carmack-Altwies was still part of the prosecution when the conduct in question occurred. The Complaint alleges that Defendant Carmack-Altwies withdrew from the case on March 29, 2023. **Compl ¶ 136**. Yet the Complaint alleges that the court orders that individual State Defendants allegedly violated were issued on January 11 and February 26, 2024. **Compl. ¶¶ 166, 205**. And that the fabrication of evidence before the grand jury occurred in January 2024. **Compl. ¶¶ 166–67, 202**. According to the Complaint, Defendant Carmack-Altwies was no longer part of the case when each of these transgressions occurred. Therefore, Plaintiff does not sufficiently allege that she is liable for violating court orders to produce exculpatory evidence, nor for eliciting false testimony from grand jury witnesses. The issue of immunity need not be reached.

2. To the Extent that Defendant Carmack-Altwies Participated in the Investigation and Destruction of the Gun, She is Not Entitled to Absolute Prosecutorial Immunity[7]

When assessing prosecutorial immunity claims under § 1983, the Tenth Circuit applies a "continuum based" approach and "look[s] to which role the prosecutor is performing—advocate or investigator." *Mink*, 482 F.3d at 1262. *See generally supra* Section I. In cases involving pre-indictment acts by prosecutors, the Tenth Circuit determines whether the prosecutors played the

[7] It is unclear whether Defendant Carmack-Altwies even raised this issue. Her Motion disclaims that she seeks to dismiss Plaintiff's allegations based on "her alleged involvement with law enforcement's investigation of the shooting." **Doc. 11 at 4**. However, in her Reply, Defendant argues that she is entitled to immunity for "the destruction of evidence, to wit: sending the gun for testing." **Doc. 42 at 11** (internal citations omitted). This suggests that she thinks decisions that led to the gun's testing and destruction are not embraced by "law enforcement's investigation of the shooting" and that therefore she is entitled to immunity for claims based on those decisions. Out of precaution, the Court assumes Defendant believes that she is entitled to immunity for her role in the gun's testing and destruction and addresses whether she is in this section.

role of advocate or investigator by considering such factors as whether the action (1) "is closely associated with the judicial process, (2) is a uniquely prosecutorial function, and (3) requires the exercise of professional judgment." *Mink*, 482 F.3d at 1261 (citation modified). If, on balance, these factors demonstrate that the prosecutor performed a prosecutorial function, then she is entitled to immunity for her conduct. On the other hand, "when a prosecutor conducts investigative work normally performed by the police," absolute prosecutorial immunity does not come to her rescue. *Chilcoat*, 41 F.4th at 1209 (citing *Buckley*, 509 U.S. at 273–74).

The Complaint alleges that Defendant Carmack-Altwies was involved with investigating and destroying the gun in April 2022. **Compl. ¶¶ 87–91**. Since she and Defendant Reeb did not bring charges against Plaintiff until January 2023, **Compl. ¶¶ 115–16**, the Court applies the *Mink* factors for pre-indictment conduct. Taken together, these factors lead the Court to conclude that Defendant Carmack-Altwies' involvement was more like investigative work normally performed by the police than advocacy on behalf of the state.

First, the action is not closely associated with the judicial process. Its purpose was not to support the initiation of criminal charges, but to "conduct a more thorough investigation," *Buckley*, 509 U.S. at 275, and assess the veracity of Plaintiff's claim "that he did not pull the trigger." **Compl. ¶ 89**. It occurred six months after the initial incident, and nearly nine months before charges against Plaintiff were filed. **Compl. ¶¶ 46, 90, 124**. These decisions took place well before it was clear with what crime Plaintiff would be charged. Although, even at this early stage, Defendant Carmack-Altwies likely had probable cause to charge Plaintiff with some crime,[8] the kind of charge that she could have brought varied widely depending on whether she believed the

[8] As previously mentioned, the Complaint alleges that Plaintiff (1) did not check the gun, (2) held it in Hutchins' direction, and (3) cocked it before it discharged. **Compl. ¶¶ 50–55**. This supports an inference that prosecutors had probable cause to charge Plaintiff with a crime.

gun discharged on its own. Therefore, it was part of an initial investigation, not the initiation of criminal charges.

Second, decisions about whether to send the gun to the FBI for testing, what kind of test to perform, and whether to document the gun's condition before testing are clearly not uniquely prosecutorial functions. Indeed, the Complaint alleges that "the SFSO asked the FBI to test the prop gun." **Compl. ¶ 89**. And that the SFSO, not Defendant Carmack-Altwies, was principally tasked with communicating with the FBI throughout testing. **Compl. ¶¶ 89–93**. To be sure, the SFSO's apparently more extensive involvement may very well be reason to ultimately conclude that Defendant Carmack-Altwies is not liable for the investigation and destruction of the gun. But at this stage of litigation, when immunity rather than the merits is at issue, this factor weighs heavily against Defendant Carmack-Altwies.

Third, failing to ask the FBI to document the internal components of the firearm before performing potentially destructive testing does not require an advocate's professional judgment, but rather the judgment of an investigator. Of course, a prosecutor exercises some professional judgment anytime she reviews evidence and determines its value to a case. *Mink*, 482 F.3d at 1262. But under the Supreme Court's functional approach, the question is whether a particular evaluation and decision about what to do with evidence is the kind performed by an advocate or an investigator. *Id*. Decisions about how to properly conduct an investigation and how to preserve evidence fall within an investigator's purview. Therefore, like the first two, the third factor weighs against Defendant Carmack-Altwies.

Finally, the Supreme Court's decision in *Buckley* lends support to the Court's decision. Defendant Carmack-Altwies' conduct is like that of prosecutors in *Buckley*, where the Supreme Court held that they were not entitled to absolute immunity for "their fabrication of false evidence

during the preliminary investigation of an unsolved crime." 509 U.S. at 275. In *Buckley*, the fabricated evidence was obtained "during the early stages of the investigation, which was being conducted under the joint supervision and direction of the sheriff and [prosecutors]." *Buckley*, 509 U.S. at 262. At the time of the misconduct, prosecutors "were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot." *Id.* at 274. The Supreme Court was especially persuaded by prosecutors' lack of probable cause, which helped show that the case was still in the investigative phase. *Id.* at 274.

Here, the gun was sent to testing only six months after the incident, when Defendant Carmack-Altwies and her office were still trying to determine whether Plaintiff's claim that the gun "just went off" could be true. **Compl. ¶¶ 46, 88, 90**. As just mentioned, because the Complaint alleges that Plaintiff was holding the gun as it discharged, its possible Defendant Carmack-Altwies already had probable cause to believe that Plaintiff had committed some crime when the gun was sent away for testing. But the existence, or lack thereof, of probable cause is not determinative of whether a prosecutor is engaging in advocacy or investigation. *Warnick*, 895 F.3d at 752. What's more important is that the purpose of Defendant Carmack-Altwies' investigation into the gun was like the *Buckley* prosecutors' purpose for investigating the bootprint—to understand, soon after the incident, what role the suspect played in the incident.

The similarities between the cases do not stop there. The discharge investigation was a joint effort between the SFSO and Defendant Carmack-Altwies' office. Although the SFSO spearheaded communications with the FBI, the Complaint alleges that certain decisions—like the failure to ask the FBI to document the gun's components before testing—were made by both offices. **Compl. ¶ 91**. If anything, the Complaint's allegations suggest that the police played a bigger role in the investigation of the gun in Plaintiff's case than in the fabrication of evidence in *Buckley*. This

demonstrates that the alleged conduct here was even more investigative in nature than in *Buckley*. **Compl. ¶¶ 88–97**.

In her Reply, Defendant Carmack-Altwies avers that in the Tenth Circuit a prosecutor is entitled to absolute prosecutorial immunity for destroying exculpatory evidence. **Doc. 42 at 11** (citing *Gradle v. Oklahoma*, 203 F.App'x 179, 182–83 (10th Cir. 2006)). However, *Gradle*'s rule is cabined to when a prosecutor "initiat[es] a prosecution and present[s] the State's case." *Id.* (quoting *Imbler*, 424 U.S. at 430). The rule from *Gradle*, an unpublished opinion, is not triggered unless it is established that the prosecutor's conduct was prosecutorial and not investigative or administrative. Here, where Defendant Carmack-Altwies allegedly "perform[ed] the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect [her] but not the [police].'" *Buckley*, 509 U.S. at 273 (quoting *Hampton*, 484 F.2d at 608). On the continuum between advocacy and investigation, Defendant Carmack-Altwies' involvement in the alleged investigation and destruction of the gun was too far removed from the judicial process to entitle her to absolute prosecutorial immunity.

### E. Defendant Carmack-Altwies is Entitled to Absolute Prosecutorial Immunity for Each of the Undisputed Issues

The Court will briefly address each of the following undisputed arguments in turn. For the reasons below, the Court dismisses the claims based on the following allegations.

#### 1. Defendant Carmack-Altwies is Immune for Criminally Prosecuting Plaintiff

A prosecutor enjoys absolute immunity for "the decision to prosecute." *Hartman v. Moore*, 547 U.S. 250, 262 (2006) (citing *Imbler*, 424 U.S. at 431); *see also Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (explaining prosecutors enjoy absolute immunity "from liability for

decisions to initiate and prosecute cases"). Accordingly, Defendant Carmack-Altwies is entitled to absolute prosecutorial immunity for her decision to prosecute Plaintiff.

2. Defendant Carmack-Altwies is Immune for Filing the Original and Amended Criminal Informations

"A prosecutor's charging decisions are absolutely immune from civil suit for monetary damages." *Becker*, 494 F.3d at 925 (internal citations omitted). Accordingly, and for the same reasons that Defendant Carmack-Altwies is entitled to immunity for her unconstitutional inclusion of the firearm enhancement, *see supra* Section II.C, she is also immune for the rest of her conduct regarding the filing of the original and amended criminal informations.

3. Defendant Carmack-Altwies is Immune for Withdrawing from Plaintiff's Case

A prosecutor is immune for her decision to prosecute a case, *Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir. 1988), to not prosecute, *Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir. 1982), and for her "decision whether and when to dismiss charges." *Joseph v. Yocum*, 53 Fed. Appx 1, 2 (10th Cir. 2002) (citing *Imbler*, 424 U.S. at 430 and *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1268 (8th Cir. 1996)). It follows therefore that she is also entitled to absolute immunity for her decision to withdraw or recuse herself from a case. Accordingly, Defendant Carmack-Altwies is absolutely immune for her decision to do so.

4. Defendant Carmack-Altwies is Immune for Appointing Defendant Morrissey as Special Prosecutor

The Court incorporates its opinion from Section II.A to find that Defendant Carmack-Altwies is entitled to absolute immunity for her decision to appoint Defendant Morrissey, just like she is entitled to immunity for appointing Defendant Reeb as Special Prosecutor.

5. Defendant Carmack-Altwies is Immune for Contributing FJDA Resources to Assist Defendant Morrissey with Plaintiff's Prosecution

The immunity afforded a prosecutor for her decision to prosecute a case must necessarily involve decisions about how many resources and staff to allocate to it. Therefore, Defendant Carmack-Altwies is entitled to absolute immunity for her continued contribution of FJDA resources to Defendant Morrissey's prosecution of Plaintiff.

Accordingly, Defendant Carmack-Altwies is entitled to prosecutorial immunity in part under § 1983 for the conduct outlined in State Defendants' Motion to Dismiss IV. Since the parties agree that the scope of absolute prosecutorial immunity under the NMCRA is identical to the scope of immunity under § 1983, the Court finds that the FJDA is also entitled to absolute immunity for this conduct under the NMCRA. State Defendants' Motion to Dismiss IV is granted in part and denied in part.

**III. Motion to Dismiss V is Granted in Part and Denied in Part. Defendants Reeb and FJDA are Entitled to Absolute Prosecutorial Immunity Under § 1983 and the NMCRA Only for Their Prosecutorial Acts Which are Clear from the Face of the Complaint**

In State Defendants' fifth Motion, Defendants Carmack-Altwies and FJDA argue that Plaintiff's § 1983 and NMCRA claims should be dismissed in part because the alleged conduct falls within their absolute prosecutorial immunity.

This Motion seeks to dismiss Plaintiff's claims "only to the extent they are based on [Defendant] Reeb's actions in her role as an advocate for the State related to the initiation and pursuit of the criminal charges against [Plaintiff]." **Defs.' Mot. Dism. V, Doc. 12 at 3**. Specifically, Defendant Reeb contends against Plaintiff's disagreement that she is entitled to absolute prosecutorial immunity for (1) reviewing SFSO reports, interviewing witnesses, taking proffers and hiring experts and (2) including the firearm enhancement charge in the original criminal information in violation of the *Ex Post Facto* Clause. **Doc. 12 at 9, 15**; **Pl.'s Resp. Mot. Dism. V,**

**Doc. 39 at 2 n.1**. The parties also dispute whether Defendant Reeb lacked authority to prosecute for two reasons: (1) her allegedly defective role as Defendant Carmack-Altwies' co-prosecutor and (2) her dual roles as Special Prosecutor and State Legislator. **Doc. 12 at 6**; **Doc. 39 at 2 n.1**. Just as the question whether Defendant Carmack-Altwies' lacked authority to prosecute Plaintiff is a preliminary inquiry in Motion to Dismiss IV, each of these are preliminary issues that determine whether Defendant Reeb is even eligible for immunity for reviewing the SFSO reports, etc. and including the firearm enhancement charge. The Court considers them first.

Unlike in the previous Motions, Plaintiff does not appear to concede to the dismissal of any allegations that Defendant Reeb seeks to dismiss. Furthermore, Defendant Reeb does not seek to dismiss Plaintiff's "claims to the extent they are based on [her] alleged statements to the media or role in SFSO's investigation." **Doc. 12 at 3**. Accordingly, any claims based on this conduct proceed to the next stage of litigation.

For the reasons below, the Court finds that Defendant Reeb is entitled to absolute prosecutorial immunity for most of the conduct she seeks to dismiss.

### A. Defendant Reeb Had a Colorable Claim of Authority to Co-Prosecute Plaintiff's Case Alongside Defendant Carmack-Altwies

The parties first dispute whether Defendant Reeb ever had authority to co-prosecute Plaintiff's case with Defendant Carmack-Altwies following her appointment in August 2022. Plaintiff argues that Section 36-1-23.1 does not give a special prosecutor the authority to co-prosecute the case with counsel who appointed her. **Compl. ¶** 258(d). Defendant avers that Section 36-1-23.1 gives Defendant Reeb at least a colorable claim of authority to co-prosecute the case. **Doc. 12 at 9 n.3**. This dispute plays the same gatekeeping function as the dispute over Defendant Carmack-Altwies' authority. *See supra* Section II.B. If Defendant Reeb clearly lacked authority to prosecute the case due to Defendant Carmack-Altwies' continuing to prosecute the case alongside

her, then she is not entitled to immunity for any of her post-appointment conduct—whether prosecutorial or investigative. If instead she had at least a semblance of authority, then she must still show that a post-appointment act was prosecutorial to enjoy immunity for it. *See generally supra* Section II.B.

Defendant Reeb's arguments mirror those made by Defendant Carmack-Altwies and Plaintiff's Response explicitly incorporates his Response to Defendant Carmack-Altwies' Motion. ***Compare* Doc. 11 at 11–12 *with* Doc. 12 at 2 n.1**. Therefore, the Court finds that, for the same reasons that Defendant Carmack-Altwies had at least a semblance of authority while co-prosecuting the case, Defendant Reeb also had at least a semblance of authority. *See supra* Section II.B. Section 36-1-23.1 does not explicitly prohibit a special prosecutor from co-prosecuting the case with another attorney, let alone the attorney who appointed her. And New Mexico's Supreme Court has warned courts to "be wary not to infringe unnecessarily on the broad charging authority of district attorneys," encouraging them to "require clear evidence of an intent by the Legislature to limit prosecutorial discretion." *Santillanes*, 2001-NMSC-018, ¶ 21. This Court takes this admonishment seriously and refuses to read a clear limitation of prosecutorial power into Section 36-1-23.1 where the Legislature did not write it.

Accordingly, Defendant Reeb is entitled to her prosecutorial acts following her appointment.

### B. Defendant Reeb Had a Colorable Claim of Authority to Serve as Special Prosecutor While Also Serving as State Legislator

The Court's second threshold inquiry arises from the parties' dispute over whether Defendant Reeb had the authority to prosecute Plaintiff's case after she took office as a New

Mexico State Legislator on January 1, 2023.[9] Plaintiff argues that Defendant Reeb's simultaneous service in these two roles violated Article III, Section 1 of the New Mexico Constitution, which provides in pertinent part:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person . . . charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

N.M. Const. Art. III, § 1. Plaintiff argues further that this constitutional prohibition on the simultaneous exercise of legislative and executive powers means that Defendant Reeb lacked authority to prosecute Plaintiff once she assumed her legislative office. **Doc. 39 at 6–9**. Defendant Reeb responds that her simultaneous service as Special Prosecutor and State Legislator comports with the separation of powers provision, relying heavily on a 2024 opinion from the New Mexico Attorney General arguing as much. **Doc. 12 at 17–29**; NMAG Op. No. 2024-04, 2024 WL 2288369. But even if this did technically violate New Mexico's constitution, she argues, she at least had a colorable claim of authority to prosecute Plaintiff's case while serving in the legislator and therefore is entitled to absolute prosecutorial immunity under *Lerwill*. **Doc. 12 at 21–23**.

Accordingly, the Court considers this issue in two steps: (1) whether Defendant Reeb violated the state constitution's separation of powers provision; and (2) whether her violation resulted in the clear absence of authority under *Lerwill*.

---

[9] The Court takes judicial notice of the date that Defendant Reeb took office. This fact is absent from the Complaint, which states only that Defendant Reeb "had won her election and had assumed elected office." **Compl. ¶ 135**.

1. Defendant Reeb Violated the New Mexico Constitution's Separation of Powers Provision by Simultaneously Serving as Special Prosecutor and State Legislator

"Article III, Section 1 ensures that 'one branch of state government' will not 'exercise powers and duties belonging to another.'" *State ex rel. Stratton v. Roswell Indep. Sch. Dist.*, 1991-NMCA-013, ¶ 30, 806 P.2d 1085 (quoting *State ex rel. State Corp. Comm'n v. McCulloch*, 1957-NMSC-096, ¶ 4, 321 P.2d 207). It "applies to public officers, not employees," simultaneously serving in two distinct branches of government. *Stratton*, 1991-NMCA-013, ¶ 35, 111 N.M. 495.

A state legislator is a public officer exercising the sovereign power of the legislative branch. *See State ex rel. Taylor v. Johnson*, 1998-NMSC-015, ¶ 21, 961 P.2d 768; NMAG Op. No. 2024-04, 2024 WL 2288369, at *2. A special prosecutor, like the district attorney who appoints her, occupies a "quasi-judicial" role. *State v. Gonzalez*, 2005-NMSC-025, ¶ 35, 119 P.3d 151 ("[I]n New Mexico prosecutors are viewed as quasi-judicial officers."); *State v. Robinson*, 2008-NMCA-036, ¶ 16, 179 P.3d 1254. She also exercises the power to prosecute, traditionally viewed as a core executive power. *See, e.g.*, *Morrison v. Olson*, 487 U.S. 654, 685–693 (1988); *United States v. Texas*, 599 U.S. 670, 678–79 (2023). Whether a special prosecutor is considered part of the executive or judicial branch, she is not a member of the legislative branch.

Therefore, the Court's inquiry boils down to the question whether a special prosecutor in New Mexico is a public officer. The Court finds that a special prosecutor in New Mexico is invested with the sovereign power of state government, and so Defendant Reeb simultaneously held two public offices in distinct branches of government in violation of Article III, Section 1.

Whether a special prosecutor is a public officer depends on whether her office (1) is created by the state Constitution or through legislative act; (2) is invested with the sovereign power of government to be exercised for the public's benefit; (3) has some permanence and continuity, and is not only temporary or occasional; (4) derives its powers from legislative authority; and (5)

performs its duties independently and without control of a superior power, unless it be an inferior or subordinate office, authorized by the legislature and placed under the control of a superior office. *State v. Quinn*, 1930-NMSC-065, ¶ 5, 290 P. 786. An officer must also (6) "take and file an official oath." *State ex rel. Gibson v. Fernandez*, 1936-NMSC-027, ¶ 10, 58 P.2d 1197. These factors need not all be present to conclude that a person is a public officer. *Quinn*, 1930-NMSC-065, ¶ 6. Whether her office is "invested with sovereign power" is the most important factor. *Stratton*, 1991-NMCA-013, ¶ 30 (citing *Fernandez*, 1936-NMSC-027, ¶ 10–13); *see also* NMAG Op. No. 2024-04, 2024 WL 2288369, at *4–6 (focusing its public officer analysis on the sovereign power factor).

A special prosecutor's office satisfies all but one of the factors. It is created through legislative act and derives its power from legislative authority, Section 36-1-23.1; it is an inferior office "subject to review and control by the appointing authority, the district attorney," *Hollenbeck*, 1991-NMCA, ¶ 14; a special prosecutor takes the same oath as the district attorney, Section 36-1-23.1; Section 36-1-2; Section 36-1-1; N.M. Const. Art. XX, § 1, who is a public officer, *Ward*, 1912-NMSC-011 ¶ 22 ("Under our Constitution, the district attorney . . . is a quasi-judicial officer."); and although a special prosecutor's office is temporary, existing only as long as the case for which it was created, *see* Section 36-1-23.1, it involves the exercise of the state's sovereign power, the most important factor.

Both the Attorney General's opinion and Defendant Reeb's Reply rely on the temporary nature of the role to conclude that a special prosecutor is not a public officer. *See* NMAG Op. No. 2024-04, 2024 WL 2288369, at *5–6 (arguing that since a special prosecutor's power is only temporary or occasional, "a legislator's appointment to such a role does not unduly encroach upon or interfere with the authority of the [other] branches"); **Pl.'s Reply Mot. Dism. V, Doc. 43 at 8–**

**9 n.4** (arguing that because Defendant "Reeb's role was temporary and remained under the control of the district attorney," she "was simply a contractor whose specialized knowledge and services were employed to help the district attorney carry out her own governmental powers and duties"). Considering the temporal factor is not wrong. In *Fernandez*, the New Mexico Supreme Court held that a "special tax attorney" who was "employed the state tax commission at its option" for the limited and temporary purpose of "carrying out the powers and duties conferred [on the commission] in the matter of the collection of delinquent taxes" was not a public officer. 1936-NMSC-027, ¶ 14. The court relied in part on the fact that "[t]he position itself has no permanency or continuity, in the sense that the law requires that it be occupied; but its occupancy at all, its occupant, and his salary . . . depend upon the will of the state tax commission." *Id. at* ¶ 15. However, it is a mistake to emphasize this factor at the risk of reducing the import of sovereign power. *Fernandez*'s few lines about temporality are made within a broader discussion about the special tax attorney's lack of sovereign power. *Fernandez* emphasizes that the special tax attorney "can perform no act in connection with the collection of taxes except by the authority or consent of the [commission]." *Id. at* ¶ 14. "He can file no suit, nor can he dismiss one without the consent or direction . . . of the [commission], which conducts and controls all proceedings in behalf of the state." *Id.* "[H]e has definite duties fixed by law," which are limited "so that he cannot exercise all the powers given . . . to attorneys generally." *Id.* Ultimately, *Fernandez*'s conclusion rests almost entirely on the special tax attorney's lack of sovereign power.

Meanwhile, a special prosecutor "step[s] into the shoes" of the district attorney and exercises "the same power and authority" as the district attorney with respect to the case for which she was appointed. *Surratt*, 2016-NMSC-004, ¶ 30. She is given all the powers and duties of the district attorney. *Surratt*, 2016-NMSC-004, ¶ 26. The special prosecutor may file and dismiss

charges. She controls key aspects off the prosecution, "including determination about whom and whether to prosecute." *Surratt*, 2016-NMSC-004, ¶ 26. She may delegate duties of the district attorney's office to assistant district attorneys acting under her supervision. *State v. Cherryhomes*, 1996-NMSC-072, ¶ 11, 930 P.2d 1139. She even has the power to appoint a replacement special prosecutor. *Surratt*, 2016-NMSC-004, ¶ 30.[10]

To be sure, a special prosecutor does not displace the district attorney from her constitutional office, *Surratt*, 2016-NMSC-004, ¶ 30 (quoting *Weems v. Anderson*, 516 S.W. 2d 895, 901 (Ark. 1974)). Like a special tax attorney, a special prosecutor serves at the pleasure of the district attorney who appointed her. And the power of her office is "carefully circumscribed" to "the case or matter" for which she was appointed. NMAG Op. No. 2024-04, 2024 WL 2288369, at *5.

But these are limitations on her tenure, not her power. While appointed, a special prosecutor is trusted with the awesome responsibility of advocating that an individual be deprived of his liberty. To this end she may employ the full machinery of the state, which includes executing search warrants, issuing subpoenas, and entering plea bargains. New Mexico has not made these tools available to her by accident. They are at her disposal so that she may wield the sovereign power of the State.

The status of a special prosecutor as a public officer in New Mexico corresponds to our nation's historical understanding of the term officer, as well as the status of special prosecutors across other federal and state jurisdictions. Historically, a federal "officer" was understood to have

[10] The awesome sovereign power bestowed upon a special prosecutor distinguishes this case not only from *Fernandez*, but also from *Roswell Independent Schools*, where the court held that a public-school teacher is a public employee rather than a public officer. 1991-NMCA-013, ¶¶ 35. A schoolteacher simply does not wield the sovereign power of the government like a special prosecutor.

"ongoing duties," or a continuous office. Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 STAN. L. REV. 443, 534 (2018). However, "one did not necessarily need to be continuously employed . . . to qualify as an officer." *Id.* "[S]ome duties involve such a significant exercise of governmental power that performing them would merit officer status even [if] the position were not ongoing." *Id.* at 535.

Consistent with this tradition, federal courts have held that "a temporary position can be an office." *United States v. Donziger*, 38 F.4th 290, 296 (2nd Cir. 2022); *see also Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 37–38 (holding that an arbitrator appointed only for the limited purpose of resolving a dispute between Amtrak and the Federal Railway Administration is an officer). They have also held that special prosecutors are officers. *See Donziger*, 38 F.4th at 296 (holding that special prosecutors are officers under the Appointments Clause); *Morrison*, 487 U.S. at 664, 671 n.12. (determining that an independent counsel is an officer, even though the position terminates when the counsel has "substantially completed any investigations or prosecutions undertaken pursuant to the [Ethics in Government] Act"). Several states have held the same under their respective laws. *See Jenkins & Kling, P.C. v. Missouri Ethics Comm'n*, 945 S.W.2d 56, 59 (Mo. App. 1997) ("A person who is appointed special prosecutor becomes for that purpose a public officer."); *Bagnell v. State*, 413 N.E. 2d 1072, 1074 (Ind. App. 1980) (explaining that special prosecutors and judges are "public officials"); *Glavino v. People*, 224 P. 225, 226 (Colo. 1924) (taking for granted that special prosecutors are public officers in the process of concluding that an unconstitutionally appointed special prosecutor was nevertheless an "officer de facto").[11]

---

[11] Texas is one state where "special prosecutors" are not public officers. This does not cut against the Court's reasoning. The powers of "special prosecutors" in Texas differ significantly from those of special prosecutors in New Mexico. Unlike in New Mexico, in Texas, special prosecutors do not take an oath of office, and the appointed district attorney retains full control and authority over

Considering New Mexico's constitution, statues, and case law together, within the context of our nation's understanding of the role of special prosecutors, this Court finds that Defendant Reeb violated Article III, Section I when she simultaneously exercised the sovereign power of two distinct branches of New Mexico state government by holding two public offices.

2. Even Though She Violated the Separation of Powers Provision, Defendant Reeb had a Colorable Claim of Authority to Serve as Special Prosecutor While Serving as State Legislator

Having established that Defendant Reeb violated Article III, Section 1, the issue now is whether she had a colorable claim of authority to prosecute Plaintiff's case. *Lerwill*, 712 F.2d at 438–40; *see supra* Sections II.A, B. Because she had a colorable basis of authority under Section 36-1-23.1, the statute under which she was properly appointed, she is entitled to immunity for the prosecutorial acts that she took following after assuming legislative office.

"While a prosecutor might lose absolute immunity when [s]he acts with a complete and clear absence of authority, such a condition does not occur when a prosecutor has an arguable basis of authority grounded in statute." *Lerwill*, 712 F.2d at 440; *see also Anilao v. Spota*, 27 F.4th 855, 865 (2nd Cir. 2022) (internal citations omitted) ("Prosecutors thus have absolute immunity in a § 1983 action even if it turns out that state law did not empower them to bring charges so long as they have at least a semblance of jurisdiction . . ."). Defendant Reeb was properly appointed under Section 36-1-23.1, when Defendant Carmack-Altwies brought her onto the case as a "[S]pecial [P]rosecutor." **Compl. ¶¶ 101, 104, 258(d)**; *see supra* Section II.A. She had authority to prosecute the case before she assumed legislative office, and this authority was grounded in her valid appointment pursuant to Section 36-1-23.1. Upon assuming office, she did not suddenly lose all colorable claims under the statute, which by its plain language authorizes "a practicing member of

---

all prosecutorial decisions. *See Hartsfield v. State*, 200 S.W. 3d 813, 816–17 (Tx. App. 2006). The roles are similar in name alone—the Court looks at the function of the office.

the bar to act as special district attorney," without limitation. *See Surratt*, 2016-NMSC-004, ¶ 22 ("[Section 36-1-23.1] places no other constraints on a special prosecutor's authority to act in a given case provided an appointment is made and an oath taken."). Although, today, the Court finds that a special prosecutor in New Mexico is a public officer and that therefore a constitutional separation of powers violation occurred when Defendant Reeb simultaneously served in two branches of government, it was not clear at the time that a special prosecutor in New Mexico is a public officer. Therefore, upon assuming legislative office, Defendant Reeb—whose position as special prosecutor arguably fell outside the scope of Article III, Section 1's prohibition—could at least arguably continue to locate authority to prosecute Plaintiff's case in Section 36-1-23.1.

Several additional reasons support the finding of a colorable claim of authority. A declaration that Defendant Reeb acted outside her jurisdiction requires the Court to conclude that her role as prosecutor was voided when she assumed office in the state legislature. But no New Mexico state court case nor statute establishes that Defendant Reeb's election voided her role as prosecutor. In fact, New Mexico cases dealing with a violation of the separation of powers provision have remedied such violations with writs of mandamus and civil contempt orders, not declarations that officers' acts are void. In *State ex rel. Taylor*, for example, the New Mexico Supreme Court considered the appropriate remedy for Governor Gary Johnson's and the Secretary of the New Mexico Human Services Department's violation of the separation of powers provision. 1998-NMSC-015, ¶¶ 1–2. In an earlier case, the court had ruled that the officers violated the provision by "enacting and implementing certain welfare regulations." *Id.* ¶ 2–3. Pursuant to that holding, it issued a Writ of Mandamus requiring the officers to "desist from the implementation of their public assistance changes; . . ." *Id.* ¶ 3. When they failed to do so, the Court determined that they should be held in "indirect civil contempt." *Id.* ¶ 5. At no point did the court so much as

consider rendering the officers' acts void. It merely sought to enjoin their conduct and then held them in contempt for their refusal to desist.

Not only does *State ex rel. Taylor* suggest that Defendant Reeb's conduct as prosecutor was not void—and that, therefore, she had at least a colorable claim of authority—it also suggests that whatever harm Plaintiff might have suffered from Defendant Reeb's constitutional violation was remedied by her withdrawal. Indeed, Defendant Reeb's withdrawal from the case within nine weeks of assuming office, **Compl. ¶ 136**, apparently would have satisfied the court in *State ex rel. Taylor*, which was merely attempting to stop the officers from continuing with their conduct.

But even if voiding one of Defendant Reeb's two offices were the appropriate remedy, it is not clear why her role as prosecutor should be void, rather than her role as state legislator. It would be entirely possible that Defendant Reeb's appointment as special prosecutor—which was proper and predated her election—would render void her position in the state legislature. With no authority indicating which of her two roles would be rendered void by the other, the Court will not arbitrarily determine that Defendant Reeb had no colorable claim to her first office for the sake of subjecting her to civil damages liability under § 1983.

Indeed, one of the underlying rationales of absolute prosecutorial immunity is that § 1983 civil liability is not the only way to ensure that prosecutorial wrongs are redressed and that prosecutors are held accountable for their wrongdoing. *Imbler*, 424 U.S. at 429; *Snell*, 920 F.3d at 687. The Supreme Court and the Tenth Circuit have long emphasized that claims against prosecutors often find resolutions through other means, including the criminal process and through professional discipline. *See, e.g.*, *Imbler*, 424 U.S. at 429; *Snell*, 920 F.3d at 687. So, here, where

Defendant Reeb's violation of the separation of powers provision was effectively resolved by her withdrawal, the Court does not believe that civil damages liability is necessary.[12]

Accordingly, bound by *Lerwill* and unable to conclude that Section 36-1-23.1 failed to provide Defendant Reeb with at least a colorable claim of authority to prosecute Plaintiff's case, the Court finds that Defendant Reeb is entitled to prosecutorial immunity for her prosecutorial acts after assuming office.[13]

### C. Assuming that She had a Colorable Claim of Authority to Prosecute Plaintiff's Case, Defendant Reeb is Entitled to Absolute Prosecutorial Immunity for Including the Firearm Enhancement Charge in Violation of the *Ex Post Facto* Clause

With preliminary inquiries out of the way, the Court turns to the issue whether Defendant Reeb is entitled to absolute prosecutorial immunity for including the firearm enhancement charge in the criminal information and threatening Plaintiff with sanctions after he filed a motion attempting to dismiss the enhancement.

Earlier, when the Court considered whether Defendant Carmack-Altwies is entitled to immunity for including the firearm enhancement charge in the first criminal information, the Court

---

[12] That said, the Court is wary that "[a]bsolute immunity is 'strong medicine' and government officials 'who seek exemption from personal liability have the burden of showing that the exemption is justified by overriding considerations of public policy.'" *Snell*, 920 F.3d at 696 (quoting *Forrester v. White*, 484 U.S. 219, 224, 230 (1988)). The purpose of absolute prosecutorial immunity is to protect the judicial process, not the prosecutor. *Chilcoat*, 41 F.4th at 1208. It is granted "not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Malley*, 475 U.S. at 342. If ever there was conduct that threatened the judicial process, it would entail another branch of government "treading outside its constitutional boundary into the [judiciary]." *Stratton*, 1991-NMCA-013, ¶ 30. Defendant Reeb—a legislator—crossed her constitutional boundary when she exercised the sovereign power of the executive branch as a quasi-judicial officer. This undermined the integrity of the judiciary. And it causes the Court to question whether granting absolute prosecutorial immunity to Defendant Reeb satisfies the policy goals of absolute prosecutorial immunity.

[13] Having resolved the issue under *Lerwill*, the Court need not consider whether Defendant Reeb is entitled to absolute prosecutorial immunity under the *de facto* officer doctrine. ***See*** **Doc. 12 at 23 n.8**; **Doc. 39 at 9**.

imputed all of Defendant Reeb's conduct respecting the charge onto Defendant Carmack-Altwies. *See supra* Section II.C. For the purposes of this order, the Court assumes the Defendants were equally responsible for the charge. Accordingly, the Court incorporates its opinion from Defendant Carmack-Altwies' Motion and finds that Defendant Reeb is also entitled to absolute prosecutorial immunity for including a firearm enhancement charge in the original criminal information. *See supra* Section II.C.

### D. Defendant Reeb is Not Entitled to Absolute Prosecutorial Immunity for Reviewing the SFSO's Reports, Interviewing Witnesses, Taking Proffers, and Engaging Experts Because it is Not Clear from the Face of the Complaint Whether Immunity Applies to this Conduct

The final issue is whether reviewing reports, interviewing witnesses, taking proffers, and engaging experts are part of a prosecutor's role as an advocate for the state. *See Imbler*, 424 U.S. at 431; *Mink*, 482 F.3d at 1261. The Complaint alleges that upon being appointed, "Reeb immediately became the point of contact for defense counsel and indicated that she was the primary attorney reviewing the SFSO report and handling the investigation. She interviewed witnesses, took proffers, engaged experts, and handled other important matters." **Compl. ¶ 105**. Defendant Reeb argues that she is entitled to absolute prosecutorial immunity for these acts under *Imbler* and *Mink*. She contends that "the duties of the prosecutor in [her] role as advocate for the state involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." **Doc. 12 at 10** (citing *Imbler*, 424 U.S. at 431 n.33). She points out that "absolute immunity may attach even to . . . administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his functions as an officer of the court." **Doc. 12 at 10** (citing *Mink*, 482 F.3d at 1261 (internal citations omitted)). Plaintiff responds that "there is nothing inherently prosecutorial about most of these activities[:] . . . police officers[] review reports and talk to witnesses in the course of conducting investigations . . . [e]xperts are engaged not only

to testify in court, but also to help investigators understand what happened." **Doc. 39 at 3** (internal citations omitted). According to Plaintiff, the absence of probable cause during the time these pre-indictment activities took place, "is at least 'a good clue [Defendant Reeb] engag[ed] in activity beyond the scope of advocacy.'" **Doc. 39 at 3–4** (citing *Warnick*, 895 F.3d at 752). The parties each raise compelling arguments. However, at this stage of litigation, it is not clear on the face of the Complaint that absolute prosecutorial immunity applies to these vague and undated allegations. Accordingly, Defendant Reeb is not entitled to immunity for them.

Under Rule 12(b), a defendant may generally raise an affirmative defense in a motion to dismiss. However, if the applicability of the affirmative defense is not clear from the face of the Complaint, then the defense must wait until summary judgment. *Miller v. Shell Oil Co*, 345 F.2d 891 (10th Cir. 1965); 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.). The same is true for immunities from suit. 5B Fed. Prac. & Proc. Civ. § 1357 (4th ed.) n. 98 (collecting cases). Accordingly, whether absolute prosecutorial immunity is viewed as an affirmative defense or as an immunity from suit,[14] its applicability must be clear from the face of the Complaint.

Here, where the allegations Defendant Reeb attempts to dismiss are merely that she reviewed the SFSO report and "interviewed witnesses, took proffers, engaged experts, and handled other important matters," the Complaint does not supply sufficient facts to establish absolute prosecutorial immunity. **Compl. ¶ 105**. The Complaint does not indicate when these activities

---

[14] At least one court within the Tenth Circuit has said that absolute prosecutorial immunity is an affirmative defense. *See Schwenke v. Utah*, 2017 WL 5179448, at *6 (D. Utah, Oct. 16, 2017) (unreported). Moreover, the Tenth Circuit has indicated that qualified immunity under § 1983 is an affirmative defense. *See Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008) ("Qualified immunity is an affirmative defense to an excessive force claim."); *but see Nocella v. Gardner*, 2021 WL 5565652, at *2 (D. Utah, Nov. 29, 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("Qualified immunity is an immunity from suit, not an affirmative defense to liability."). If § 1983 qualified immunity is an affirmative defense than absolute prosecutorial likely is too.

occurred, how they fit within the broader prosecution, or what role Defendant Reeb played in them. ***See generally* Compl**. For that matter it provides no concrete facts that make it possible to assess whether these acts are immunized as necessary "actions preliminary to the initiation of a prosecution," *Imbler*, 424 U.S. at 431 n.33, or whether they are merely part of a "preliminary investigation," *Buckley*, 509 U.S. at 275. Indeed, these allegations are far vaguer than those which the Court considered under the continuum based approach in Defendant Carmack-Altwies' Motion. The Complaint's details about Defendant Carmack-Altwies' alleged role in investigating why the gun discharged and in destroying the gun include (1) that the gun's testing took place in the initial stages of litigation (this is at minimum a fair inference), (2) when the gun was sent for testing, (3) that prosecutors and investigators failed to stop the FBI from performing destructive testing or to notify Plaintiff, and (4) additional details about the correspondence between SFSO and the FBI. **Compl. ¶¶ 88–93**. But this sort of specificity is absent from the generalized and undated allegations that apply to Defendant Reeb.

Accordingly, it is not clear from the face of the Complaint whether absolute prosecutorial immunity applies to this conduct and the Court finds that Defendant Reeb is not entitled to immunity at this stage.

For the reasons discussed, Defendant is entitled to prosecutorial immunity in part under § 1983 for the conduct outlined in State Defendants' Motion. Since the parties agree that the scope of absolute prosecutorial immunity under the NMCRA mirrors the scope of immunity under § 1983, the Court finds that Defendant FJDA is also entitled to absolute immunity for this conduct under the NMCRA. State Defendants' Motion to Dismiss V is granted in part and denied in part.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Motion to Dismiss IV is hereby **GRANTED in part** and **DENIED in part** and Motion to Dismiss V is hereby **in part** and **DENIED in part** for the reasons described in this Memorandum Opinion and Order.

- Motion to Dismiss IV: Defendants Carmack-Altwies and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 11)** is **GRANTED in part** and **DENIED in part**.
- Motion to Dismiss V: Defendants Reeb and FJDA's Motion to Dismiss § 1983 and NMCRA Claims on the Basis of Absolute Prosecutorial Immunity **(Doc. 12)** is **GRANTED in part** and **DENIED in part**.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE